Case 1:07-cv-00154-ECH   Document 50   Filed 08/09/10   Page 1 of 15

# In the United States Court of Federal Claims

No. 07-154 C

(E-Filed: August 9, 2010)

| | |
|---|---|
| NORMAN H. COHEN, Ed.D., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Summary Judgment; Copyright Registration; Conveyance of Exclusive Rights; Standing to Bring Suit for Copyright Infringement; Beneficial Ownership; Continuing Wrong Doctrine Unavailable; Tolling Provision; 28 U.S.C. § 1498(b); Continuing Presence of Infringing Materials Cached on the Internet |

Jonathan M. Cohen, Philadelphia, PA, for plaintiff.

Susan L.C. Mitchell, with whom were Tony West, Assistant Attorney General, and John J. Fargo, Director, Intellectual Property Section, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. David M. Ruddy, United States Department of Justice, Washington DC, of counsel.

OPINION AND ORDER

HEWITT, Chief Judge

    Dr. Norman H. Cohen (plaintiff or Dr. Cohen) brought an action for copyright infringement against the United States government, acting through the Federal Emergency Management Agency (United States, FEMA, government or defendant). Civil Action Complaint (Complaint or Compl.), Docket Number (Dkt. No.) 1, ¶¶ 5, 6, 10. Plaintiff contends that the United States infringed his copyright in at least twelve works when it displayed the works on FEMA's website, making the works available to the

public.  Id. ¶¶ 5, 10-12.  The government moves for partial summary judgment, contending that plaintiff failed to register one of the works[1] and that plaintiff's conveyance of certain exclusive rights deprived him of standing to bring suit.

I.     Background

Now before the court are United States' Motion for Partial Summary Judgment (defendant's Motion or Def.'s Mot.), Docket Number (Dkt. No.) 37, filed February 25, 2010; Plaintiff's Response [in] Opposition to United States' Motion for Partial Summary Judgment (plaintiff's Response or Pl.'s Resp.), Dkt. No. 42, filed April 5, 2010; and United States' Reply to Plaintiff's Opposition to its Motion for Partial Summary Judgment and Supplemental Appendix (defendant's Reply or Def.'s Reply), Dkt. No. 47, filed May 6, 2010.  Defendant attached an Appendix (defendant's Appendix or Def.'s App.) in support of its Motion.  Plaintiff attached an Appendix (plaintiff's Appendix or Pl.'s App.) in support of its Response.

The government moves for partial summary judgment on three grounds.  Def.'s Mot. 1.  First, the government contends that Dr. Cohen did not obtain a certificate of registration from the Copyright Office for the article, "The Principles of Adult Mentoring Scale"[2] (The Principles Article).  Def.'s Mot. 1, 3-4.  Second, the government contends that Dr. Cohen does not have standing to sue for copyright infringement because he assigned exclusive rights to Human Resource Development Press, Inc. (HRD Press) and was therefore no longer the copyright owner in four of the works:  The Principles Article; The Principles Article, Leader's Guide; The Manager's Pocket Guide to Effective Mentoring; and The Mentee's Guide to Mentoring (collectively, the HRD Press Works). Id. at 1, 5-6, 8.  Third, the government contends that plaintiff's right to recovery should be limited to "damages incurred from direct infringement by the government committed

---

[1] Section 411(a) requires that a plaintiff register a work before bringing a claim for copyright infringement.  17 U.S.C. § 411(a) (2006).  A certificate of registration documents satisfaction of this requirement.  Id. at (b)(1).

[2] The word "Scale" in the title was later replaced by the word "Inventory," thereby changing the title to "Principles of Adult Mentoring Inventory," which was shortened to and frequently referred to as "PAMI."  Plaintiff's Response [in] Opposition to United States' Motion for Partial Summary Judgment (plaintiff's Response or Pl.'s Resp.) Docket Number (Dkt. No.) 42, 11 n.7.  Plaintiff refers to the work as "Principles of Adult Mentoring Inventory," and defendant refers to the same work as "The Principles of Adult Mentoring Scale."  Compare id. at 10-11, with United States' Motion for Partial Summary Judgement (defendant's Motion or Def.'s Mot.), Dkt. No. 37, 3-5.   The court refers to the work as The Principles Article throughout its Opinion and Order.

between March 9, 2004 and March 15, 2005." Id. at 1, 10-12.  The court has jurisdiction over this action pursuant to 28 U.S.C. § 1498(b), which provides that a claim of copyright infringement against the United States shall be brought before the United States Court of Federal Claims (CFC).  28 U.S.C. § 1498(b) (2006).  The statute of limitations governing this action is three years.  Id.  The action is timely because the acts complained of occurred within three years of March 9, 2007, the date the Complaint was filed.  See Compl.

      A.      Copyright Registration in The Principles Article

The United States asserts that Dr. Cohen failed to obtain a certificate of registration from the Copyright Office for The Principles Article and therefore cannot bring a suit of copyright infringement with regard to this work.  Def.'s Mot. 3-5.  The article is included in a compilation titled "New Directions for Adult and Continuing Education" and is published by Jossey-Bass Inc., Publishers (Jossey-Bass).  Id. at 3-4.  Jossey-Bass holds the copyright in the compilation as a collective work.  Id. at 4.  The parties agree that Jossey-Bass has a valid copyright in the compilation, but the parties disagree as to whether plaintiff has a registered copyright in The Principles Article.  Id.; Pl.'s Resp. 5.  Defendant asserts that plaintiff failed to register The Principles Article and is therefore barred from bringing suit.  Def.'s Mot. 4 (citing Def.'s App. A7-A9 (Compilation Registration Certificate), A58-A59 (Deposition of Dr. Cohen)).

Plaintiff's position appears to be that a separate registration for The Principles Article is unnecessary because it is part of his doctoral dissertation for which he obtained a certificate of registration from the Copyright Office.  See Pl.'s Resp. 4, 11-12.  Plaintiff maintains that the Principles Article is included within his dissertation, and that because his dissertation is protected by copyright, the Principles Article is also protected.  Id. at 4-5.  In support of his position, plaintiff submitted a certificate of registration from the Copyright Office for his doctoral dissertation, "Development and Validation of the Principles of Adult Mentoring Scale for Faculty Mentors in Higher Education."  Pl.'s App. A77-A78 (Dissertation Registration Certificate); see also Pl.'s App. A775 (Deposition of Dr. Cohen).  The dissertation was submitted to the Copyright Office for registration, and the Copyright Office issued a certificate of registration for plaintiff's dissertation with an effective date of October 22, 1993.  Pl.'s App. A77-A78 (Dissertation Registration Certificate).  During his March 18, 2009 deposition, plaintiff submitted the certificate of registration for his doctoral dissertation as Cohen-Exhibit-15.  Pl.'s App. A609, A775 (Deposition of Dr. Cohen).  Neither party has submitted a copy of plaintiff's dissertation or a copy of the article in question.  See Def.'s App. passim; Pl.'s Resp. ii (listing the table of contents for plaintiff's appendix); Pl.'s App. passim.

3

      B.      Copyright Ownership in the HRD Press Works

      The government asserts that plaintiff lacks standing to sue for infringement because he is not the copyright owner of the HRD Press Works. Def.'s Mot. 1, 5-6. In particular, the government contends that, because Dr. Cohen assigned exclusive rights to publish and market the works to HRD Press, Dr. Cohen no longer has standing to bring a claim of copyright infringement. Id. at 7-9. Plaintiff signed publishing contracts with HRD Press for each of the HRD Press Works. Pl.'s App. A101-A113 (HRD Press Contracts); see also Def.'s App. A13-A18 (HRD Press Contracts). The relevant terms of the contract for each of the four HRD Press Works are identical: plaintiff conveys "the exclusive right to publish and market the Work" to HRD Press, e.g., Pl.'s App. A101, ¶1, A105 ¶1 (HRD Press Contracts), in exchange for royalty payments, e.g., Pl.'s App. A102, ¶7, A106 ¶7 (HRD Press Contracts). The government asserts that, because the exclusive rights to reproduce, distribute and display the works were conveyed to HRD Press, only HRD Press has standing to sue for infringement of these rights. Def.'s Mot. 9-10.

      Plaintiff asserts that defendant has conflated legal ownership of a copyright with beneficial ownership of a copyright. Pl.'s Resp. 14 n.10. Plaintiff asserts that he is the beneficial owner of the copyright because he receives royalty payments from HRD Press. Id. at 1, 5; see, e.g., Pl.'s App. A102, ¶7, A106 ¶7 (HRD Press Contracts) (stating that plaintiff will receive royalty payments from HRD Press for the HRD Press Works). Plaintiff contends that he has standing to sue for infringement as a beneficial owner. Pl.'s Resp. 14, 17.

      C.      Availability of Damages

      Plaintiff filed suit against the government on March 9, 2007. Def.'s Mot. 10; Compl. The government contends that, because 28 U.S.C. § 1498 places a three-year limitation on recovery, plaintiff is unable to recover damages for any infringement that occurred prior to March 9, 2004. Def.'s Mot. 10-11. Further, the government asserts that "all of the accused materials were removed from FEMA's website" as of March 15, 2004. Id. at 11. The government contends that plaintiff's recovery is therefore limited to the seven-day period, March 9 to March 15, 2004. Id. The government further contends that the tolling provision of 28 U.S.C. § 1498 is inapplicable because Dr. Cohen never made "a written claim for compensation" that satisfies the requirements of the statute. Id. at 12-13; see 28 U.S.C. § 1498(b) (tolling the statute of limitations if "a written claim for compensation" is made to the agency or department responsible for the claim).

      Plaintiff asserts that, although FEMA took down the materials from its website on March 15, 2004, this was insufficient to remove the materials from the internet, because

4

they were still readily accessible via cached websites. Pl.'s Resp. 17-18. Further, plaintiff asserts that the infringing works on the internet were deliberately posted and maintained every second of every day--which is different from the "ephemeral act of infringement in the unauthorized broadcast of a 3-minute song, a 2[-]hour movie, or unauthorized sale of a book." Id. at 18.

Plaintiff contends that the written notice he sent to FEMA on October 17, 2005, see Def.'s App. A2 (Oct. 17 FEMA Letter), constitutes "a written claim for compensation" such that any limitations period should be tolled. Pl.'s Resp. 20 n.16; see 28 U.S.C. § 1498(b). On October 17, 2005 plaintiff wrote a letter to FEMA, the text of which states, in full:

> It has been many weeks since you said you would speak to Ms. Zaidel and get back to me about this matter. I never heard from you. Please let me know if I have to sue FEMA to get a response.

Def.'s App. A2 (Oct. 17 FEMA Letter). Jordan Fried (Mr. Fried), Associate General Counsel for Litigation, responded to plaintiff on October 25, 2005, in a letter which states, in relevant part:

> Thank you for your recent letter threatening to bring suit against the Federal Emergency Management Agency. As you recall, when you called me I had no background on the matters of concern to you. As we further discussed, you had been working with Edward Broyles of this office to address your concerns. I advised Mr. Broyles of your call and the particular issues raised by you, and referred the matter back to him.

Def.'s App. A3 (Oct. 25 FEMA Letter). Plaintiff replied to Mr. Fried on November 1, 2005, stating, in relevant part:

> [I]n my letter, I asked you if I need to sue FEMA to get a response to my inquiry, as I cannot seem to get one any other way. Your interpretation of that question as a threat seems to say that FEMA has no intention of amicably responding to my inquiry regarding a clear cut case of copyright infringement. If I am wrong about this, please advise me immediately.

Def.'s App. A4 (Nov. 1 FEMA Letter). FEMA's response, dated January 26, 2006, from Edward Broyles (Mr. Broyles), Acting Associate General for General Law, FEMA Office of General Counsel, states in relevant part:

5

> [T]he use by FEMA [of the HRD Press Works] appears to be within the Fair Use Doctrine.
>
> Notwithstanding the above, I recognize that the course materials should have been removed from the website at the conclusion of the course, and apologize for the omission. The materials have been removed.

Def.'s App. A5-A6 (Jan. 26 FEMA Letter). Plaintiff contends that this communication is sufficient to toll the statute of limitations from October 17, 2005 until January 26, 2006. Pl.'s Resp. 20 n.16.

II.     Legal Standards

   A.    Summary Judgment

Under Rule 56 of the Rules of the Court of Federal Claims (RCFC), summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[3] RCFC 56(c)(1); see Anderson v. Liberty Lobby, Inc. (Anderson), 477 U.S. 242, 247-48 (1986) (reviewing Rule 56(c) of the Federal Rules of Civil Procedure (FRCP)); Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1302 (Fed. Cir. 2005) (same). A fact is material if it might significantly affect the outcome of the litigation. Anderson, 477 U.S. at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id; see Matsushita Elec. Indus. Co., v. Zenith Radio Corp. (Matsushita), 475 U.S. 574, 587 (1986) (stating that there is no genuine dispute "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party").

---

[3] The RCFC generally mirror the Federal Rules of Civil Procedure (FRCP). RCFC 56 rules comm. notes (2002) ("The subdivision structure of RCFC 56 was reordered to more closely conform to FRCP 56."); see Flowers v. United States, 75 Fed. Cl. 615, 624 (2007) ("RCFC 56 is patterned on Rule 56 of the [FRCP] and is similar in language and effect."); see also C. Sanchez & Son, Inc. v. United States, 6 F.3d 1539, 1541 n.2 (Fed. Cir. 1993) ("The [RCFC] generally follow the [FRCP]. [RCFC] 56(c) is, in pertinent part, identical to [FRCP] 56(c)."). Therefore, the court relies on cases interpreting FRCP 56 as well as those interpreting RCFC 56. Champagne v. United States, 35 Fed. Cl. 198, 205 n.5 (1996) ("In general, the rules of this court are closely patterned on the [FRCP]. Therefore, precedent under the [FRCP] is relevant to interpreting the rules of this court, including Rule 56.").

> In considering such a motion, the court will, absent persuasive reason to the contrary, deem the material facts claimed and adequately supported by the moving party to be established, except to the extent that such material facts are controverted . . . .

RCFC 56(c)(1).  Further, under RCFC 56, the court must draw all inferences from the facts before it in the light most favorable to the nonmoving party.  Matsushita, 475 U.S. at 587; Mann v. United States, 334 F.3d 1048, 1050 (Fed. Cir. 2003) (citing Anderson, 477 U.S. at 255).

      B.      Copyright Infringement

      1.      Copyright Registration

The Copyright Act requires an author to register the work prior to bringing an action for infringement.  17 U.S.C. § 411(a) (2006) ("no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claims has been made in accordance with this title").  An author is required to have a certificate of registration from the Copyright Office before filing a suit for copyright infringement.  Id.  The owner of the copyright has the burden of production with regards to the certificate of registration, which is presumptively valid and is prima facie evidence of a valid copyright.  Id. § 411(b)(1); Herbert v. United States, 36 Fed. Cl. 299, 303 (1996); see 17 U.S.C. § 410(c).

The Copyright Act protects both original works and compilations of original works.  17 U.S.C. § 103(a).

> The copyright in a compilation or derivative work extends only to the material contributed by the author of such [derivative] work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material.  The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or substance of, any copyright protection in the preexisting material.

Id. § 103(b).  The copyright in a compilation is therefore separate and distinct from the copyright in the originals works comprising the compilation.  See id.  A certificate of registration in the compilation does not affect the existence of, or lack of, a certificate of registration in any of the underlying original works.  See id.  The compilation and the underlying works are separate, and the author of either work must have a certificate of

registration in the work before bringing suit for infringement of that work. See id. §§ 103(b), 411(a). A certificate of registration in the compilation allows the owner of the compilation to bring an infringement suit based on the compilation work, but it would not be sufficient in and of itself to bring an infringement suit based on any of works the compilation comprises. See id. § 103(b).

    2.    Copyright Ownership

The owner of a copyright has the exclusive right to reproduce the work, prepare derivative works, distribute copies to the public and to perform and display the work. Id. § 106. Ownership of a copyright, or of any of the exclusive rights, may be transferred in whole or in part. Id. § 201(d). If the owner of a copyright transfers any of the exclusive rights granted by § 106, the protections and remedies afforded the owner are also transferred. Id. § 201(d)(2) ("The owner of any particular exclusive right is entitled, to the extent of that right, to all the protection and remedies accorded to the copyright owner by [the Copyright Act].").

"Section 501 gives the legal or beneficial owners of any of the [17 U.S.C. §]106 exclusive rights the power to sue for infringement." Campbell v. Bd. of Trs. of Leland Stanford Junior Univ., 817 F.2d 499, 504 (9th Cir. 1987); see 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of [17 U.S.C. §]411, to institute an action for any infringement of that particular right committed while he or she is the owner of it."). Both the beneficial owner and the legal owner of the copyright have standing to sue for infringement. 17 U.S.C. § 501(b); Bandai Am. Inc. v. Bally Midway Mfg. Co., 775 F.2d 70, 73-74 (3d. Cir. 1985).

A beneficial owner is someone with an economic interest in the copyright. Cortner v. Israel (Cortner), 732 F.2d 267, 270-71 (2d Cir. 1984). A beneficial owner may bring an infringement action to protect this economic interest. See id. (finding that authors of a work had standing to sue for infringement as beneficial owners after conveying "sole and exclusive" rights to defendant in exchange for royalties). An author who has conveyed exclusive rights in a work in exchange for royalty payments is the beneficial owner of the work. Cortner, 732 F.2d at 270-71; see Moran v. London Records, Ltd., 827 F.2d 180, 183 (7th Cir. 1987) (discussing the legislative history behind 17 U.S.C. § 501(b)). In the context of copyright, the cases define a beneficial owner as the party who receives royalty payments for the work. See, e.g., Moran, 827 F.2d at 183 ("[I]t is significant that the example Congress [gave of a beneficial owner] was that of an author who assigned his work in exchange for royalties . . . ."); Cortner, 732 F.2d 270-71; Fantasy, Inc. v. Fogerty (Fantasy), 654 F. Supp. 1129, 1131 (N.D. Cal. 1987) (defining a beneficial owner as an author who has parted with legal title in exchange for royalty payments). An author who

receives royalty payments for the work therefore has standing to bring an infringement suit as a beneficial owner.  See 17 U.S.C. § 501(b); Cortner, 732 F.2d 270-71; Fantasy, 654 F. Supp. at 1131.

    C.    Limits of Recovery

An action by a copyright owner for infringement against the United States may be brought exclusively at the CFC and must be brought within three years of the infringement.  28 U.S.C. § 1498(b).

> Except as otherwise provided by law, no recovery shall be had for any infringement of a copyright covered by this subsection committed more than three years prior to the filing of the complaint or counterclaim for infringement in the action, except that the period between the date of receipt of a written claim for compensation by the Department or agency of the Government or corporation owned or controlled by the United States, as the case may be, having authority to settle such claim and the date of mailing by the Government of notice to the claimant that his claim has been denied shall not be counted as part of the three years, unless suit is brought before the last-mentioned date.

Id.  A copyright owner can recover damages for infringement only for those acts that occurred within three years of the filing of the claim unless the copyright owner is entitled to the benefit of the tolling provision in the statute.  Id.  The statute tolls the recovery period if the copyright owner files "a written claim for compensation" with the department or agency that is responsible for settling the claim.  Id.

The court has found no case interpreting 28 U.S.C. § 1498.  However, the tolling provision in 35 U.S.C. § 286, which is applicable to patents, contains language that is substantively identical to the tolling provision in 28 U.S.C. § 1498(b).  Compare 35 U.S.C. § 286 (2006) (tolling the statute of limitation if the plaintiff submits "a written claim for compensation [to] the department or agency of the Government having authority to settle such claim"), with 28 U.S.C. § 1498(b) (tolling the statute of limitations if the plaintiff submits "a written claim for compensation [to] the Department or agency of the Government . . . having authority to settle such claim").  Section 286 has been interpreted to require notice that is "sufficiently detailed to afford the Government a realistic opportunity to consider and settle the claim."  Custer v. United States, 224 Ct. Cl. 140, 622 F.2d 554, 557-58 (1980); see also Motorola, Inc. v. United States, 13 Cl. Ct. 420, 428 (1987) (requiring that written claim "must be calculated to make a Government officer reasonably aware that a claim is being made").

The applicable statute of limitations is also affected by the continuing wrong doctrine, a doctrine that has been accepted by some circuits but rejected by others.[4] See MAI Basic Four, Inc. v. Basis, Inc., 962 F.2d 978, 987 n.9 (10th Cir. 1992) (noting that the United States Court of Appeals for the Seventh Circuit (Seventh Circuit) applies the continuing wrong doctrine to copyright infringement, but that the United States Court of Appeals for the Second Circuit (Second Circuit) and the United States Court of Appeals for the Sixth Circuit (Sixth Circuit) do not); Wechsberg v. United States, 54 Fed. Cl. 158, 161 (2002). If copyright infringement is a continuing wrong, the statute of limitations begins to run from the date of the last infringing act, and a complaint filed within the limitations period will encompass the entire period of infringement--regardless of when the infringement started. See Taylor v. Meirick, 712 F.2d 1112, 1118-19 (7th Cir. 1983). In Taylor, the Seventh Circuit applied the continuing wrong doctrine to copyright infringement and determined that as long as the suit was brought within the statute of limitations period from the last infringing act, plaintiff could recover damages for the "entire duration of the alleged violation." Taylor, 712 F.2d at 1118-19. If copyright infringement is not a continuing wrong, separate statutes of limitations periods run from each wrongful act, and recovery is limited to those acts as to which the limitations period has not run. See Taylor, 712 F.2d at 1118-19; cf. Bridgeport Music, Inc. v. Diamond Time, Ltd. (Bridgeport), 371 F.3d 883, 890-91 (6th Cir. 2004). In Bridgeport, the Sixth Circuit rejected the application of the continuing wrong doctrine to copyright infringement and held that any act of infringement that was outside the limitations period was time barred. Bridgeport, 371 F.3d at 890-91 (citing Makedwde Pub. Co. v. Johnson, 37 F.3d 180, 182 (5th Cir. 1994)).

The CFC rejected the application of the continuing wrong doctrine to copyright infringement under § 1498(b). See Wechsberg, 54 Fed. Cl. at 161. The Wechsberg court based its holding "on the plain language of Section 1498(b), the strict construction of waivers of sovereign immunity that governs this Court, and the weight of precedent under general copyright law" and limited recovery to the specific acts of infringement that occurred within the three-year limitations period. Id. (internal citations omitted). The court finds the reasoning of the Weschberg court persuasive, and declines to apply the continuing wrong theory to plaintiff's claim.

III.   Discussion

    A.   Copyright Registration in The Principles Article

---

[4] The United States Court of Appeals for the Federal Circuit has not ruled on the continuing wrong doctrine with respect to copyright infringement.

As its first ground for summary judgment, the government asserts that Dr. Cohen never registered The Principles Article and that, because registration is a prerequisite to instituting a claim of infringement, plaintiff's suit is barred. Def.'s Mot. 3-5. Plaintiff relies on the contention that The Principles Article is part of his dissertation and is therefore protected by the registration certificate he received from the Copyright Office in 1993 for his doctoral dissertation. Pl.'s Resp. 11 n.7. In support of his position, plaintiff submitted the certificate of registration, effective October 22, 1993, for his doctoral dissertation, "Development and Validation of the Principles of Adult Mentoring Scale for Faculty Mentors in Higher Education."[5] Pl.'s App. A77-A78 (Dissertation Registration Certificate). Plaintiff's certificate of registration serves as prima facie proof of a valid copyright in his dissertation. 17 U.S.C. § 410(c). Plaintiff asserts that The Principles Article is included in his doctoral dissertation for which copyright registration was complete in 1993 and that copyright registration is therefore complete. Pl.'s Resp. 11.

In considering a motion for summary judgment, the court must consider facts in the light most favorable to the non-moving party, here, Dr. Cohen. See Matsushita, 475 U.S. at 587. Defendant has not provided any material facts contained in "pleadings, the discovery and disclosure materials on file, [or] any affidavits," RCFC 56(c), to dispute plaintiff's contention that The Principles Article is included as part of plaintiff's doctoral dissertation and is therefore protected by plaintiff's 1993 copyright registration. Viewing the evidence in the light most favorable to plaintiff, the court finds that the government is unable to demonstrate that it is entitled to judgment as a matter of law. For the foregoing reasons, the government's Motion regarding copyright registration of The Principles Article is DENIED.

      B.     Copyright Ownership in the Four Works Published by HRD Press

As its second ground for summary judgment, the government asserts that, because plaintiff conveyed exclusive rights to market and distribute the HRD Press Works to HRD Press, plaintiff does not have standing to sue for copyright infringement. Def.'s Mot. 5-10. Plaintiff asserts that he has standing to sue as a beneficial owner. Pl.'s Resp. 13-17. Section 501 provides that both the legal owner and the beneficial owner have standing to sue for copyright infringement. 17 U.S.C. § 501(b) ("The legal or beneficial owner . . . is entitled . . . to institute an action for any infringement . . . ."). Beneficial owners include authors who have conveyed exclusive rights in their work in exchange for royalty payments. See Cortner, 732 F.2d 270-71. In Cortner, the Second Circuit determined that

---

[5] Plaintiff also produced a "Letter of Agreement" that he signed with Jossey-Bass in which he retained all legal rights to the materials to be published. Pl.'s Resp. 11 (citing Pl.'s App. A793-A795 (Jossey-Bass Contract)).

the plaintiffs' "right to royalties, although contingent on [the defendant's] exploitation of the [work], gave [the plaintiffs] a sufficient beneficial interest in the copyright to give [them] standing to seek judicial relief under the copyright law against infringement." Id. at 270-71.

The publishing contracts signed by Dr. Cohen and a representative of HRD Press conveys to HRD Press the exclusive rights "to publish and market the [HRD Press Works] . . . at its sole discretion," Pl.'s App. A101, A 105, A108, A111 (HRD Press Contracts), in exchange for royalty payments, Pl.'s App. A102, A106, A109, A112 (HRD Press Contracts). Specifically, Dr. Cohen received 15% of HRD Press's net receipts and 17.5% of net receipts over $200,000, plus 50% of gross receipts for licensed uses and translation rights. Id. at A102, A106, A109, A112. Dr. Cohen therefore retained beneficial ownership of the HRD Press Works when he transferred exclusive rights to HRD Press in exchange for a percentage of royalties based on sales and license fees. See id. at A101-A114 (HRD Press Contracts).

In order to prevail on its motion for summary judgment the government must demonstrate that plaintiff has no beneficial or legal interest in the works in question. See 17 U.S.C. § 501(b). Here, the government has put forward no evidence to dispute that Dr. Cohen is a beneficial owner of the HRD Press Works.[6] See Def.'s App. passim. Because defendant has failed to provide material facts contained in "pleadings, the discovery and disclosure materials on file, [or] any affidavits," RCFC 56(c), the government is unable to demonstrate that it is entitled to judgment as a matter of law. For the foregoing reasons, the government's Motion regarding plaintiff's standing to sue for copyright infringement with regard to the HRD Press Works is DENIED.

---

[6] Defendant also argues that "Dr. Cohen had to seek permission from HRD Press to publish a derivative work, which by definition would be based on the same subject matter as the original work." Def.'s Mot. 9-10. The right to make a derivative work and standing to sue for infringement of an original work are separate, divisible rights. See 17 U.S.C. § 103(b). Section 501 affords both the beneficial and the legal owner standing to sue. Id. § 501(b). The right to make a derivative work is held by the legal owner of that right. See id. § 103(b). Accordingly, an author who is the beneficial owner of a work has standing to sue for infringement, see id. § 501(b), even if the author does not have the right to make a derivative work. Defendant's argument--that Dr. Cohen does not have standing to sue for infringement because he would not have the right to publish a derivative work--confuses and conflates two separate and distinct rights of an author. Defendant's assertion that Dr. Cohen would be unable to publish a derivative work may or may not be correct but, in either case, does not affect plaintiff's standing to sue for infringement of the initial work as the beneficial owner. See id. (giving standing to sue to both the legal owner and the beneficial owner).

12

    C.    Limits of Recovery

The government contends that plaintiff's recovery is limited by law to the period from March 9 to March 15, 2004, Def.'s Mot. 10-11, and that damages for infringement that occurred prior to March 9, 2004 are barred by the three-year statute of limitations, id. (citing 28 U.S.C. § 1498(b)). For the reasons stated above in Part II.C, the court finds that the government is entitled to summary judgment regarding its contention that the continuing wrong doctrine is inapplicable to a claim under 28 U.S.C. § 1498. The court therefore agrees with defendant that, unless the statute of limitations is tolled, plaintiff is entitled only to those damages for infringement that occurred within the three years prior to the filing of plaintiff's suit, March 9, 2007.

Plaintiff contends that the tolling provision of 28 U.S.C. § 1498(b) should apply to the period from October 17, 2005 to January 26, 2006. Pl.'s Resp. 20 n.16. Plaintiff asserts that his correspondence with FEMA during this period constitutes a "written claim for compensation" sufficient to toll the statute of limitations. Id.; see 14 U.S.C. § 1498(b). In his first letter to FEMA, dated October 17, 2005, Dr. Cohen wrote: "Please let me know if I have to sue FEMA to get a response." Def.'s App. A2 (Oct. 17 FEMA Letter). Mr. Fried responded to the letter and referred the matter to Mr. Broyles. Def.'s App. A3 (Oct. 25 FEMA Letter). Dr. Cohen responded to FEMA on November 1, 2005, reiterating his intention to sue FEMA for copyright infringement if the matter could not be settled amicably. Def.'s App. A4 (Nov. 1 FEMA Letter). Mr. Broyles responded on January 26, 2006 that he believed that FEMA's use of the works fell within the Fair Use Doctrine, and that, in any event, all materials had been removed. Def.'s App. A5-A6 (Jan. 26 FEMA Letter).

The government notes that, although plaintiff's letters reference the alleged copyright infringement, the letters "fail[] to present any underlying facts and fail[] to present a claim for damages." Def.'s Mot. 13; see Custer, 622 F.2d at 558 (requiring that the notice of infringement claim be "sufficiently detailed to afford the Government a realistic opportunity to consider and settle the claim"). However, the letters appear to be part of a series of communications between FEMA and plaintiff in the context of which the letters could be understood as a "written claim for compensation." See Def.'s App. A2 (Oct. 17 FEMA Letter) (referencing earlier communications between plaintiff and FEMA employees). Viewing the letters in the light most favorable to plaintiff, the court finds that plaintiff has raised a genuine issue of material fact regarding the availability of the tolling provision of 28 U.S.C. § 1498(b). Because plaintiff has raised a genuine issue of material fact, the United States is not entitled to summary judgment regarding the tolling provision of 28 U.S.C. § 1498(b) as it may apply to plaintiff's claim. Accordingly, plaintiff's recovery is limited only to those damages that occurred within the three years

prior to filing suit, as that calculation may be affected, however, by a trial decision regarding availability to plaintiff of the tolling provision of § 1498(b).

With respect to defendant's contention that it is not liable for damages for infringement after March 15, 2007, plaintiff asserts that, although the government took down the infringing materials from its website on March 15, 2004, this act was insufficient to remove the infringing materials from the internet. Pl.'s Resp. 17-18. Plaintiff asserts that search engines, such as Google, store cached versions of websites and that the infringing works continued to be displayed on the cached websites--in violation of copyright--after March 15, 2004. Id. Plaintiff asserts that his works could be downloaded from the internet, saved on hard drives, and disseminated throughout the internet even after the government removed the infringing works from its website. Id. at 18-20.

In support of his argument that his works were available on the internet after the government "took down" the works, id. at 17-18, plaintiff submitted email correspondence between two FEMA employees dated March 15, 2004, discussing the infringing materials, Pl.'s App. A602-05 (FEMA Emails). The FEMA Emails state that, although the infringing materials have been taken down from FEMA's website, the infringing materials "will continue to be seen by people conducting a Google search." Pl.'s App. A603 (FEMA Emails). The emails further state that "even though [the infringing work] no longer exist[s] on [FEMA's] server," the work will continue to appear in search results until "Google search engine[s] update[] their database." Id. Mr. Carkhuff, the representative of HRD Press, Pl.'s App. A121, A126 (Deposition of Mr. Carkhuff), explained in his deposition that "the problem is Google caches everything, and it was hard to get that stuff off Google at that point because it is all cached." Pl.'s App. A221 (Deposition of Mr. Carkhuff).

Based on correspondence between FEMA employees and statements by a representative of HRD Press acknowledging that the cached versions of websites were available to the public after the government took down the infringing materials from its website, see Pl.'s App. A121, A126, A221 (Deposition of Mr. Carkhuff), A602-A605 (FEMA Emails), the court finds that plaintiff has raised a genuine issue of material fact, see Pl.'s Resp. 17-20, sufficient to defeat defendant's contention that recovery is limited to the period ending on March 15, 2005, see Def.'s Mot. 11-12.

IV.    Conclusion

For the foregoing reasons, defendant's Motion is GRANTED-IN-PART (as to the inapplicability of the continuing wrong doctrine) and otherwise DENIED. The parties are

directed to file a Joint Status Report or, if the parties cannot agree, separate status reports, on or before Friday, August 20, 2010, to propose a schedule for further proceedings in the case.

    IT IS SO ORDERED.

                              s/ Emily C. Hewitt
                              EMILY C. HEWITT
                              Chief Judge