# In the United States Court of Federal Claims

No. 07-154 C

(E-Filed: April 14, 2011)

| | | |
|---|---|---|
| NORMAN H. COHEN, Ed.D., Plaintiff, v. THE UNITED STATES, Defendant. | ) | Motion for Reconsideration; Standing to Sue the United States for Copyright Infringement Under 28 U.S.C. § 1498(b); United States Is Not Liable for Copyright Infringement by Third Parties Not Acting with the Government's Authorization or Consent; United States Cannot Be Held Liable for Secondary Copyright Infringement |

Jonathan M. Cohen, Philadelphia, PA, for plaintiff.

Susan L.C. Mitchell, with whom were Tony West, Assistant Attorney General, and John J. Fargo, Director, Intellectual Property Section, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. David M. Ruddy, United States Department of Justice, Washington, DC, of counsel.

OPINION AND ORDER

HEWITT, Chief Judge

Before the court are the United States' Motion for Reconsideration (defendant's Motion or Def.'s Mot.), filed November 19, 2010, Docket Number (Dkt. No.) 61; Plaintiff's Response to Defendant's Motion for Reconsideration of the August 9, 2010 Opinion and Order (plaintiff's Response or Pl.'s Resp.), filed December 15, 2010, Dkt. No. 66; Defendant United States' Reply in Support of its Motion for Reconsideration (defendant's Reply or Def.'s Reply), filed December 22, 2010, Dkt. No. 67; Plaintiff's Sur Reply to Defendant's Motion for Reconsideration of the August 9, 2010 Opinion and Order (plaintiff's Sur-Reply or Pl.'s Sur-Reply), filed December 30, 2010, Dkt. No. 68-1; and United States' Sur-Sur-Reply Addressing Newly Raised Issues in Plaintiff's Sur-Reply of December 30, 20010 [sic] (defendant's Sur-Sur-Reply or Def.'s Sur-Sur-Reply), filed January 11, 2011, Dkt. No. 70-1.

## I. Background

Dr. Norman H. Cohen (Dr. Cohen or plaintiff) brought an action for copyright infringement against the United States government, acting through the Federal Emergency Management Agency (United States, FEMA, government or defendant). Civil Action Complaint (Complaint or Compl.), Dkt. No. 1, at ¶¶ 5, 10. Plaintiff contends that the United States infringed his copyrights in at least six[1] of his works when it displayed the works on FEMA's website, thereby making the works available to the public. Id. ¶¶ 5, 10-12. The government moved for partial summary judgment, contending, among other things, that plaintiff lacked standing to bring suit under 28 U.S.C. § 1498(b) (2006) for four works published by Human Resource Development Press, Inc. (HRD Press) and that plaintiff's period of recovery was limited to the seven-day period of time that FEMA had plaintiff's works on its website during the three-year statute of limitations period under 28 U.S.C. § 1498. United States' Mot. for Partial Summ. J., Dkt. No. 37, at 1.

In granting-in-part and otherwise denying defendant's motion, the court made two findings relevant to this dispute: (1) because the government did not put forward any evidence to dispute that Dr. Cohen is a beneficial owner of the four works published by

---

[1]Dr. Cohen never clearly states the number of his works which the government allegedly copied nor the number of infringements of his copyrights the government allegedly committed. In one paragraph of his Civil Action Complaint (Complaint or Compl.), plaintiff asserted that Dr. Cohen had authored and "was the copyrighted holder and/or assignee and/or transferee of the copyrights" of at least twelve works. Compl., Docket Number (Dkt. No. 1), ¶ 5 ("Dr. Cohen was the author of . . . many intellectual published written and/or recorded works . . . including, but not limited to, the following [twelve works]."). However, in another paragraph of his Complaint, plaintiff stated that "[a] key to the works that were unlawfully published is contained in Exhibit 'A,'" Compl. ¶ 10, and Exhibit A to plaintiff's Complaint, entitled "FEMA Documents with Coorelations [sic] to Copyright Infringements In Six Separate Books," appears to list a total of only six works, see Compl. Ex. A passim. Adding to the confusion, in Plaintiff's Response [in] Opposition to United States' Motion for Partial Summary Judgment, plaintiff states that the government committed "multiple infringements" and claims that the government "copied significant portions of seven of Plaintiff's related works 'word-for-word.'" Pl.'s Resp. Opp'n to United States' Mot. for Partial Summ. J., Dkt. No. 42, at 2; see id. at 2 n.3 (claiming that the government infringed the copyrights of "seven works" but listing only six works). Furthermore, in Plaintiff's Response to the United States' Proposed Findings of Uncontroverted Facts in Support of its Motion for Partial Summary Judgment (Pl.'s Resp. to DFUF), plaintiff "disagree[d] with and object[ed] to" defendant's proposed finding that "Dr. Cohen alleges in his complaint that the government infringes the copyright [of] . . . six works" because "the list of infringed works is not all-inclusive." Pl.'s Resp. to DFUF, Dkt. No. 41, ¶ 2.

HRD Press, the government failed to show that Dr. Cohen lacked standing to sue for infringement of the copyrights of those works, Cohen v. United States (Cohen or Opinion), 94 Fed. Cl. 165, 173-74 (2010), Dkt. No. 50; and (2) because plaintiff put forward evidence showing that "the cached versions of websites were available to the public after the government took down the infringing materials from its website," plaintiff "raised a genuine issue of material fact sufficient to defeat defendant's contention that recovery is limited to the period ending on March 15, 200[4]," id. at 175.

Defendant now moves the court to "reconsider Parts III-B and III-C of its August 9, 2010 [O]pinion that denied the government's motion for partial summary judgment as to the issues of ownership and the period of recovery" pursuant to Rules 54(b) and 59(a) of the Rules of the United States Court of Federal Claims (RCFC). Def.'s Mot. 1. For the following reasons, defendant's Motion is GRANTED-IN-PART and DENIED-IN-PART.

## II. Legal Standards

### A. Motion for Reconsideration

"The standards applicable to reconsideration of non-final decisions are set forth in Rules 54(b) and 59(a) of the [RCFC]." Alpha I, L.P. ex rel. Sands v. United States, 86 Fed. Cl. 568, 571 (2009). Rule 54(b) provides, in relevant part, that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." RCFC 54(b). Rule 59(a) provides that rehearing or reconsideration may be granted as follows: "(A) for any reason for which a new trial has heretofore been granted in an action at law in federal court; (B) for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or (C) upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States." RCFC 59(a)(1).

"The decision whether to grant reconsideration lies largely within the discretion of the [trial] court." Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990). "The court must consider such motion with 'exceptional care.'" Henderson Cnty. Drainage Dist. No. 3 v. United States (Henderson), 55 Fed. Cl. 334, 337 (2003) (quoting Fru-Con Constr. Corp. v. United States (Fru-Con), 44 Fed. Cl. 298, 300 (1999)). "A motion for reconsideration is not intended . . . to give an 'unhappy litigant an additional chance to sway' the court." Matthews v. United States, 73 Fed. Cl. 524, 525 (2006) (quoting Froudi v. United States, 22 Cl. Ct. 290, 300 (1991)). "Motions for

reconsideration should not be entertained upon 'the sole ground that one side or the other is dissatisfied with the conclusions reached by the court, otherwise the losing party would generally, if not always, try his case a second time, and litigation would be unnecessarily prolonged.'" Fru-Con, 44 Fed. Cl. at 300 (quoting Seldovia Native Ass'n, Inc. v. United States, 36 Fed. Cl. 593, 594 (1996)), aff'd, 144 F.3d 769 (Fed. Cir. 1998).

The moving party must support its motion for reconsideration by a showing of exceptional circumstances justifying relief, based on a manifest error of law or mistake of fact. Henderson, 55 Fed. Cl. at 337 (citing Franconia Assocs. v. United States, 44 Fed. Cl. 315, 316 (1999)); Principal Mut. Life Ins. Co. v. United States (Principal), 29 Fed. Cl. 157, 164 (1993) (quoting Weaver-Bailey Contractors, Inc. v. United States, 20 Cl. Ct. 158, 158 (1990)), aff'd, 50 F.3d 1021 (Fed. Cir. 1995)). "Specifically, the moving party must show: (1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice." Matthews, 73 Fed. Cl. at 526 (citing Griswold v. United States, 61 Fed. Cl. 458, 460-61 (2004)). Where a party seeks reconsideration on the ground of manifest injustice, it cannot prevail unless it demonstrates that any injustice is "apparent to the point of being almost indisputable." Pac. Gas & Elec. Co. v. United States, 74 Fed. Cl. 779, 785 (2006), aff'd in part and rev'd in part, 536 F.3d 1282 (Fed. Cir. 2008). In other words, "manifest" is understood as "clearly apparent or obvious." Ammex, Inc. v. United States, 52 Fed. Cl. 555, 557 (2002) (citing Principal, 29 Fed. Cl. at 164), aff'd, 384 F.3d 1368 (Fed. Cir. 2004).

B. Motion for Summary Judgment

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." RCFC 56(c)(1). A fact is material if it might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Where the moving party has not disputed any facts contained in the non-movant's pleadings, the court assumes all well-pleaded facts to be true and draws all applicable presumptions and inferences from such facts in favor of the non-moving party. See Univ. of W. Va. Bd. of Trs. v. VanVoorhies, 278 F.3d 1288, 1295 (Fed. Cir. 2002); Banks v. United States, 69 Fed. Cl. 206, 209 (2006).

Failure by a non-moving party to raise a genuine issue of material fact results in the court's granting summary judgment in favor of the moving party. See RCFC 56(c)(1). "The party opposing the motion must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient." SRI Int'l v.

Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116 (Fed. Cir. 1985) (en banc) (citing Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731 F.2d 831, 836 (Fed. Cir. 1984)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis omitted).

## III. Discussion

Defendant argues that "[a]s to ownership, plaintiff has no cause of action against the government concerning the [four works published by HRD Press] because, although qualifying as a 'beneficial owner' under 17 U.S.C. § 501(b) [(2006)], he fails to qualify as a 'copyright owner' under 28 U.S.C. § 1498(b)." Def.'s Mot. 1. Defendant further contends that "as to the period for recovery, because § 1498(b) contains no waiver of sovereign immunity for the unauthorized and independent actions of third parties, the government is not liable for any infringement beyond March 15, 2004, when it removed the allegedly infringing materials from its server." Def.'s Mot. 1.

### A. Plaintiff Has Standing to Sue the Government for Copyright Infringement Under 28 U.S.C. § 1498 for the Four Works Published by HRD Press

In Cohen, the court found that "[i]n order to prevail on its motion for summary judgment[,] the government must demonstrate that plaintiff has no beneficial or legal interest in the works in question." 94 Fed. Cl. at 174 (citing 17 U.S.C. § 501(b)). Because the government failed to put forward evidence to dispute that Cohen is a beneficial owner of the four works published by HRD Press, the court denied defendant's motion regarding plaintiff's standing to sue the government for copyright infringement for those works. Id.

Defendant seeks reconsideration of the court's finding because "the parties' dispute concerned the legal issue of whether beneficial ownership conferred standing to sue under 28 U.S.C. § 1498(b), and not the factual issue of whether Dr. Cohen qualified as a beneficial owner under 17 U.S.C. § 501(b)." Def.'s Mot. 6. Defendant admits that "Dr. Cohen's right to receive royalties pursuant to his contracts with HRD Press establish[es] that he meets the definition of 'beneficial owner' in 17 U.S.C. § 501(b)." Def.'s Mot. 7. However, defendant disputes "whether such beneficial ownership is sufficient to confer standing pursuant to a proper statutory interpretation of the government's limited waiver of sovereign immunity prescribed by 28 U.S.C. § 1498(b)." Def.'s Mot. 7; see United States' Mot. for Partial Summ. J. 6 n.2 ("This waiver of sovereign immunity by the government for copyright infringement is more narrow than a

cause of action that may be brought under the Copyright Act against a private party.”). Defendant argues that because “‘Dr. Cohen assigned his rights under the Copyright Act in the four asserted works to HRD Press[,] [a]t the time of the alleged infringement, Dr. Cohen was no longer the ‘copyright owner’ and therefore has no cause of action against the government under 28 U.S.C. § 1498.’” Def.’s Mot. 8 (quoting United States’ Mot. for Partial Summ. J. 8); see United States’ Mot. for Partial Summ. J. 1 (“Dr. Cohen lacks standing to assert a copyright infringement claim against the United States (government) under 28 U.S.C. § 1498(b) for the four works published by HRD Press because he was not the copyright owner at the time of the alleged infringement.”). Because the court did not address the foregoing legal arguments in Cohen, the court addresses them now. See RCFC 54(b).

Copyright infringement suits against the United States are governed by 28 U.S.C. § 1498(b). See, e.g., Blueport Co. v. United States, 533 F.3d 1374, 1378-79 (Fed. Cir. 2008); Boyle v. United States, 200 F.3d 1369, 1372-73 (Fed. Cir. 2000). “Section 1498(b) is a detailed, carefully crafted, complex provision in which Congress carefully and explicitly set forth the precise standards governing private suits against the United States for copyright infringement.” Walton v. United States, 551 F.3d 1367, 1370 (Fed. Cir. 2009). Section 1498(b) provides in relevant part as follows:

> [W]henever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States . . . the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement . . . .

28 U.S.C. § 1498(b).

“Copyright owner” is not defined in 28 U.S.C. § 1498. Furthermore, as far as the court can discern, the definition of “copyright owner” under 28 U.S.C. § 1498(b) has not been the subject of a dispositive analysis by the United States Court of Appeals for the Federal Circuit. Although defendant argues that a beneficial owner is not a “copyright owner” under 28 U.S.C. § 1498(b) and therefore does not have standing to sue the United States for copyright infringement, see Def.’s Mot. 7; United States’ Mot. for Partial Summ. J. 6 n.2, the court need not decide the issue because Dr. Cohen is both the beneficial and legal owner of the exclusive rights allegedly infringed upon by the government.

"The [United States] Court of Federal Claims applies the substantive law of Title 17 of the United States Code when evaluating copyright infringement claims against the United States." RT Computer Graphics, Inc. v. United States, 44 Fed. Cl. 747, 754 (1999) (citing Steve Altman Photography v. United States, 18 Cl. Ct. 267, 279 (1989)). A copyright is treated "as a bundle of discrete 'exclusive rights,' each of which 'may be transferred . . . and owned separately" by the legal owner of those rights. N.Y. Times Co. v. Tasini, 533 U.S. 483, 495-96 (2001) (quoting 17 U.S.C. §§ 106, 201(d)(2)); 17 U.S.C. § 201(d)(1) ("The ownership of a copyright may be transferred in whole or in part . . . ."). The bundle of "exclusive rights" includes the rights of reproduction, preparation of derivative works, distribution, public performance and public display. 17 U.S.C. § 106. The legal owner of these exclusive rights may transfer ownership of any one or more of the rights through the use of an exclusive license. 17 U.S.C. § 101 ("A 'transfer of copyright ownership' is an assignment, mortgage, exclusive license, or any other conveyance . . . of a copyright or of any of the exclusive rights comprised [sic] in a copyright . . . ."); see Davis v. Blige, 505 F.3d 90, 100 n.10 (2d Cir. 2007) ("The differences between an 'exclusive' license and an assignment or transfer of copyright ownership interest have diminished to the point that the terms are nearly synonymous."). Once the legal owner grants an exclusive license to one of the exclusive rights, the "exclusive licensee of an interest is the only one who may exercise that right." Davis, 505 F.3d at 100 n.10. Therefore, "only the exclusive licensee and not his grantor may sue for later occurring infringements of such rights." Essex Music, Inc. v. ABKCO Music & Records, Inc., 743 F. Supp. 237, 242 (S.D.N.Y. 1990) (emphasis omitted) (citation omitted); Althin CD Med., Inc. v. W. Suburban Kidney Ctr., 874 F. Supp. 837, 842 (N.D. Ill. 1994) (citing Essex Music, 743 F. Supp. at 242). Because legal ownership of a copyright in a work initially vests in the author of the work, the author retains any of the exclusive rights that the author does not transfer, as well as the right to sue for infringements of such rights.[2] See 17 U.S.C. § 201(a); see also Campbell v. Bd. of Trs. of

[2]Under the Copyright Act of 1976 (Copyright Act), which governs copyright suits between private parties, both the beneficial owner and the legal owner of the copyright independently have standing to sue for infringement. 17 U.S.C. § 501(b) (2006); see Campbell v. Bd. of Trs. of Leland Stanford Junior Univ., 817 F.2d 499, 504 (9th Cir. 1987); Bandai Am. Inc. v. Bally Midway Mfg. Co., 775 F.2d 70, 73-74 (3d Cir. 1985). A beneficial owner is someone with an economic interest in the copyright who may bring an infringement action to protect this economic interest. See, e.g., Cortner v. Israel, 732 F.2d 267, 270-71 (2d Cir. 1984). For example, an author who has conveyed exclusive rights in a work in exchange for royalty payments is the beneficial owner of the work. See, e.g., id.; Moran v. London Records, Ltd., 827 F.2d 180, 183 (7th Cir. 1987) (discussing the legislative history of 17 U.S.C. § 501(b)). Therefore, under the Copyright Act, an author who receives royalty payments for the work has

continue...

Leland Stanford Junior Univ., 817 F.2d 499, 504 (9th Cir. 1987) ("The ability to resort to the courts to enforce exclusive rights is the cornerstone of the copyright property interest."); Essex Music, 743 F. Supp. at 242.

The government contends that Dr. Cohen does not have standing to sue for copyright infringement because he assigned exclusive rights to HRD Press and was therefore no longer the legal owner of the copyrights in the following four works: The Principles of Adult Mentoring Scale (The Principles Article);[3] The Principles Article, Leader's Guide; The Manager's Pocket Guide to Effective Mentoring;[4] and The Mentee's Guide to Mentoring (collectively, the HRD Press works).[5] See United States' Mot. for Partial Summ. J. 1, 5-6, 8; see also Def.'s Mot. 3-4 (citing Pl.'s Resp. to the United States' Proposed Findings of Uncontroverted Facts in Supp. of its Mot. for Partial Summ. J., Dkt. No. 41, ¶ 5); cf. Pl.'s Resp. Opp'n to United States' Mot. for Partial Summ. J., Dkt. No. 42, at 6 n.5 (agreeing that the four listed "HRD Press [works] are the subject of

---

[2]...continue
standing as a beneficial owner to bring an infringement suit against a private party. See 17 U.S.C. § 501(b); Cortner, 732 F.2d 270-71. The parties agree that Dr. Cohen is a beneficial owner of the HRD Press works at issue. See United States' Mot. for Recons. (Def.'s Mot.), Dkt. No. 61, at 7; Pl.'s Resp. to Def.'s Mot. for Recons. of the Aug. 9, 2010 Op. and Order (Pl.'s Resp.), Dkt. No. 66, at 6.

[3]The word "Scale" in the title was later replaced by the word "Inventory," thereby changing the title to "Principles of Adult Mentoring Inventory," which was shortened to and frequently referred to as "PAMI." Pl.'s Resp. Opp'n to United States' Mot. for Partial Summ. J., 11 n.7. Plaintiff refers to the work as "Principles of Adult Mentoring Inventory," and defendant refers to the same work as "The Principles of Adult Mentoring Scale." Compare id. at 11, with United States' Mot. for Partial Summ. J., Dkt. No. 37, at 3-5. The court refers to the work as The Principles Article throughout its Opinion and Order.

[4]The Manager's Pocket Guide to Effective Mentoring is also referred to as The Manager's Pocket Guide to Mentoring. See Pl.'s App. to Pl.'s Resp. Opp'n to United States' Mot. for Partial Summ. J. (Pl.'s App.) A105 (HRD Press contract).

[5]In his Appendix, Plaintiff included a publishing contract between Dr. Cohen and HRD Press for a work entitled The Mentee's Readiness Assessment. See Pl.'s App. A111-A113. Although both parties cite to the contract in their briefs, see Pl.'s Resp. 4 (citing to Pl.'s App. A113); Pl.'s Resp. 12 (citing to an HRD Press contract dated October 10, 2000); Def.'s Mot. 4 (citing to Pl.'s App. A113); United States' Sur-Sur-Reply Addressing Newly Raised Issues in Pl.'s Sur-Reply of Dec. 30, 20010 [sic] (Def.'s Sur-Sur-Reply), Dkt. No. 70-1, at 2 (citing to Pl.'s App. A113), plaintiff did not mention this work in his Complaint, see Compl. passim; see also Compl. Ex. A. passim.

this case"). Plaintiff signed publishing contracts with HRD Press for each of the HRD Press works.[6] Pl.'s App. to Pl.'s Resp. Opp'n to United States' Mot. for Partial Summ. J. (Pl.'s App.) A101-A110 (HRD Press contracts); see Def.'s App. to United States' Mot. for Partial Summ. J. (Def.'s App.) A13-A18 (HRD Press contracts). Each of Dr. Cohen's three publishing contracts covering the four HRD Press works[7] contain the following clause:

> 1. Grant of Exclusive Rights. Author hereby grants and assigns to Publisher the exclusive right to publish and market the Work in paper, diskette, and CD-ROM in the United States and in such foreign countries as the Publisher at its sole discretion may elect.

Pl.'s App. A101, A105, A108 (HRD Press contracts); Def.'s App. A13, A15, A17 (HRD Press contracts). Two of the three contracts with HRD Press for the HRD Press works contain the following additional clause:

> 10. Competitive Material. The Author shall not during time of this agreement, without the Publisher's written consent, publish or permit to be published any material based on work on the same subject written or edited by the Author, that is likely to compete with or injure the sale of the Work in the public marketplace. Author reserves the right to use and publish material based on the Work in scholarly books and journals. Author also reserves the right to grant scholars and students the same permission for the purpose of scholarly research.

Pl.'s App. A107, A110 (HRD Press contracts); Def.'s App. A16, A18 (HRD Press contracts). The third contract with HRD Press, which covers both The Principles Article and The Principle's Article, Leader's Guide, includes a similar clause 10, but also

---

[6]Dr. Cohen's publishing contract with HRD Press for The Principles Article titled the work as Principles of Adult Mentoring Assessment. See Pl.'s App. A101 (HRD Press contract); Def.'s App. to United States' Mot. for Partial Summ. J. (Def.'s App.) A13 (HRD Press contract). The contract for this work included components of the work, including the Leader's Guide, Pl.'s App. A101 (HRD Press contract); Def.'s App. A13 (HRD Press contract), which both parties have treated as a separate work infringed upon by the government, see Compl. Ex. A; United States' Mot. for Partial Summ. J. 6. Therefore, there are a total of three contracts for the four HRD Press works at issue.

[7]See supra note 6.

reserves to Dr. Cohen the "right to use and copy the B&G Scale[8] and to publish material based on research in scholarly books and journals." Pl.'s App. A103 (HRD Press contract); Def.'s App. A14 (HRD Press contract). The government asserts that, because Dr. Cohen conveyed his exclusive rights to reproduce, distribute copies, display the works and prepare derivative works to HRD Press, only HRD Press has standing to sue for infringement of these rights. United States' Mot. for Partial Summ. J. 9-10.

"[P]rinciples of contract law generally apply to construction of copyright assignments, licenses, and other transfers of rights." 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright (Nimmer) § 10.08[A] (2010); Kennedy v. Nat'l Juvenile Det. Ass'n, 187 F.3d 690, 694 (7th Cir. 1999) (citing the same section in an earlier edition of Nimmer). "Contract interpretation requires this court to ascertain what the parties intended by their writing," and "the court must determine whether the objective contract language is ambiguous in light of unanticipated circumstances." Steve Altman Photography, 18 Cl. Ct. at 275 (citations omitted). Courts have "held that a license of rights in a given medium . . . includes only such uses as fall within the unambiguous core meaning of the term . . . and exclude[s] any uses that lie within the ambiguous penumbra . . . . Thus, any rights not expressly (in this case meaning unambiguously) granted are reserved." Nimmer § 10.10[B] (citations omitted); Rey v. Lafferty, 990 F.2d 1379, 1388 (1st Cir. 1993) (quoting similar language in an earlier edition of Nimmer); see 1 William F. Patry, Copyright Law and Practice 392 (1994) (stating that "agreements should, wherever possible, be construed in favor of the copyright transferor, on the ground that the principle embodied in [17 U.S.C. § 204(a)]–a transfer of rights is valid if it is in writing and signed by the owner of the rights conveyed–reflects a policy judgment that copyright owners should retain all rights unless specifically transferred").

The relevant terms of the contract for each of the four HRD Press works are identical and unambiguous: plaintiff assigned "the exclusive right to publish and market the Work in paper, diskette, and CD-ROM" to HRD Press. Pl.'s App. A101, A105, A108 (HRD Press contracts). Plaintiff did not assign his rights to reproduce, display and distribute[9] his works on the Internet to HRD Press. See Pl.'s App. A101, A105, A108

---

[8]The B&G Scale is a component of The Principles Article. See Pl.'s App. A101 (HRD Press contract); Def.'s App. A13 (HRD Press contract).

[9]The parties briefly dispute whether placing copyrighted materials on the Internet constitutes direct infringement of the copyright owner's distribution right under 17 U.S.C. § 106(3). Def.'s Mot. 13 n.3; Pl.'s Resp. 14 n.8; Def. United States' Reply in Supp. of its Mot. for Recons. (Def.'s Reply), Dkt. No. 67, at 10 n.4; Pl.'s Sur Reply to Def.'s Mot. for Recons. of the continue...

(HRD Press contracts). Because plaintiff did not explicitly assign his rights to reproduce, display and distribute his works on the Internet, but rather assigned to HRD Press only "the exclusive right to publish and market the Work in paper, diskette, and CD-ROM," Dr. Cohen retained the rights to reproduce, display and distribute his works on the Internet. See Pl.'s App. A101, A105, A108 (HRD Press contracts); see also 17 U.S.C. § 201(a), (d) (retaining to the author of the work any of the exclusive rights that the author does not transfer).

"In construing the terms of the license, this court must give precedence to narrow, specific language over broad, general language." Steve Altman Photography, 18 Cl. Ct. at 281. In Steve Altman Photography, 18 Cl. Ct. at 281, the defendant contended that the license's broad language regarding "public relations" authorized publication of portraits in an annual report. The court found that the defendant had "overlook[ed] that the authorization itself discusses specifically annual report usage" and found that because the "license limit[ed] annual report usage to the 1982 annual report," the "license [did] not authorize publication of the seven copyrighted portraits in [the] 1983 annual report." Id.; cf. Rey, 990 F.2d at 1390 (finding that because the license "contemplate[d] a comparatively limited and particular grant of rights," the right to distribute the films "'for television viewing'" did not "encompass the right to distribute the . . . films in videocassette form" (emphasis omitted)). Similarly, clause 10 of the contracts contains broad language whereby Dr. Cohen agreed not to "publish or permit to be published any material based on work on the same subject written or edited by [him], that is likely to compete with or injure the sale of the Work[s] in the public marketplace." Pl.'s App. A103, A107, A110 (HRD Press contracts). While contending that the broad language in clause 10 means that Dr. Cohen transferred his rights to reproduce, display and distribute his works on the Internet to HRD Press, see Def.'s Sur-Sur-Reply 3, defendant overlooks that the contract specifically limits the format in which HRD Press may publish and market[10] the works to "paper, diskette, and CD-ROM," Pl.'s App. A101, A105, A108

[9]...continue
Aug. 9, 2010 Op. and Order (Pl.'s Sur-Reply), Dkt. No. 68-1, at 4. The court does not need to decide this issue at this time, and instead only finds that if placing copyrighted materials on the Internet constitutes infringement of the owner's distribution right, plaintiff has standing to sue the government for the infringement of such right because under his contracts with HRD Press for the HRD Press works at issue, Dr. Cohen did not transfer this right to HRD Press. See Pl.'s App. A101, A105, A108 (HRD Press contracts); see also 17 U.S.C. § 201(a), (d) (retaining to the author of the work any of the exclusive rights that the author does not transfer).

[10]Defendant also argues that "the term 'publish and market' encompasses the right to reproduce, distribute copies, and display the works." Def.'s Sur-Sur-Reply 3; United States'
continue...

(HRD Press contracts). Clause 10 of the license also reserves to Dr. Cohen the right to prepare and publish derivative works "in scholarly books and journals" and anywhere that is not "likely to compete with or injure the sale of the Work in the public marketplace." See Pl.'s App. A103, A107, A110 (HRD Press contracts).

This case is also similar to Cohen v. Paramount Pictures Corp. (Paramount), 845 F.2d 851, 852 (9th Cir. 1988), in which the copyright owner of a musical composition licensed to H & J Pictures, Inc. (H & J Pictures) the right to use the composition in a film and to exhibit the film in theatres and on television. The license began by granting the licensee the broad "authority . . . to record, in any manner, medium, form or language, the words and music of the musical composition" and "to make copies of such recordings and to perform said musical composition everywhere, all in accordance with the terms, conditions, and limitations hereinafter set forth . . . ." Id. at 853 (omitted material in original) (emphasis omitted). The license then specifically limited H & J Pictures' rights to the composition by stating the following:

> The . . . license herein granted to perform . . . said musical composition is granted for: (a) The exhibition of said motion picture . . . to audiences in motion picture theatres and other places of public entertainment where motion pictures are customarily exhibited . . . (b) The exhibition of said motion picture . . . by means of television . . . , including "pay television", "subscription television" and "closed circuit into homes" television . . . .

Id. (omitted material in original) (emphasis omitted). H & J Pictures subsequently assigned to Paramount Pictures (Paramount) all of its rights, title and interest in the motion picture. Id. at 852. Paramount then had a videocassette manufacturer make copies of the film on videocassette, which Paramount sold to the public. Id. The plaintiff sued Paramount for copyright infringement, claiming that the license "did not confer the right to use the composition in a reproduction of the film in videocassettes distributed for home display." Id. Reading the license narrowly, the court found that "[a]lthough the language of the license permits the recording and copying of the movie with the musical composition in it, in any manner, medium, or form, nothing in the express language of the license authorizes distribution of the copies to the public by sale or rental." Id. at 853 (emphasis omitted). Similarly, while Dr. Cohen's contracts with HRD Press permit HRD

---

[10]...continue
Mot. for Partial Summ. J. 9-10 (citing Campbell, 817 F.2d at 504). However, the limiting language following the phrase makes it clear that even if "publish and market" does encompass the right to reproduce, distribute copies and display the works, HRD Press has the right to do so only on "paper, diskette, and CD-ROM." Pl.'s App. A101, A105, A108 (HRD Press contracts).

Press "to publish and market the Work in paper, diskette, and CD-ROM," Pl.'s App. A101, A105, A108 (HRD Press contracts), nothing in the express language of the licenses authorizes HRD Press to reproduce, distribute or display the works on the Internet.

Furthermore, "this court must construe any ambiguity in the authorization against the drafter." Steve Altman Photography, 18 Cl. Ct. at 280 (citing Thanet Corp. v. United States, 219 Ct. Cl. 75, 591 F.2d 630, 633 (1979)); see Rey, 990 F.2d at 1391. HRD Press drafted the contracts for the HRD Press works. See Pl.'s App. A166-A167 (Dep. of Robert W. Carkhuff) (agreeing that for the HRD Press works at issue, HRD Press used a "form contract"); Pl.'s App. A169 (Dep. of Robert W. Carkhuff) (stating that the contract is "our standard contract or it was at the time"). Therefore, if HRD Press desired the rights to reproduce, distribute or display Dr. Cohen's works on the Internet, HRD Press should have drafted the contract to include a transfer of such rights.

The court recognizes that some courts read licenses broadly, so that "the licensee may properly pursue any uses that may reasonably be said to fall within the medium as described in the license." Nimmer § 10.10[B]; see Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co., 145 F.3d 481, 486 (2d Cir. 1998) (stating that a license that "conveys the right to record [the composition] in any manner, medium or form for use in [a] motion picture" is "broad enough to include distribution of the motion picture in video format" (bracketed material in original) (internal quotation marks omitted)). However, even if this court were to take a broader interpretation of the licenses, the result would be the same. Although defendant argues that the "underlying contracts clearly encompass electronic formats by virtue of the terms diskette and CD-ROM," Def.'s Sur-Sur-Reply 4 (internal quotation marks omitted), the display of works on the Internet cannot be said to reasonably fall within the mediums of "paper, diskette, and CD-ROM," see Pl.'s App. A101, A105, A108 (HRD Press contracts).

"This court must interpret the terms [in the license] according to their recognized meanings." Steve Altman Photography, 18 Cl. Ct. at 280 (citation omitted). A "diskette," which is another word for "floppy disk," The American Heritage Dictionary of the English Language 520 (4th ed. 2000), is "[a] flexible plastic disk coated with magnetic material and covered by a protective jacket, used primarily by computers to store data magnetically," id. at 675. A "CD-ROM" is defined as "[a] compact disk that functions as read-only memory." Id. at 298. The "Internet" is "[a]n interconnected system of networks that connects computers around the world via the TCP/IP protocol," id. at 915, and a "website" is "[a] set of interconnected webpages, usually including a homepage, generally located on the same server, and prepared and maintained as a collection of information by a person, group, or organization," id. at 1949. Although the use of diskettes, CD-ROMs and the Internet involves a computer, to view material on diskettes

and CD-ROMs does not require the use of a network, whereas to view websites on the Internet, the computer must be connected to a network. See The American Heritage Dictionary of the English Language 915, 1949; cf. Paramount, 845 F.2d at 853-54 (explaining that "[e]xhibition of a film on television differs fundamentally from exhibition by means of a videocassette recorder" because "[t]elevision requires an intermediary network, station, or cable to send the television signals into consumers' homes," whereas videocassettes "eliminate the involvement of an intermediary, such as a network"). Because diskettes and CD-ROMs are capable of storing information in a fixed medium, see The American Heritage Dictionary of the English Language 298, 675, the owner of a diskette or CD-ROM would be able to view the information stored on those disks for as long as the owner possessed the disks. On the other hand, because websites are maintained by an intermediary, see The American Heritage Dictionary of the English Language 1949, the time an individual may access the information on the website is limited to the time the person, group or organization that maintains the website displays the material, cf. Paramount, 845 F.2d at 853-54 (distinguishing viewing a film on a videocassette, where the "entertainment is controlled within the home, at the viewer's complete discretion," and viewing a film on a television channel, which is "controlled entirely by the intermediary"). Because diskettes and CD-ROMs have little in common with the Internet besides the fact that an individual would use a computer to view the information displayed on each source, the Internet cannot "reasonably be said to fall within the medium as described in the license." Nimmer § 10.10[B]; cf. Paramount, 845 F.2d at 854 (concluding that "[t]elevision and videocassette display . . . have very little in common besides the fact that a conventional monitor of a television set may be used both to receive television signals and to exhibit a videocassette").

Defendant argues that, despite the limited language in the contract, the conduct of the parties pursuant to the contract indicates that Dr. Cohen conveyed his exclusive right to display his works on the Internet to HRD Press. Def.'s Sur-Sur-Reply 4-5. Defendant claims that Dr. Cohen's works are displayed on HRD Press's website, entitled Ultimate Trainer's Resource Library, and on a website owned and operated by Amazon.com, Inc. (Amazon). Def.'s Sur-Sur-Reply 5; see generally Def.'s Sur-Sur-Reply Ex. A A55-A64 (screenshots from the Ultimate Trainer's Resource Library and Amazon). Defendant states that because "HRD Press, with the apparent acquiescence of Dr. Cohen, has displayed his works via the [I]nternet on a website for a fee," and because "HRD Press has also allowed Amazon to use its 'Look Inside' feature for at least one of the works at issue, . . . so that a potential buyer may peruse some of the content of the book," "Dr. Cohen has retained no exclusive rights to the HRD Press works at issue[,] is not a legal owner of these copyrights" and therefore does not have standing to sue the government for copyright infringement of those works. Def.'s Sur-Sur-Reply 5. However, on the record before the court, there is no evidence that Dr. Cohen assigned to HRD Press the

exclusive right to display his works on the Internet. A transfer of ownership of an exclusive right must be in writing. 17 U.S.C. § 204(a); Davis, 505 F.3d at 100 n.10 ("[E]xclusive license agreements must be in writing." (citation omitted)); RT Computer Graphics, 44 Fed. Cl. at 754 ("[A]ny 'transfer of copyright ownership' must be in writing and signed." (citations omitted)). Through his contracts with HRD Press, Dr. Cohen conveyed to HRD Press "the exclusive right to publish and market the Work[s] in paper, diskette, and CD-ROM" only. Pl.'s App. A101, A105, A108 (HRD Press contracts). Defendant has not cited to or produced a writing between Dr. Cohen and HRD Press in which Dr. Cohen has conveyed to HRD Press his exclusive right to display his works on the Internet. See Def.'s Sur-Sur-Reply 4-5. Any oral agreement between Dr. Cohen and HRD Press or Amazon in which Dr. Cohen allowed either company to display his works on the Internet is irrelevant because an oral agreement is a non-exclusive license, and a non-exclusive license does not transfer copyright ownership or the right to sue for infringements of such rights. 17 U.S.C. § 101; see RT Computer Graphics, 44 Fed. Cl. at 754; see also Essex Music, 743 F. Supp. at 242. Furthermore, any agreement, written or oral, between HRD Press and Amazon to display Dr. Cohen's works on Amazon's website is also irrelevant because only Dr. Cohen, who is the exclusive owner of the right to display his works on the Internet, may transfer that right. See 17 U.S.C. § 201(d)(2).

Because plaintiff has standing to sue the government for copyright infringement under 28 U.S.C. § 1498(b), the United States has not suffered any "manifest injustice" from the court's denial of the United States' Motion for Partial Summary Judgment, see Matthews, 73 Fed. Cl. at 526 (citation omitted), and defendant's motion for reconsideration on this issue is DENIED.

### B. The Government Cannot Be Held Liable for Copyright Infringement After FEMA Removed Plaintiff's Works from its Website

In Cohen, the court stated that "the government took down the infringing materials from its website on March 15, 2004." 94 Fed. Cl. at 175. However, because plaintiff put forward evidence that "the cached versions of websites were available to the public after the government took down the infringing materials from its website," the court found that plaintiff "raised a genuine issue of material fact sufficient to defeat defendant's contention that recovery is limited to the period ending on March 15, 200[4]." Id.

Defendant seeks reconsideration "because it is unclear whether the Court overlooked the government's arguments since the opinion of August 9, 2010, did not reference the Boyle decision or more generally address any sovereign immunity waiver for secondary liability." Def.'s Mot. 15 (citation omitted). Defendant contends that the government is not directly liable for copyright infringement after FEMA removed the

materials from its website because after that date, defendant was no longer infringing on any of the rights prescribed by 17 U.S.C. § 106. Def.'s Mot. 13-14; see United States' Mot. for Partial Summ. J. 12 ("To the extent the government's postings to its servers constitute copyright infringement, this conduct terminated on March 15, 2004, and there is no basis to establish copyright infringement beyond that date." (citation omitted)). Defendant also argues that because 28 U.S.C. § 1498(b) does not waive sovereign immunity for the unauthorized and independent actions by third parties, the United States cannot be held secondarily liable for direct infringement caused by search engines such as Google, Inc. (Google) or downstream Internet users after FEMA removed the infringing material from its website. Def.'s Mot. 14-15; see United States' Mot. for Partial Summ. J. 12 ("Nor can there be any basis for copyright infringement on a theory of contributory infringement or inducement." (citation omitted)). Because the court did not address the foregoing legal arguments in Cohen, the court addresses them now. See RCFC 54(b).

For copyright infringement suits, "the United States has waived sovereign immunity in three instances: (1) when the United States itself infringes a copyright, (2) when a corporation owned or controlled by the United States infringes, and (3) when a contractor, subcontractor, or any person, firm, or corporation, acting for the Government and with its authorization or consent, infringes." Boyle, 200 F.3d at 1373 (citing 28 U.S.C. § 1498(b)). In other words, Congress intended "to waive the government's sovereign immunity to suits for copyright infringement only when it infringes a copyright itself or authorizes or consents to infringement by a third party acting for it." Id. Therefore, in order to defeat defendant's contention that plaintiff's period of recovery ended on the date the government removed Dr. Cohen's works from its website, plaintiff must show that the government itself continued to infringe Dr. Cohen's copyright or a third party acting for the government infringed Dr. Cohen's copyright with the government's authorization or consent.

1. The United States Is Not Directly Liable for Copyright Infringement After FEMA Removed Plaintiff's Works from its Website

Copyright "[i]nfringement requires two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Gaylord v. United States, 595 F.3d 1364, 1372 (Fed. Cir. 2010) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). "The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights described in [17 U.S.C.] § 106." Arista Records LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir. 2010) (quoting A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001)) (internal quotation marks omitted); see Gamma Audio & Video, Inc. v. Ean-Chea, 11 F.3d 1106, 1115 (1st Cir. 1993) ("Copying is demonstrated when someone who has

access to a copyrighted work uses material substantially similar to the copyrighted work in a manner which interferes with a right protected by 17 U.S.C. § 106." (quoting Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 291 (3d Cir. 1991))). Under 17 U.S.C. § 106, the owner of a copyright of a literary work has the following exclusive rights: (1) "to reproduce the copyrighted work"; (2) "to prepare derivative works based upon the copyrighted work"; (3) "to distribute copies . . . of the copyrighted work to the public"; (4) "to perform the copyrighted work publicly"; and (5) "to display the copyrighted work publicly." 17 U.S.C. § 106.

The government is not directly liable for copyright infringement after FEMA removed Dr. Cohen's works from its website because at that point, neither the government nor any entity acting for the government and with the government's authorization or consent was infringing on one of plaintiff's exclusive rights under 17 U.S.C. § 106. See 28 U.S.C. § 1498(b); see also Arista Records, 604 F.3d at 117. In other words, there is no evidence in the record to suggest, and plaintiff does not argue, that after FEMA removed Dr. Cohen's materials from its website, the government reproduced Dr. Cohen's works, prepared derivative works based on Dr. Cohen's works, distributed copies of Dr. Cohen's works to the public, performed Dr. Cohen's works publicly or displayed Dr. Cohen's works publicly. See 17 U.S.C. § 106.

Defendant admits that "[t]here is testimony in the record that the accused materials were still available on the Internet from a storage location hosted by [Google] after FEMA removed the accused materials from its website." United States' Mot. for Partial Summ. J. 11 n.4 (citations omitted). However, in order to hold the government liable for the display or distribution[11] of Dr. Cohen's materials through the stored version of FEMA's website available in Google's cache, plaintiff must prove that Google was acting for the government and with its authorization or consent when it displayed or distributed Dr. Cohen's works through its cached version of the FEMA website. See 28 U.S.C. § 1498(b); Boyle, 200 F.3d at 1373 (explaining that "[t]he final clause [of 28 U.S.C. § 1498(b)] extends the waiver to third parties acting for the government and with the government's authorization or consent" (quoting Auerbach v. Sverdrup Corp., 829 F.2d 175, 179 (D.C. Cir. 1987)) (emphasis in original) (internal quotation marks omitted)). The "government waiver of immunity by authorization and consent requires explicit acts

---

[11]The parties dispute whether placing copyrighted materials on the Internet constitutes direct infringement of the copyright owner's distribution right under 17 U.S.C. § 106(3). Def.'s Mot. 13 n.3; Pl.'s Resp. 14 n.8; Def.'s Reply 10 n.4; Pl.'s Sur-Reply 4. Because the court is considering only whether the United States can be held liable for copyright infringement after FEMA removed Dr. Cohen's works from its website, the court need not decide this issue at this time.

or extrinsic evidence sufficient to prove the government's intention to accept liability for a specific act of infringement." Auerbach, 829 F.2d at 177; Freiman v. Lazur, 925 F. Supp. 14, 20 (D.D.C. 1996) (quoting same).

Plaintiff does not argue and has put forth no evidence to suggest that Google was acting for the government or that the government authorized or consented to Google's caching of FEMA's website. See Pl.'s Resp. Opp'n to United States' Mot. for Partial Summ. J. 17-20; Pl.'s Resp. 13-14; Pl.'s Sur-Reply 5-6. Similarly, plaintiff has not argued or put forth evidence to suggest that any downstream Internet users who accessed Dr. Cohen's materials through Google's cache after FEMA removed the materials from its website were acting for the government and with its authorization or consent. See Pl.'s Resp. Opp'n to United States' Mot. for Partial Summ. J. 17-20; Pl.'s Resp. 13-14; Pl.'s Sur-Reply 5-6. Instead, plaintiff contends that "the task of fixing such a hypothetical 'removal' date is nearly moot," Pl.'s Resp. Opp'n to United States' Mot. for Partial Summ. J. 20, because "Plaintiff's damages resulting from the obliteration of the copyright obviously continued after the offending materials were allegedly removed from FEMA's website," id. at 19. Plaintiff argues that "the government's act of infringing Plaintiff's works forever placed these works in the public domain," Pl.'s Resp. 13-14, which "destroyed the copyright for all time, [and] the measure of damages for the taking is the full and reasonable value of the copyright,"[12] Pl.'s Resp. 14; see Pl.'s Sur-Reply 6

---

[12]In Plaintiff's Response to Defendant's Motion for Reconsideration of the August 9, 2010 Opinion and Order, plaintiff, for the first time, raised an argument that the government is liable for copyright infringement under the Takings Clause of the Fifth Amendment. See Pl.'s Resp. 14 (citing U.S. Const. amend. V, cl. 4). After stating the three circumstances in which the United States has waived its sovereign immunity for copyright infringement and citing to 28 U.S.C. § 1498(b) (2006), Pl.'s Resp. 13, plaintiff stated the following:

> When the public took Plaintiff's content from the site, the public was not infringing at all, but merely taking what the government had rendered public by its own infringement. Since the public could take Plaintiff's content from the site without actually infringing itself, the statute above is clearly inapplicable. The government was the only "infringing" party, and the damages are to be measured by the total value of Plaintiff's copyright for all time. The government must prove just compensation when it "takes" a person's property by destroying, physically occupying, or excessively regulating it for a public purpose. See U.S. Const. Amend. V, cl.4. Publication of Plaintiff's material on its public site destroyed the copyright for all time, [and] the measure of damages for the taking is the full and reasonable value of the copyright.

continue...

("Defendant is liable for the full value of its infringement which in this case is the whole value of the copyright, which it rendered completely worthless by blatantly infringing on Dr. Cohen's copyrights and displaying the copyrighted works to the entire world.").

Plaintiff's argument conflates the issue of whether the United States can be held liable for copyright infringement with the amount of damages to which Dr. Cohen is entitled as a result of any infringement of his copyrights by the government. Upon a finding of copyright infringement by the United States or a third party acting for the government and with its authorization or consent, a plaintiff is entitled to "the recovery of his reasonable and entire compensation as damages for such infringement, including the minimum statutory damages as set forth in [17 U.S.C. § 504(c)]." 28 U.S.C. § 1498(b). However, under its limited waiver of sovereign immunity, the United States may be held liable only for infringements by the government or by a third party acting for the government and with its authorization or consent. 28 U.S.C. § 1498(b); see Boyle, 200 F.3d at 1372-73. Because plaintiff has not argued and there is no evidence showing that Google or any downstream Internet users acted for the government and with its authorization or consent, the United States cannot be held liable for copyright infringement after it removed Dr. Cohen's materials from its website.

2. The United States Cannot Be Held Secondarily Liable for Copyright Infringement

It does not appear that plaintiff contends that the government is secondarily liable for copyright infringement. See Pl.'s Resp. Opp'n to United States' Mot. for Partial Summ. J. 20 ("Plaintiff is not . . . complaining of 'infringements' per se by third parties . . . but rather, that the Government's direct infringement via a non-copyrightable public domain website destroyed the copyrights . . . ." (emphasis in original)); Pl.'s Resp. 14 ("When the public took Plaintiff's content from the site, the public was not infringing

---

[12]...continue
Pl.'s Resp. 14. However, it is 28 U.S.C. § 1498(b), not the Fifth Amendment, that provides the waiver of sovereign immunity that enables a plaintiff to file suit against the government for copyright infringement in the United States Court of Federal Claims. See 28 U.S.C. § 1498(b). Because 28 U.S.C. § 1498(b) provides the exclusive remedy for claims of copyright infringement against the government, plaintiff does not have a cognizable claim under the Fifth Amendment against the government. 28 U.S.C. § 1498(b); see Zoltek Corp. v. United States, 442 F.3d 1345, 1353 (Fed. Cir. 2006) (per curiam) (finding that 28 U.S.C. § 1498(a), the waiver of sovereign immunity for patent infringement claims against the government, displaces any Fifth Amendment taking claim for patent infringement because to hold otherwise "would render superfluous § 1498").

at all, but merely taking what the government had rendered public by its own infringement."); Pl.'s Sur-Reply 6 ("[T]he infringement here was directly that of the Defendant . . . ."). However, because defendant argues that there cannot "be any basis for copyright infringement on a theory of contributory infringement or inducement," United States' Mot. for Partial Summ. J. 12 (citing Siler v. United States, No. 2009-5130, slip. op. at 2, 363 F. App'x 750, 750 (Fed. Cir. Feb. 2, 2010) (per curiam) (unpublished)); Def.'s Mot. 12-13, the court briefly addresses the issue.

Secondary liability for copyright infringement is a term that encompasses both contributory infringement and vicarious infringement. See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005). "One infringes contributorily by intentionally inducing or encouraging direct infringement and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." Id. (citations omitted). The government has not waived its sovereign immunity for secondary liability based on infringement by unauthorized and independent third parties. See 28 U.S.C. § 1498(b); see also Boyle v. United States, 44 Fed. Cl. 60, 63 (1999) (stating that "the Government is not liable for its inducing infringement by others [or] for its conduct contributory to infringement of others" (quoting Decca Ltd. v. United States, 225 Ct. Cl. 326, 335-36 (1980))), aff'd, 200 F.3d 1369 (Fed. Cir. 2000). Therefore, the court agrees with defendant and finds that the government cannot be held liable as a contributory or vicarious infringer for the actions taken by search engines such as Google or downstream private Internet users.

Because the United States cannot be held liable for infringing acts by third parties that are not acting for the government or with the government's authorization or consent under 28 U.S.C. § 1498(b), the United States suffered a "manifest injustice" from the court's denial of the United States' Motion for Partial Summary Judgment, see Matthews, 73 Fed. Cl. at 526 (citation omitted), and defendant's motion for reconsideration on this issue is GRANTED.

## IV. Conclusion

For the foregoing reasons, defendant's Motion is GRANTED-IN-PART and DENIED-IN-PART. To the extent inconsistent with this Opinion and Order, the court's August 9, 2010 Opinion is SUPERSEDED.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge