# In the United States Court of Federal Claims

No. 07-154 C

(E-Filed: August 3, 2011)

| | | |
|---|---|---|
| NORMAN H. COHEN, Ed.D., | ) | Motion to Strike; Motion for Partial Summary Judgment; Copyright Infringement; Actual Damages; Statutory Damages |
| Plaintiff, | ) | |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

Jonathan M. Cohen, Philadelphia, PA, for plaintiff.

Susan L.C. Mitchell, with whom were Tony West, Assistant Attorney General, and John J. Fargo, Director, Intellectual Property Section, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. David M. Ruddy, United States Department of Justice, Washington, DC, of counsel.

OPINION AND ORDER

HEWITT, Chief Judge

Before the court are the United States' Second Motion for Partial Summary Judgment to Deny Dr. Cohen's Claim for Lost Profits from Lost Sales of His Allegedly Infringed Works to the Public; to Deny Any Award of Damages for Wilful Infringement; and to Limit Any Statutory Damage Award to the Minimum of $750 Per Work (defendant's Motion for Partial Summary Judgment or Def.'s Mot.) and defendant's Appendix (Def.'s App.), filed November 19, 2010, Docket Number (Dkt. No.) 62; United States' Proposed Findings of Uncontroverted Facts in Support of its Second Motion for Summary Judgment (DFUF), filed November 19, 2010, Dkt. No. 63; Plaintiff's Response in Opposition to the United States' Second Motion for Partial Summary Judgment (plaintiff's Response or Pl.'s Resp.) and plaintiff's Appendix (Pl.'s App.), filed January 28, 2011, Dkt. No. 75; Plaintiff's Response to United States' Proposed Findings of

Uncontroverted Facts in Support of its Second Motion for Summary Judgment (Pl.'s Resp. to DFUF), filed January 28, 2011, Dkt. No. 76; and the United States' Reply in Support of its Second Motion for Partial Summary Judgment to Deny Dr. Cohen's Claim for Lost Profits from Lost Sales of His Allegedly Infringed Works to the Public; to Deny Any Award of Damages for Wilful Infringement; and to Limit Any Statutory Damage Award to the Minimum of $750 Per Work (defendant's Reply or Def.'s Reply) and defendant's Appendix (Def.'s Reply App.), filed February 25, 2011, Dkt. No. 77.

Also before the court are the United States' Motion to Preclude Expert Testimony of Ivan Zatkovich (defendant's Motion to Strike or Def.'s Mot. Strike) and defendant's Appendix (Def.'s App. Strike), filed February 25, 2011, Dkt. No. 78; Plaintiff's Response in Opposition to Defendant, the United States' Motion to Preclude Expert Testimony of Ivan Zatkovich (Pl.'s Resp. Strike), filed March 28, 2011, Dkt. No. 81; and United States' Reply in Support of its Motion to Preclude Expert Testimony of Ivan Zatkovich (Def.'s Reply Strike) and defendant's Reply Appendix (Def.'s Reply Strike App.), filed April 14, 2011, Dkt. No. 86.

In addition, before the court are the United States' Brief Addressing the Effect of This Court's Order and Opinion of April 14, 2011 on Pending Motions (defendant's Brief or Def.'s Br.), filed May 20, 2011, Dkt. No. 89, and Plaintiff's Brief in Response to Defendant, the United States' Brief Addressing the Effect of this Court's Order and Opinion of April 14, 2011 on Pending Motions (plaintiff's Response Brief or Pl.'s Resp. Br.), filed May 27, 2011, Dkt. No. 90.[1]

---

[1]On November 19, 2010 defendant filed the United States' Motion for Reconsideration, Docket Number (Dkt. No.) 61, as well as its second Motion for Partial Summary Judgment, Dkt. No. 62. While the court was considering the United States' Motion for Reconsideration, the parties completed briefing on defendant's second Motion for Partial Summary Judgment. In addition, on February 25, 2011 defendant filed the United States' Motion to Preclude Expert Testimony of Ivan Zatkovich (defendant's Motion to Strike or Def.'s Mot. Strike), Dkt. No. 78, and the parties completed briefing on that motion on April 14, 2011.

On April 14, 2011 the court granted in part the United States' Motion for Reconsideration. Op. and Order of Apr. 14, 2011, Dkt. No. 84. Because "[t]he issues in this case are sufficiently complicated that the court [did] not wish to rely on briefing that no longer reflects the parties' positions following the court's Opinion and Order on the United States' Motion for Reconsideration," the court ordered the parties to "confer with each other and discuss whether they would like to re-brief" either or both of defendant's pending motions and stated that "[i]f the parties or either of them wish to re-brief [either or both of defendant's pending motions], the court will set a schedule for such briefing." Order of Apr. 14, 2011, Dkt. No. 85, at 2. In

continue...

I. Background

Dr. Norman H. Cohen (Dr. Cohen or plaintiff) brought an action for copyright infringement against the United States government, acting through the Federal Emergency Management Agency (United States, FEMA, government or defendant). Civil Action Complaint (Complaint or Compl.), Dkt. No. 1, at ¶¶ 5, 10. Plaintiff contends that the United States willfully infringed his copyrights in at least six of his works when it displayed the works on FEMA's website without Dr. Cohen's permission, thereby making the works available to FEMA employees and to the public. Compl. ¶¶ 5, 10-12; see Pl.'s Resp. to DFUF ¶ 2.

Plaintiff retained Ivan Zatkovich "to render . . . expert opinions on the hardcopy and internet publishing and damages issues" in this case. Pl.'s Resp. Strike 2; see Pl.'s Resp. to DFUF ¶ 23. Mr. Zatkovich has provided an initial expert report and a supplemental expert report, as well as deposition testimony and an affidavit. On July 10, 2009 plaintiff provided Mr. Zatkovich's initial expert report to defendant. See Def.'s Mot. Strike 1; Pl.'s Resp. Strike 2; Def.'s App. Strike A15-A82 (Zatkovich Initial Expert Report). In his initial expert report, Mr. Zatkovich set forth the following two theories of recovery for actual damages, the first of which applies to the public's access to the works on FEMA's website, and the second of which applies to the use of the works by FEMA employees: (1) as to the public's access, lost profits from lost sales of copyrighted works to the public that Dr. Cohen would have received but for FEMA's infringement (utilizing a 15 to 17.5 percent royalty rate as set forth in clause 7(a) of Dr. Cohen's HRD Press

---

[1]...continue
their Joint Status Report (JSR), plaintiff stated that "[p]laintiff believes we do not need to rebrief anything." JSR, Dkt. No. 87, at 2. Defendant stated that "[i]n lieu of rebriefing the pending motions, the United States . . . would like to file a short (ten pages or less) brief to address any effect that this [c]ourt's decision on reconsideration has on the specific issues addressed in the government's two remaining pending motions." JSR 1. Because one party wished to file supplemental briefing on defendant's pending motions, the court set a briefing schedule to allow the parties to file concurrent opening and response briefs. Order of May 3, 2011, Dkt. No. 88, at 2. Neither party was required to file an opening or a response brief. Order of May 3, 2011, at 2.

In response to the court's scheduling order, on May 20, 2011 defendant filed the United States' Brief Addressing the Effect of This Court's Order and Opinion of April 14, 2011 on Pending Motions (defendant's Brief or Def.'s Br.), Dkt. No. 89. Plaintiff did not file an opening brief. On May 27, 2011 plaintiff filed Plaintiff's Brief in Response to Defendant, the United States' Brief Addressing the Effect of this Court's Order and Opinion of April 14, 2011 on Pending Motions (plaintiff's Response Brief or Pl.'s Resp. Br.), Dkt. No. 90.

contracts), Def.'s App. A562 (Zatkovich Initial Expert Report), and (2) as to the FEMA employees' use, lost royalties that would have accrued from licensing fees for the value of the alleged use of the works by two thousand FEMA employees (utilizing the 50 percent royalty rate set forth in clause 7(c) of Dr. Cohen's HRD Press contracts), Def.'s App. A565 (Zatkovich Initial Expert Report). "The government is only moving for summary judgment on Dr. Cohen's claim to the first category of damages, i.e., to lost profits that he allegedly would have made outside of FEMA." Def.'s Mot. 5.

By letter dated August 3, 2009, in order to correct "'minor errors in the totals'" listed in Mr. Zatkovich's Initial Expert Report, plaintiff provided defendant a supplemental expert report from Mr. Zatkovich dated July 24, 2009. Def.'s Mot. Strike 1 (quoting Def.'s App. Strike A12 (Zatkovich Supplemental Expert Report)); see Pl.'s Resp. Strike 2; Def.'s App. Strike A10-A13 (Letter from Jonathan M. Cohen to Susan L. C. Mitchell and Zatkovich Supplemental Expert Report). Mr. Zatkovich did not provide any additional theories for recovery of damages in his supplemental expert report. See Def.'s App. Strike A12-A13 (Zatkovich Supplemental Expert Report).

On December 28, 2009 defense counsel deposed Mr. Zatkovich. See Def.'s App. Strike A270-A410 (Zatkovich Dep.). As to damages for the public's use of Dr. Cohen's works from FEMA's website, Mr. Zatkovich's deposition testimony departed from his expert report--where he had calculated damages based solely on lost profits from lost sales that occurred as a result of the infringement--and discussed damages in the form of a licensing fee based on the value of use theory of actual damages. See Def.'s App. Strike A387-A390 (Zatkovich Dep.) (colloquy between Mr. Zatkovich and plaintiff's counsel); Def.'s App. Strike A395-A396 (Zatkovich Dep.) (colloquy between Mr. Zatkovich and defense counsel). Mr. Zatkovich testified that he had "considered using the licensing fee calculation estimation that [he] used for the internal cost to FEMA and extrapolate that to the external damages," Def.'s App. Strike A387 (Zatkovich Dep.), but decided not to include the methodology and the calculations for the value of use theory as applied to the public in his expert report because he "chose not to use that particular approach," Def.'s App. Strike A396 (Zatkovich Dep.).

On January 22, 2011 plaintiff untimely filed his response brief to defendant's second motion for partial summary judgment, to which he attached an affidavit by Mr. Zatkovich dated January 21, 2011, see App. to Pl.'s Resp. in Opp'n to the United States' Second Mot. for Partial Summ. J., Dkt. No. 72, at A002-A010 (Zatkovich Aff.). Stating that he had experienced problems with the court's electronic filing system, plaintiff requested that the court deem his response timely filed and that the court permit him to add a title page to the document. Pl.'s Mot. for Relief Under RCFC 30 Regarding Pl.'s Resp. in Opp'n to the United States' Second Mot. for Summ. J., Dkt. No. 73, at 1-2. On

January 28, 2011, with the court's permission, see Order of January 25, 2011, Dkt. No. 74, plaintiff filed a corrected response brief, to which he again attached the affidavit by Mr. Zatkovich, see Pl.'s App. A002-A010 (Zatkovich Aff.). Plaintiff asserts that "[t]he express purpose of this affidavit was 'to provide additional clarification of opinions already set forth in [Mr. Zatkovich's] previous expert report.'" Pl.'s Resp. Strike 2 (quoting Pl.'s App. A004 (Zatkovich Aff.)).

The United States moves to strike the affidavit of Mr. Zatkovich dated January 21, 2011 and "moves to strike, or otherwise preclude the use of, Mr. Zatkovich's non-FEMA site licensing theory from his deposition testimony as a basis for actual damages in this case" pursuant to Rule 26(a)(2) of the Rules of the United States Court of Federal Claims (RCFC), RCFC 37(c)(1), Federal Rule of Evidence 702, and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and its progeny. Def.'s Mot. Strike 1. In its reply brief, the United States also requests that the court "preclude . . . Mr. Zatkovich's cancellation theory." Def.'s Reply Strike 19. For the following reasons, defendant's Motion to Strike is GRANTED IN PART, DENIED IN PART and otherwise MOOT.

The United States moves for summary judgment on three issues. See Def.'s Mot. 1; Def.'s Reply 1. First, the United States moves for summary judgment on "Dr. Cohen's damages theories relating to alleged actual damages as a result [of] public access to FEMA's allegedly infringing works." Def.'s Mot. 1. Within this first issue, defendant also moves for summary judgment on plaintiff's claim for damages relating to lost profits for his non-infringed works, Def.'s Mot. 26-28, and plaintiff's claim for damages based on future lost sales, Def.'s Mot. 28-29; Def.'s Br. 2-5. Second, the "government also moves for a summary judgment determination that it is not subject to any enhanced damage award as a result of any alleged willful infringement." Def.'s Mot. 1. Third, "the government moves for summary judgment that any statutory damage award is limited to the minimum $750 per work by the limited waiver of sovereign immunity under 28 U.S.C. § 1498(b) [2006]." Def.'s Mot. 1. For the following reasons, defendant's Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART.

## II. Legal Standards

### A. Motion to Strike for Failure to Comply With Expert Discovery Rules

Rule 26(a)(2)(B) of the Rules of the United States Court of Federal Claims, which concerns the contents of expert reports, provides in relevant part:

> Unless otherwise stipulated or ordered by the court, [the] disclosure [of the identity of a witness a party may use at trial to provide expert testimony]

> must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case . . . . The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the data or other information considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them . . . .

RCFC 26(a)(2)(B). "A party must make these disclosures at the times and in the sequence that the court orders." RCFC 26(a)(2)(C). Rule 26(a) directs the parties to "supplement these disclosures when required under RCFC 26(e)." RCFC 26(a)(2)(E). Rule 26(e) provides in relevant part:

> A party who has made a disclosure under RCFC 26(a) . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

RCFC 26(e)(1). For expert witnesses, Rule 26(e) provides the following additional requirements regarding supplementation of information:

> For an expert whose report must be disclosed under RCFC 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under RCFC 26(a)(3)[2] are due.

RCFC 26(e)(2) (footnote added).

"If a party fails to provide information . . . as required by RCFC 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." RCFC

---

[2]Rule 26(a)(3) of the Rules of the United States Court of Federal Claims (RCFC) refers to the requirements of Appendix A, Case Management Procedure, ¶¶ 13, 15 and 16, governing post-discovery and pretrial proceedings. RCFC 26(a)(3); see RCFC App. A ¶¶ 13, 15, 16. Rule 26(a)(3) of the Federal Rules of Civil Procedure (FRCP) contains similar guidance regarding pretrial disclosures in the text of the rule itself.

37(c)(1). The burden of establishing that a failure to disclose is substantially justified or harmless rests on the party who failed to make the required disclosure. Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1107 (9th Cir. 2001) (citing Wilson v. Bradlees of New Eng., Inc., 250 F.3d 10, 21 (1st Cir. 2001)).[3] "The court has 'broad discretion' to determine whether an untimely disclosure is substantially justified or harmless." Gallagher v. S. Source Packaging, LLC, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008) (quoting S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003)). In the absence of a dispositive analysis by the United States Court of Appeals for the Federal Circuit (Federal Circuit) regarding the definition of the phrase "substantially justified or harmless,"[4] in Banks v. United States, the court applied the following four-factor test adopted by the United States Court of Appeals for the Third, Seventh and Tenth Circuits to determine whether the failure to disclose required information pursuant to Rule 26(a) was substantially justified or harmless:

> 1) the prejudice or surprise of the party against whom the evidence would have been admitted; 2) the ability of the party to cure that prejudice; 3) the

---

[3]The Rules of the United States Court of Federal Claims generally mirror the Federal Rules of Civil Procedure. See RCFC 26 rules comm. notes (2008) ("The language of RCFC 26 has been amended to conform to the general restyling of the FRCP."); RCFC 37 rules comm. notes (2008) ("The language of RCFC 37 has been amended to conform to the general restyling of the FRCP."). Therefore, the court relies on cases interpreting FRCP 26 and FRCP 37 as well as those interpreting RCFC 26 and RCFC 37. As noted above, see supra note 2, RCFC 26(a)(3) differs from FRCP 26(a)(3). However, the considerations appropriate in determining whether evidence should be allowed or not appear to the court to be substantially similar whether addressed under FRCP 26(a)(3) or under the referenced sections in RCFC Appendix A.

[4]The United States Court of Appeals for the Federal Circuit (Federal Circuit) has reviewed appeals from district courts regarding the meaning of "substantially justified or harmless." See, e.g., Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc., 637 F.3d 1269, 1284 (Fed. Cir. 2011), reh'g & reh'g en banc denied, 2011 U.S. App. LEXIS 11413 ("We review a district court's decision to exclude evidence under the law of the regional circuit." (citation omitted)); Tokai Corp. v. Easton Enters., Inc., 632 F.3d 1358, 1364 (Fed. Cir. 2011), reh'g & reh'g en banc denied, 2011 U.S. App. LEXIS 7625. In those cases, because the Federal Circuit applied the law of the district from which the case was appealed, the analysis from those cases is not binding on this court. See Tritek Techs., Inc. v. United States, 63 Fed. Cl. 740, 750 n.9 (2005) (analyzing the exclusion provisions of Rules 26 and 37 of the RCFC and stating that "[i]n the instances where the Federal Circuit has considered similar issues, it has done so in patent cases appealed from federal district courts. Because discovery violations are not 'unique to patent law,' the [Federal] [C]ircuit has applied the law of the regional circuit to decide these issues.").

> extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and 4) bad faith or willfulness in failing to comply with a court order or discovery obligation.

75 Fed. Cl. 294, 298-99 (2007) (citing Nicholas v. Penn. State Univ., 227 F.3d 133, 148 (3d Cir. 2000); Westefer v. Snyder, 422 F.3d 570, 584 n.21 (7th Cir. 2005); Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999)). If the court finds that the untimely expert disclosure is not necessary for the purposes of supplementation under RCFC 26(e) and is not "substantially justified or harmless," RCFC 37(c)(1), the court may strike the untimely disclosure, see Banks, 75 Fed. Cl. at 298 (citing Smith v. Botsford Gen. Hosp., 419 F.3d 513, 516-17 (6th Cir. 2005)) (stating that "[t]he sanctions available for a Rule 26 violation may include striking an expert's testimony").

B. Motion for Summary Judgment

A motion for summary judgment may be granted only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c)(1). A fact is material if it might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis omitted).

The party opposing the motion "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Id. at 257. "The party opposing the motion must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient." SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116 (Fed. Cir. 1985) (en banc) (citing Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731 F.2d 831, 836 (Fed. Cir. 1984)). To show an evidentiary conflict, a party opposing summary judgment may include supporting affidavits with its response. RCFC 56(e)(2). An affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." RCFC 56(e)(1). If an affidavit is from an expert, the affidavit must satisfy the requirements for expert testimony under Rule 702 of the Federal Rules of Evidence, as interpreted by the courts. See 11 James Wm. Moore et al., Moore's Federal Practice § 56.94[4][b] (2011); see, e.g., Muñoz v. Orr, 200 F.3d 291, 301-02 (5th Cir. 2000) (finding that the trial court acted within its discretion in evaluating the reliability of the proffered expert testimony in ruling on a motion for summary

judgment). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (citation omitted); see Univ. of W. Va. v. VanVoorhies, 278 F.3d 1288, 1295 (Fed. Cir. 2002).

When ruling on a motion for summary judgment, the court may not make credibility determinations or weigh the evidence. Anderson, 477 U.S. at 255 (stating that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are . . . not [functions] of a judge . . . ruling on a motion for summary judgment"); Rockwell Int'l Corp. v. United States, 147 F.3d 1358, 1361-62 (Fed. Cir. 1998) (stating that "[i]n determining the propriety of summary judgment, credibility determinations may not be made" (citing SRI Int'l, 775 F.2d at 1116)). If "there is reason to believe that the better course would be to proceed to a full trial," a trial court may deny summary judgment. Anderson, 477 U.S. at 255 (citation omitted).

## III. Discussion

### A. Defendant's Motion to Strike

Pursuant to evidence and discovery rules pertaining to expert witnesses, the United States moves to strike the affidavit of Mr. Zatkovich dated January 21, 2011 and additionally "moves to strike, or otherwise preclude the use of, Mr. Zatkovich's non-FEMA site licensing theory from his deposition testimony as a basis for actual damages in this case." Def.'s Mot. Strike 1. In its reply brief, the United States further requests that the court "preclude . . . Mr. Zatkovich's cancellation theory." Def.'s Reply Strike 19.

#### 1. Zatkovich Affidavit

Plaintiff submitted an affidavit from his expert, Mr. Zatkovich, to support his response to defendant's Motion for Partial Summary Judgment. See Pl.'s App. A002-A010 (Zatkovich Aff.). Overlooking RCFC 56, which allows the party opposing a motion for summary judgment to file affidavits in support of its response, see RCFC 56(e), defendant argues that the Zatkovich Affidavit should be struck because its submission violates the expert discovery rules as provided by RCFC 26 and because the content of the affidavit fails to comply with FRE 702 and the standard for relevance as provided by Daubert, 509 U.S. 579, and its progeny, see Def.'s Mot. Strike 1-18. Because the court does not rely on Mr. Zatkovich's affidavit in deciding the merits of

defendant's Motion for Partial Summary Judgment, defendant's motion to strike the affidavit is MOOT.[5]

2. "Cancellation Theory"

In his initial expert report, without further explanation, Mr. Zatkovich states, "Dr. Cohen received a cancellation notice from one publisher due to the content being available for no charge on the Internet." Def.'s App. Strike A21 (Zatkovich Initial Expert Report). Mr. Zatkovich expounds on the basis for this statement in his affidavit. See Def.'s App. Strike A8 (Zatkovich Aff.). Defendant moves to strike Mr. Zatkovich's affidavit, which contains new information regarding this "cancellation theory," for failure to comply with discovery and evidence rules. See Def.'s Mot. Strike 10-11, 15-17. However, for the first time in its reply brief to its Motion to Strike, defendant appears to request that the court "preclude . . . Mr. Zatkovich's cancellation theory" in its entirety. Def.'s Reply Strike 19. The court finds this argument, which defendant did not raise in its Motion to Strike, see Def.'s Mot. Strike 1, 2, 24-25, to be waived because it was untimely raised,[6] see Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1320 n.3 (Fed. Cir. 2005) (citing Fuji Photo Film Co. v. Jazz Photo Corp., 394 F.3d 1368, 1375 n.4 (Fed. Cir. 2005)) (finding an issue not properly raised in an opening brief to be waived); see also Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 800 (Fed. Cir. 1990) (stating that "an issue not raised by an appellant in its opening brief . . . is waived").

---

[5]However, the court's decision that defendant's motion to strike the affidavit is moot for purposes of this motion for summary judgment opinion does not mean that the affidavit necessarily would be admissible at trial. Defendant argues that Mr. Zatkovich's affidavit contains numerous conclusory and unsupported statements. See Def.'s Mot. Strike 13-17; see generally Def.'s App. Strike A1-A9 (Zatkovich Aff.). Had the court relied on Mr. Zatkovich's affidavit in deciding defendant's Motion for Partial Summary Judgment, the court would have been required to address whether the affidavit satisfies the requirements for expert testimony under Rule 702 of the Federal Rules of Evidence, as interpreted by the courts. See 11 James Wm. Moore et al., Moore's Federal Practice § 56.94[4][b] (2011); see, e.g., Muñoz v. Orr, 200 F.3d 291, 301-02 (5th Cir. 2000) (finding that the trial court acted within its discretion in evaluating the reliability of the proffered expert testimony in ruling on a motion for summary judgment).

[6]The court notes that plaintiff has set forth additional factual evidence beyond Mr. Zatkovich's expert report and affidavit to support plaintiff's claim that a publisher cancelled the republication of one of his copyrighted works because the publisher found the work on the Internet. See infra Part III.B.1.

3. Plaintiff's Value of Use Theory of Actual Damages as Applied to the Public's Access to His Copyrighted Works on FEMA's Website

In his response brief to defendant's Motion for Partial Summary Judgment, plaintiff discusses what he then referred to as the "'value of use' approach" to damages, see Pl.'s Resp. 17-19, later referred to as the "Value of License Theory" by plaintiff, see Pl.'s Resp. Strike 1, 11-17, 28-29, and as the "non-FEMA site licensing theory" or the "non-FEMA licensing theory" by defendant, see Def.'s Mot. Strike 1-2, 18-25. The court refers to this theory as the value of use theory of actual damages as applied to the public. This theory, as described by plaintiff, provides an estimate of actual damages based on lost licensing fees from estimated downloads by the public. See Pl.'s Resp. 18 (describing the theory as "ask[ing] what fee Dr. Cohen would have hypothetically taken for the use of his works on the FEMA site"). Plaintiff cites to the deposition of his expert witness, Mr. Zatkovich, to support the application of the value of use theory to the public's use of Dr. Cohen's works. See Pl.'s Resp. 12-13, 18-19.

Defendant argues that, because this value of use theory as applied to the public's access to Dr. Cohen's works on FEMA's website was not contained in Mr. Zatkovich's expert reports, "Dr. Cohen should be precluded from presenting such a damages theory at trial." Def.'s Reply Strike 1-2; see Def.'s Mot. Strike 24. Plaintiff asserts that the theory is admissible under the expert discovery rules because Mr. Zatkovich applied the value of use theory to FEMA employees in his initial expert report and discussed the theory as it applies to the public during his deposition. See Pl.'s Resp. Strike 28-29.

An expert's report "must contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them [and] the data or other information considered by the witness in forming them." RCFC 26(a)(2)(B). "If a party fails to provide information . . . as required by RCFC 26(a) . . . , the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." RCFC 37(c)(1).[7]

---

[7]Other courts have found that the discovery rules do not permit a party to supplement a deficient expert report with deposition testimony. The United States Court of Appeals for the Seventh Circuit has taken a particularly strict view, stating:

> Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony. The purpose of Rule 26(a)(2) is to provide notice to opposing counsel--before the deposition--as to what the expert witness will testify, and this purpose would be completely

continue...

Plaintiff has not met his burden to prove that his failure to disclose Mr. Zatkovich's opinions on the value of use theory as applied to the public was substantially justified or harmless. The first factor for determining whether a failure to disclose required information pursuant to RCFC 26(a)(2)(B) is substantially justified or harmless requires an inquiry into the prejudice to or surprise of the party against whom the evidence would have been admitted. Banks, 75 Fed. Cl. at 299 (citing Nicholas, 227 F.3d at 148). Plaintiff argues that the value of use theory is admissible under RCFC 26(a)(2)(B) "because it was already present in [Mr. Zatkovich's] Report." Pl.'s Resp. Strike 28. Plaintiff further contends that "[t]he deposition testimony which Defendant now complains about was taken over a year ago, and was never once questioned in Defendant's two motions for summary judgment, or any other motion, until now." Pl.'s Resp. Strike 29.

Mr. Zatkovich's initial expert report sets forth two theories of actual damages. See Def.'s App. Strike A22-A26 (Zatkovich Initial Expert Report). Mr. Zatkovich applied the value of use theory to estimate a licensing fee for the use of Dr. Cohen's works by two thousand FEMA employees. Def.'s App. Strike A22, A25-A26 (Zatkovich Initial Expert Report). Mr. Zatkovich calculated a license fee for this use by first multiplying an estimate of a license fee for six electronic books by two thousand FEMA employees and then multiplying that number by one-half to account for Dr. Cohen's 50% royalty rate as provided by his contracts with HRD Press. See Def.'s App. Strike A25-A26 (Zatkovich Initial Expert Report). Based on this methodology, Mr. Zatkovich calculated that a reasonable licensing fee for the value of use by the FEMA employees would be $30,000. Def.'s App. Strike A25-A26 (Zatkovich Initial Expert Report). However, as plaintiff admits, Mr. Zatkovich "did not apply that methodology to his damage estimates for

---

[7]...continue
undermined if the parties were allowed to cure deficient reports with later deposition testimony. Allowing parties to cure a deficient report with later depositions would further undermine a primary goal of Rule 26(a)(2): to shorten or decrease the need for expert depositions.

Ciomber v. Coop. Plus, Inc., 527 F.3d 635, 642 (7th Cir. 2008) (internal citations and quotations omitted); see LaMarca v. United States, 31 F. Supp. 2d 110, 123 (E.D.N.Y. 1999) (stating that "deposition testimony does not cure deficiencies in the Rule 26(a)(2)(B) notice" (quotation omitted)). Because the Federal Circuit has not provided a dispositive analysis on whether a defective expert report can be cured by later deposition testimony, the court follows the "substantially justified or harmless" test as outlined in Banks v. United States, 75 Fed. Cl. 294, 298-99 (2007).

downloads by the public in his Report[,] and instead used a lost sales method" to estimate actual damages as a result of the public's use of Dr. Cohen's works from FEMA's website. Pl.'s Resp. Strike 28; see Def.'s App. Strike A22-A26 (Zatkovich Initial Expert Report). In other words, for the public's use of Dr. Cohen's works, Mr. Zatkovich set forth an entirely different methodology "that compares actual sales of the infringed works against projections of what they would have been under [sic] had the infringement not occurred. The difference between the actual and estimated sales is the reduction in sales that resulted from the infringement." Def.'s App. Strike A22 (Zatkovich Initial Expert Report).

At his deposition on December 28, 2009, Mr. Zatkovich first discussed the applicability of the value of use theory to the public's use of Dr. Cohen's works. See Def.'s App. Strike A387-A390 (Zatkovich Dep.) (colloquy between Mr. Zatkovich and plaintiff's counsel); Def.'s App. Strike A395-A396 (Zatkovich Dep.) (colloquy between Mr. Zatkovich and defense counsel). Mr. Zatkovich then testified that he had "considered using the licensing fee calculation estimation that [he] used for the internal cost to FEMA and extrapolate that to the external damages." Def.'s App. Strike A387 (Zatkovich Dep.). Mr. Zatkovich proceeded to describe the methodology for calculating the licensing fee as follows: "I've already estimated how many visitors go to the website. I then assume what percentage of those visitors would download that material, and then calculate what would be the licensing fee associated with that material that they downloaded." Def.'s App. Strike A387-A388 (Zatkovich Dep.). Based on this methodology, Mr. Zatkovich calculated that a reasonable license fee for the public's use of Dr. Cohen's works would range from $180,000 to $1.9 million. Def.'s App. Strike A388 (Zatkovich Dep.). When asked by defense counsel to identify where this methodology and calculation appear in his report, Mr. Zatkovich stated, "I chose not to use that particular approach." Def.'s App. Strike A395-A396 (Zatkovich Dep.).

Defendant is prejudiced by the untimely disclosure of the value of use theory as applied to the public. Although, as plaintiff contends, the deposition occurred over a year before defendant filed its Motion to Strike and defendant did not discuss the testimony in either of its two motions for summary judgment, see Pl.'s Resp. Strike 29, defendant did not have any reason to move for summary judgment on this issue because Mr. Zatkovich specifically stated that he "chose not to use that particular approach," Def.'s App. Strike A395-A396 (Zatkovich Dep.).

Plaintiff argues that the court's decisions in Rogers v. United States, 96 Fed. Cl. 472 (2011), and CCA Associates v. United States, 87 Fed. Cl. 715 (2009), support the admissibility of Mr. Zatkovich's deposition testimony. See Pl.'s Resp. Strike 29-31. In Rogers, a Fifth Amendment takings case, the defendant moved to strike an expert's trial

testimony regarding the costs of "extending a road on the ground that Plaintiffs failed to disclose, before trial, the methodology and underlying information regarding such costs." 96 Fed. Cl. at 474. The court refused to strike the testimony, finding that the expert's report stated that the plaintiffs were seeking access costs as part of severance damages and that the expert's deposition stated the amount of those costs. Id. at 476 (stating that "the predicate for these costs--the impediment to access--was disclosed in his report and the amount of the access costs--a little over $1 million--was disclosed at his deposition").

Plaintiff argues that "[b]y analogy, even if Mr. Zatkovich should have presented the Value of License Theory as applied to the public in his Report, he did so at his deposition and therefore, Defendant was on notice of his possible use of this theory as applied to the public's use of the FEMA website." Pl.'s Resp. Strike 30. However, as defendant correctly states, the court in Rogers "denied the motion to strike the trial testimony because the theory for recovery had been presented in the expert's report[,] followed by a calculation of damages based upon that theory in his deposition." Def.'s Reply Strike 3-4 (citing Rogers, 96 Fed. Cl. at 476). This case, therefore, is not analogous to Rogers because Mr. Zatkovich's expert reports do not contain a predicate for the value of use theory as applied to the public. Although in his initial expert report Mr. Zatkovich discusses his methodology for calculating a reasonable license fee for the use of Dr. Cohen's works by FEMA employees, see Def.'s App. Strike A25-A26 (Zatkovich Initial Expert Report), Mr. Zatkovich never discusses the application of the value of use theory to the public, the different methodology he used or the calculations he made, see generally Def.'s App. Strike A15-A82 (Zatkovich Initial Expert Report).

Furthermore, the court in Rogers granted the defendant's motion to strike a portion of the expert's testimony relating to the cost of the land because the expert "conceded that he had not taken that cost into account when preparing his appraisal report." 96 Fed. Cl. at 474 (citations omitted). The expert's concession in Rogers is similar to this case, where, when asked where the value of use theory as applied to the public could be found in his expert report, Mr. Zatkovich admitted that he "chose not to use that particular approach." Def.'s App. Strike A395-A396 (Zatkovich Dep.). The Rogers court's conclusion on this issue therefore supports excluding Mr. Zatkovich's deposition testimony on the value of use theory as applied to the public.

Dr. Cohen also relies on CCA Associates, 87 Fed. Cl. at 717-21, to support his argument that the court should not exclude Mr. Zatkovich's deposition testimony on the value of use theory as applied to the public, Pl.'s Resp. Strike 30-31. Plaintiff correctly notes that the court refused to exclude testimony of two fact witnesses whose identities were disclosed for the first time on the defendant's final witness list three weeks before trial because "the general topic of the new witnesses' testimony was canvassed in the

original trial in this case as well as in the general disclosures made during the [pre-trial] meeting of counsel." CCA Assocs., 87 Fed. Cl. at 720; see Pl.'s Resp. Strike 30. However, this ruling is inapposite because those witnesses were fact witnesses, and therefore the dispute regarding their testimony at trial did not implicate any of the discovery rules pertaining to experts. See CCA Assocs., 87 Fed. Cl. at 720. Furthermore, the court in CCA Associates in fact excluded an untimely expert report and the proposed testimony of the government's expert. Id. at 720, 721.[8]

The second factor in the analysis to determine whether an untimely disclosure is substantially justified or harmless under RCFC 37 examines the ability of a party to cure any prejudice caused by its actions or inactions, and the third factor explores the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court. Banks, 75 Fed. Cl. at 299 (citing Nicholas, 227 F.3d at 148). Because the value of use theory as applied to the public was not presented in either of Mr. Zatkovich's reports and because the deadline for the disclosure of rebuttal expert reports passed before the deposition took place, the government did not have an opportunity to prepare a rebuttal expert report. See Order of Aug. 3, 2009, Dkt. No. 32, at 1. Furthermore, whatever notice defendant may have had from the deposition that Mr. Zatkovich may testify about his methodology and calculations for applying the value of use theory to the public was undermined when Mr. Zatkovich specifically stated that he "chose not to use that particular approach." Def.'s App. Strike A396 (Zatkovich Dep.). That statement indicated to defendant that it need not move to reopen discovery in order to prepare rebuttal evidence on the value of use theory as applied to the public. In order to cure the prejudice, the court would have to reopen discovery to permit defendant to prepare a rebuttal expert report and possibly depose Mr. Zatkovich a second time to obtain further information on his methodology and calculations.

Finally, the fourth factor examines a party's bad faith or willfulness in failing to comply with a discovery obligation. Banks, 75 Fed. Cl. at 299. Willfulness in this context means that the failure to disclose was not as a "result of inadvertence or mistake." Nippo Corp./Int'l Bridge Corp. v. AMEC Earth & Envtl., Inc., No. 09-cv-0956, 2011 U.S. Dist. LEXIS 34994, at *22 (E.D. Pa. Mar. 30, 2011) (citing Huertas v. U.S. Dep't of Educ., 408 F. App'x 639, 641 (3d Cir. 2010) (unpublished); Sullivan v. Glock, Inc., 175 F.R.D. 497, 507 (D. Md. 1997); In re Tutu Wells Contamination Litig., 162 F.R.D. 46, 72 (D.V.I. 1995)); see Umbenhower v. Copart, Inc., 222 F.R.D. 672, 675 (D. Kan. 2004) (finding that the failure to disclose was a result of "inadvertence," rather than "willful,

---

[8] The fact that plaintiff drew the court's attention to a portion of a case that he believed supported his position while neglecting to draw the court's attention to a portion of the same case that supports defendant's position is a subject of concern to the court.

knowing, or in bad faith"). Repeated failures to disclose information are evidence of willfulness. See Alexander v. Archuleta Cnty., No. 08-cv-00912-CMA-KLM, 2010 U.S. Dist. LEXIS 11698, at *8-9 (D. Colo. Jan. 27, 2010) (finding counsel's continuing violations of discovery rules to be willful and in bad faith, rather than an "innocent mistake"); see also In re Mercedes-Benz Anti-Trust Litig., 225 F.R.D. 498, 507 (D.N.J. 2005) (finding, where a party "had several opportunities to disclose the identity of [a witness] and the subject matter of his knowledge," that the party's "failure to disclose such information on any one of these opportunities demonstrates willfulness at a minimum").

The facts in this case indicate that plaintiff's counsel willfully failed to disclose Mr. Zatkovich's expert opinion on the value of use theory as applied to the public. On direct examination during Mr. Zatkovich's deposition, plaintiff's counsel elicited Mr. Zatkovich's testimony on the value of use theory as applied to the public. See Def.'s App. Strike A387-A390 (Zatkovich Dep.) (colloquy between Mr. Zatkovich and plaintiff's counsel). On cross-examination, Mr. Zatkovich specifically disavowed the value of use theory as applied to the public, stating, "I chose not to use that particular approach." Def.'s App. Strike A396 (Zatkovich Dep.). Plaintiff's counsel did not ask any questions on redirect examination. See Def.'s App. Strike A397 (Zatkovich Dep.). Had plaintiff's counsel asked further questions about the theory on redirect examination, defendant might possibly have had notice that plaintiff intended to pursue damages under that theory. Following the deposition, plaintiff did not provide defendant with a supplemental expert report from Mr. Zatkovich on the value of use theory as applied to the public, nor did plaintiff seek to reopen discovery to allow defendant to provide a rebuttal expert report to Mr. Zatkovich's newly disclosed theory of damages. Plaintiff's counsel gave no notice to defendant or to the court of his intention to use Mr. Zatkovich's testimony or opinions on the value of use theory as applied to the public until plaintiff used the testimony in its Response in an attempt to defeat summary judgment. Plaintiff's repeated failure to provide any notice of this new theory of damages to defendant is evidence of willful conduct, rather than inadvertence or mistake.

The application of the four factors to the facts of this case supports the conclusion that plaintiff has failed to prove that Mr. Zatkovich's untimely disclosure of his methodology and calculations for the value of use theory of actual damages as applied to the public was substantially justified or harmless. Therefore, defendant's motion to strike Mr. Zatkovich's deposition testimony on this issue is GRANTED to the extent consistent with this Opinion and Order.[9] See RCFC 37(c)(1); see also Banks, 75 Fed. Cl. at 298

---

[9]Plaintiff's attempt to use Mr. Zatkovich's deposition testimony on the value of use continue...

("The sanctions available for a Rule 26 violation may include striking an expert's testimony."); Innogenetics, N.V. v. Abbott Labs., 512 F.3d 1363, 1376 n.4 (Fed. Cir. 2008) (stating that "attempts to proffer expert testimony without compliance with Rule 26 violate both the rules and principles of discovery, and the obligations lawyers have to the court. Exclusion and forfeiture are appropriate consequences to avoid repeated occurrences of such manipulation of the litigation process."). At trial, Mr. Zatkovich may not testify on the value of use theory of actual damages as applied to the public, the methodology he used or any calculations he made when applying the value of use theory of actual damages to the public's access to and use of Dr. Cohen's works from FEMA's website.

B. Motion for Partial Summary Judgment

The government's motion for summary judgment addresses Dr. Cohen's claims for damages as a result of the public's access to his works on FEMA's website. Def.'s Mot. 1, 5. "The government [moves] for partial summary judgment in its favor on the following three issues in this suit: (1) Dr. Cohen's damages theories relating to alleged actual damages as a result of public access to FEMA's allegedly infringing works should be rejected as a matter of law because they are unsupported by any evidence and unduly speculative; (2) Wilful infringement is not cognizable against the government; and (3) Any statutory damage award is limited to $750 per work by the government's limited waiver of sovereign immunity under 28 U.S.C. § 1498(b)." Def.'s Reply 1; see Def.'s Mot. 1. Within the first issue, defendant also moves for summary judgment on plaintiff's claim for damages relating to lost profits for his non-infringed works, Def.'s Mot. 26-28, and plaintiff's claim for damages based on future lost sales, Def.'s Mot. 28-29; Def.'s Br. 2-5.

1. Plaintiff's Claim for Actual Damages for the Public's Access to His Copyrighted Works from FEMA's Website

Copyright infringement suits against the United States are governed by 28 U.S.C. § 1498(b). See, e.g., Blueport Co. v. United States, 533 F.3d 1374, 1378-79 (Fed. Cir.

---

[9]...continue
theory of actual damages as applied to the public in his Response to defendant's Motion for Partial Summary Judgment, see Pl.'s Resp. 18-19, led to defendant's attempt to move for summary judgment on this issue in its Reply, see Def.'s Reply 10-11, 18. Because Mr. Zatkovich's deposition testimony on this issue is excluded, the government's request that the court "grant summary judgment . . . denying [plaintiff's] claim for the value of use by any non-FEMA individuals," Def.'s Reply 18, is moot.

2008); Boyle v. United States, 200 F.3d 1369, 1372-73 (Fed. Cir. 2000). "Section 1498(b) is a detailed, carefully drafted, complex provision in which Congress carefully and explicitly set forth the precise standards governing private suits against the United States for copyright infringement." Walton v. United States, 551 F.3d 1367, 1370 (Fed. Cir. 2009). Section 1498(b) provides in relevant part as follows:

> [W]henever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, . . . the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement, including the minimum statutory damages as set forth in section 504(c) of title 17, United States Code . . . .

28 U.S.C. § 1498(b). "[R]easonable and entire compensation as damages" for copyright infringement is not defined in the statute, see 28 U.S.C. § 1498, and has not been the subject of analysis by the Federal Circuit; however, "[t]he legislative history for Section 1498(b) indicates that 'reasonable and entire compensation' is equivalent to just compensation under the Fifth Amendment," Gaylord v. United States, 98 Fed. Cl. 389, 391 (2011) (citing S. Rep. No. 86-1877, reprinted in 1960 U.S.C.C.A.N. 3444, 3445-46), appeal docketed, No. 2011-5097 (Fed. Cir. June 15, 2011). "The proper focus for 'just compensation' under the Fifth Amendment is 'what the owner has lost, not what the taker has gained.'" Id. (quoting Leesona Corp. v. United States, 599 F.2d 958, 969 (Ct. Cl. 1979) (en banc)).

To determine damages for copyright infringement claims against the United States, this court applies the substantive law of the relevant section of the Copyright Act, 17 U.S.C. § 504 (2006). See id. at 391-92; Wechsberg v. United States, 54 Fed. Cl. 158, 165-67 (2002); see also Williams & Wilkins Co. v. United States, 487 F.2d 1345, 1378 (Ct. Cl. 1973), aff'd per curiam, 420 U.S. 376 (1975). Under the Copyright Act, an infringer of a copyright is liable for either: (1) the copyright owner's actual damages and

any additional profits of the infringer,[10] or (2) statutory damages.[11] 17 U.S.C. § 504(a). The Copyright Act does not define "actual damages." See 17 U.S.C. § 504; see also 4-14 Melville B. Nimmer & David Nimmer, Nimmer on Copyright (Nimmer) § 14.02 (2011) (stating that "neither [the Act's] text nor the Committee Reports attempt to define the nature of those actual damages"). Furthermore, an explanation of what constitutes actual damages under 17 U.S.C. § 504 has not been the subject of extensive analysis by the Federal Circuit. See, e.g., Brooktree Corp. v. Advanced Micro Devices, Inc., 977 F.2d 1555, 1579 (Fed. Cir. 1992) (analogizing actual damages under the Semiconductor Chip Protection Act of 1984, 17 U.S.C. §§ 901-14, to actual damages under copyright law as interpreted by the United States Court of Appeals for the Ninth Circuit (Ninth Circuit)); Dayva Int'l, Inc. v. Award Prods. Corp., 152 F.3d 943, 1998 WL 105945, at *2-4 (Fed. Cir. Mar. 11, 1998) (table) (unpublished) (discussing the burden of proof for demonstrating the infringer's profits under 17 U.S.C. § 504(b) (1994) as interpreted by the Ninth Circuit); Nam Jin Yeu v. Kim, 940 F.2d 678, 1991 WL 142608, at *4 (Fed. Cir. July 31, 1991) (table) (unpublished) (explaining that the Copyright Act does not provide for treble damages). Therefore, the court looks to the decisions of other federal appellate and district courts for guidance on selecting the proper test for determining actual damages. Cf. Wechsberg, 54 Fed. Cl. at 166 (discussing the court's discretion to select the proper theory of recovery).

An award of actual damages "undertakes to compensate the [copyright] owner for any harm he suffered by reason of the infringer's illegal act." On Davis v. The Gap, Inc., 246 F.3d 152, 159 (2d Cir. 2001) (citing Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1118 (2d Cir. 1986); Walker v. Forbes, Inc., 28 F.3d 409, 412 (4th Cir. 1994)). Assessing actual damages is a "case-by-case assessment of the factors involved, rather than application of hard and fast rules." Walker, 28 F.3d at 412. To determine actual damages, courts customarily assess "the extent to which the market value of a copyrighted work has been injured or destroyed by an infringement." United States v. King Features Entm't, Inc., 843 F.2d 394, 400 (9th Cir. 1988) (quoting Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc. (MGM), 772 F.2d 505, 512 (9th Cir. 1985) (internal quotation marks omitted)); Brooktree, 977 F.2d at 1579 (measuring actual damages "in terms of the diminished market value of the copyrighted work" (citing MGM, 772 F.2d at 512));

---

[10]In a copyright infringement case between private parties, "a plaintiff who seeks to recover actual damages is entitled to a jury trial." 3-12 Melville B. Nimmer & David Nimmer, Nimmer on Copyright (Nimmer) § 12.10[A] (2011) (citing Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 346 (1998)). However, "[i]n this court, the judge, rather than a jury, is always the trier of fact." Persyn v. United States, 34 Fed. Cl. 187, 194 (1995).

[11]For a discussion of statutory damages, see infra Part III.B.2.

Fitzgerald Publ'g Co., 807 F.2d at 1118; see Nimmer § 14.02[A] ("Actual damages represent the extent to which infringement has injured or destroyed the market value of the copyrighted work at the time of infringement." (citations omitted)). The loss in market value of the copyrighted work is "often measured by the profits lost as a result of the infringement." Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1170 (1st Cir. 1994) (citations omitted), overruled on other grounds by Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237 (2010); see Nimmer § 14.02[A][1] ("[T]he plaintiff's damages may be said to equal the profits that the plaintiff might have accrued but for the defendant's infringement."); 50 Am. Jur. Proof of Facts 2d 263 § 3 (2010) ("[A] copyright owner's actual damages are usually calculated by assessing lost profits." (citation omitted)).

"The basic rule for computing injury to the market value of a copyrighted work arising from infringement is to inquire what revenue would have accrued to plaintiff but for the infringement." Nimmer § 14.02[A][1]; Data Gen., 36 F.3d at 1171; Fitzgerald Publ'g Co., 807 F.2d at 1118 (citing Kenbrooke Fabrics, Inc. v. Holland Fabrics, Inc., 602 F. Supp. 151, 155 (S.D.N.Y. 1984)); Stevens Linen Assocs., Inc. v. Mastercraft Corp. (Stevens Linen), 656 F.2d 11, 15 (2d Cir. 1981) (stating that "the object of the damages inquiry is to determine what sales probably would have been made without the infringement"). Because the injury to the market value of a copyrighted work can be difficult to ascertain, Fitzgerald Publ'g Co., 807 F.2d at 1118; Stevens Linen, 656 F.2d at 14 (citations omitted), a variety of methods can be used to determine the extent of that injury. However, regardless of the method used to determine actual damages, the burden is always on the plaintiff to prove causation. See, e.g., Stevens Linen, 656 F.2d at 15; Taylor v. Meirick, 712 F.2d 1112, 1119-21 (7th Cir. 1983).[12]

---

[12]The parties disagree over the appropriate method to measure injury to the market value of Dr. Cohen's works as a result of defendant's alleged infringement. Defendant advocates for the use of a test set forth by the United States Court of Appeals for the Second Circuit in Stevens Linen Associates, Inc. v. Mastercraft Corp. (Stevens Linen), 656 F.2d 11, 15 (2d Cir. 1981), and argues that under this method, "[p]laintiff fails to establish a prima facie case supporting actual damages," Def.'s Mot. 15 (footnote omitted); see Def.'s Mot. 15-23; see also Def.'s Reply 11-13. Plaintiff argues that the method of measuring lost profits proposed by the United States Court of Appeals for the Seventh Circuit (Seventh Circuit) in Taylor v. Meirick, 712 F.2d 1112, 1119-21 (7th Cir. 1983), "is more appropriate to this case," Pl.'s Resp. 16-17; see Pl.'s Resp. 20. Because plaintiff has put forth sufficient evidence on causation to defeat summary judgment, and because determining actual damages is a "case-by-case assessment of the factors involved, rather than an application of hard and fast rules," Walker v. Forbes, Inc., 28 F.3d 409, 412 (4th Cir. 1994), the court need not decide the appropriate test to measure actual damages at this point. However, based on plaintiff's argument and evidence in the record before the court, the measure set forth in continue...

[12]...continue
Taylor, 712 F.2d at 1119-21, is likely unavailable to plaintiff.

In Taylor, the Seventh Circuit found that lost profits could be measured by comparing a plaintiff's pre-infringement sales of a copyrighted work to a plaintiff's yearly sales of the work during the infringement period. 712 F.2d at 1119-21. Under this method, lost profits equal the average annual gross revenue during the years preceding the infringement multiplied by the number of years in the infringement period, reduced by the actual gross revenue received by the copyright owner from sales of the infringed work during the infringement period, and further reduced by the copyright owner's cost savings due to his lower volume of sales. Id.; see Nimmer § 14.02[A][1]. This method assumes that the amount of pre-infringement sales of the copyrighted work would have remained stable during the infringement period, but for the defendant's infringing activity. See Taylor, 712 F.2d at 1119-21. The copyright owner must set forth evidence of his revenue from the copyrighted work both before and during the infringement period. Id. at 1120-21. Once the plaintiff shows evidence that sales declined during the infringement period, the burden shifts to the defendant to show that the decline in sales was not caused by his infringing activity. Id. at 1121.

Without citation, plaintiff asserts that "[Mr.] Zatkovich, utilizing a common sense 'difference in sales' test similar to the one endorsed by Judge Posner and described above[,] has demonstrated at least by a preponderance of the evidence that FEMA's infringement caused damage to the sales of Plaintiff's works. Mr. Zatkovich did this by showing that sales dropped off earlier than they ever should have given the expected life cycle of these demonstrably desirable works when FEMA updated and redesigned its website in order to make downloads easier for the public." Pl.'s Resp. 20 (footnote omitted). Plaintiff further asserts that "[Mr.] Zatkovich followed this same methodology in his expert report, except that [Mr.] Zatkovich found the significant drop in sales to have taken hold when it did because of the deliberate redesign of the FEMA site which made accessibility to the public easier than it had been previously." Pl.'s Resp. 17.

As defendant correctly argues, see Def.'s Reply 14; Def.'s Mot. 15 n.5, properly applied, the method of calculating actual damages set forth by the Seventh Circuit in Taylor requires a comparison between pre-infringement sales and sales during the infringement period, see 712 F.2d at 1119-21. Plaintiff claims that the works that defendant infringed upon "were originally published in book form by the following publishers: Krieger Publishing Company in 1995, Jossey-Bass, Inc. in 1995, and HRD Press, Inc. from 1998 to 1999" and that "FEMA posted works by Dr. Cohen on its website from 2000-2004." Pl.'s Resp. 4. Therefore, according to plaintiff's representations, the pre-infringement period lasted from 1995 to 2000, and the period of infringement lasted from 2000 through 2004. See Pl.'s Resp. 4. Although plaintiff claims that "[Mr.] Zatkovich shows that sales trends for both 'infringed' and 'non-infringed works' were rising shortly after the time of initial publication about 1999," Pl.'s Resp. 10, plaintiff does not continue...

"The plaintiff bears the burden of proving that the infringement was the cause of its loss of revenue." Data Gen., 36 F.3d at 1170 (citing Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 567 (1985)); Thoroughbred Software Int'l, Inc. v. Dice Corp., 488 F.3d 352, 358 (6th Cir. 2007) (citation omitted); Wechsberg, 54 Fed. Cl. at 166 ("A recovery of 'reasonable and entire compensation' [under 28 U.S.C. § 1498(b)] suggests that the burden of proof lies with Plaintiff."); Polar Bear Prods. v. Timex Corp., 384 F.3d 700, 708 (9th Cir. 2004) (citing Mackie v. Rieser, 296 F.3d 909, 915 n.6, 916-17 (9th Cir. 2002)). "[T]he plaintiff should first establish that the infringement was the cause-in-fact of its loss by showing with reasonable probability that, but for the defendant's infringement, the plaintiff would not have suffered the loss." Data Gen., 36 F.3d at 1171 (citing, inter alia, Robert R. Jones Assocs. v. Nino Homes, 858 F.2d 274, 281 (6th Cir. 1988)); Polar Bear Prods., 384 F.3d at 708 ("[A] causal link between the infringement and the monetary remedy sought is a predicate to recovery of . . . actual damages . . . . [A] plaintiff in a § 504(b) action must establish this causal connection . . . ."). "The plaintiff must also prove that the infringement was a proximate cause of its loss by demonstrating that the existence and amount of the loss was a natural and probable consequence of the infringement." Data Gen., 36 F.3d at 1171 (citing Big Seven Music Corp. v. Lennon, 554 F.2d 504, 509 (2d Cir. 1977)). Courts examine

[12]...continue

cite to, and the court is unable to find in the record, any pre-infringement sales figures--that is, sales of the allegedly infringed works occurring before 2000--in Mr. Zatkovich's initial expert report, see Def.'s App. A555-A622 (Zatkovich Initial Expert Report), his supplemental expert report, see Def.'s App. A623-A625 (Zatkovich Supplemental Expert Report), his deposition testimony, see Def.'s App. A638-A769 (Zatkovich Dep.), or even his affidavit, see Pl.'s App. A002-A010 (Zatkovich Aff.). Mr. Zatkovich explained that sales figures from 2000 through 2008 from one of Dr. Cohen's publishers, HRD Press, formed the basis of Mr. Zatkovich's sales calculations in his report, see Def.'s App. A688-A690 (Zatkovich Dep.), and plaintiff admits that "[t]here are no sales figures before 2000 because HRD Press was unable to find them," Pl.'s Resp. 10. Moreover, although the copyright owner is competent to testify as to the extent of the injury to the market value of his infringed works, Mary Ellen Enters. v. Camex, Inc., 68 F.3d 1065, 1070 (8th Cir. 1995) (citing Fitzgerald Publ'g Co., 807 F.2d at 1118-19), Dr. Cohen admitted in his deposition that he did not have knowledge of the sales of his works or the amount of royalties he earned from the works and has not participated in calculating the damages in this case, see App. to Pl.'s Resp. Opp'n to United States' Mot. for Partial Summ. J., Dkt. No. 42, at A636-A640, A665-A666, A675-A682, A688-A690, A734-A742, A751-A754, A770-A772, A785 (Cohen Dep.). Because plaintiff does not provide evidence of pre-infringement sales through his expert, the publisher(s) of the works, the copyright owner or any other source, plaintiff would not be able to show actual damages under the method outlined by the Seventh Circuit in Taylor, 712 F.2d at 1119-21.

evidence of lost customers to determine whether the plaintiff established the requisite causation to recover actual damages. See, e.g., Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc., 25 F. Supp. 2d 395, 402 (S.D.N.Y. 1998); Goldenberg v. Doe, 731 F. Supp. 1155, 1159 (E.D.N.Y. 1990); cf. 50 Am. Jur. Proof of Facts 2d 263 § 3 (stating that "if a copyright owner is claiming actual damages based on lost profits, the owner will have to provide more than proof of the estimated lost sales revenue"); 6 William F. Patry, Patry on Copyright § 22:104 (2011) ("In assessing whether plaintiff has established the required causal link, the court should examine all relevant market factors, including the extent to which the parties have an existing market share, channels of distribution, and customer relations." (citing Evenflow Plumbing Co. v. Pac. Bell Directory, No. C-3: 04CV00795 EDL, 2005 WL 1353822 (N.D. Cal. July 7, 2005))). Although the plaintiff carries the burden to prove causation, "[c]ourts and commentators agree [that the term 'actual damages'] should be broadly construed to favor victims of infringement." On Davis, 246 F.3d at 164 (citations omitted). Therefore, "[u]ncertainty will not preclude recovery of actual damages if the uncertainty is as to amount, not as to whether actual damages are attributable to the infringement." Nimmer § 14.02[A][3]; see Data Gen., 36 F.3d at 1171 ("[T]he plaintiff need not prove its loss of revenue with mathematical precision."); Stevens Linen, 656 F.2d at 14 ("In establishing lost sales to due sales of an infringing product, courts must necessarily engage in some degree of speculation." (citations omitted)); 50 Am. Jur. Proof of Facts 2d 263 § 2 ("Substantial liberality is shown to plaintiffs in infringement actions in their proof of damages. However, testimony as to lost sales due to infringement may be rejected if there is no documentary evidence or other basis offered to support the testimonial assertions." (citing Deltak, 767 F.2d at 357)); cf. Abeshouse v. Ultragraphics, Inc., 754 F.2d 467, 470 (2d Cir. 1985) (stating that an award of actual damages cannot be based upon "undue speculation" (citation omitted)).

Defendant argues that "Dr. Cohen has failed to present any evidence on either prong of the 'but for' test: (1) He is unable to show evidence of a loss in fair market value of his works; and (2) He is unable to show any evidence that the government's alleged infringement caused any such loss." Def.'s Mot. 13. In particular, referring to Mr. Zatkovich's initial expert report, which describes "'[l]ost royalties from lost sales of copyrighted works to parties outside of FEMA including other governments, corporations, foreign purchasers, and private individuals,'" Def.'s Mot. 17 (quoting Def.'s App. A562 (Zatkovich Initial Expert Report)) (emphasis omitted), defendant argues that "nowhere does Dr. Cohen or Mr. Zatkovich present any evidence that any of these cited customers turned away from, or declined to purchase, plaintiff's works because of the availability of mentoring materials on FEMA's website. In fact, Dr. Cohen fails to present any evidence whatsoever as to whether these customers were even aware of FEMA's mentoring materials," Def.'s Mot. 17.

In response, plaintiff sets forth evidence of one publisher that cancelled republication of one of Dr. Cohen's works after finding the work available on the Internet.[13] See Pl.'s Resp. 27-28. In 2002 Krieger Publishing Company (Krieger) contacted Dr. Cohen regarding the possible republication of one of his works, entitled Mentoring Adult Learners: A Guide for Educators and Trainers.[14] See Pl.'s App. A011 (June 3, 2002 letter from Krieger to Dr. Cohen), A012 (Dec. 30, 2002 letter from Krieger to Dr. Cohen requesting his response regarding revisions to the original work so Krieger could "set [its] production schedule"); Def.'s Reply App. A920 (June 3, 2002 letter from Krieger to Dr. Cohen), A922 (Dec. 30, 2002 letter from Krieger to Dr. Cohen); see also Def.'s Reply App. A921 (Jan. 15, 2002 letter from Krieger to Dr. Ronald M. Cervero and Dr. Sharan B. Merriam regarding the possible republication of Dr. Cohen's work). However, in a letter dated June 24, 2003, Krieger informed Dr. Cohen that it was no longer interested in republishing his book because "a large portion of your book . . . is available on your website." Pl.'s App. A013 (June 24, 2003 letter from Krieger to Dr. Cohen); Def.'s Reply App. A917 (same). The body of the letter states, in its entirety:

> It has come to our attention that a large portion of your book, Mentoring Adult Learners: A Guide for Educators and Trainers, is available on your website. The committee therefore feels it would be a poor monetary decision to rerun this title.

---

[13]Aside from the evidence relating to the Krieger Publishing Company (Krieger), defendant correctly argues that plaintiff failed to present any evidence that any of the "other governments, corporations, foreign purchasers, and private individuals" cited by Mr. Zatkovich, Def.'s App. A562 (Zatkovich Initial Expert Report), "turned away from, or declined to purchase, plaintiff's works because of the availability of mentoring materials on FEMA's website," Def.'s Mot. 17; see Def.'s Mot. 17-18 (discussing the lack of evidence of the effect of the alleged infringement on the purchasing habits of organizations, colleges, universities and commercial sources); Def.'s Mot. 19-20 (discussing the lack of evidence of the effect of the alleged infringement on the purchasing habits of potential customers of HRD Press); see also Pl.'s Resp. 20 (claiming that Krieger's cancellation of the republication of one of Dr. Cohen's works "implies many other lost customers," but failing to provide evidence regarding these alleged lost customers); Pl.'s Resp. 28 (stating that "Krieger's decision not to rerun the work clearly shows that the public would not buy the work when they could get it for free on the Internet," but again, failing to provide evidence that any member of the public decided not to buy Dr. Cohen's works because he or she found the work on FEMA's website).

[14]Mentoring Adult Learners: A Guide for Educators and Trainers is one of the six allegedly infringed works. See Compl. ¶ 5; Compl. Ex. 1; Def.'s App. A561 (Zatkovich Initial Expert Report).

Pl.'s App. A013 (June 24, 2003 letter from Krieger to Dr. Cohen); Def.'s Reply App. A917 (same). The documents produced by Krieger do not clarify to which website the phrase "your website" refers. See Def.'s Reply App. A899-A922 (subpoena sent to Krieger and documents produced in response to subpoena).

Plaintiff argues that the phrase "your website" refers to FEMA's website. Pl.'s Resp. 27-28. In support of his contention, plaintiff asserts that "Dr. Cohen wrote [to Krieger that] he never had a website." Pl.'s Resp. 28;[15] see Def.'s Reply App. A916 (July 15, 2005 letter from Dr. Cohen to Krieger). Dr. Cohen's letter to Krieger states, in relevant part:

> In your letter to me . . . of June 24, 2003, you declined to continue publishing Mentoring Adult Learners: A Guide for Educators and Trainers.
>
> Your letter refers to the fact that a large portion of the book was available on my website.
>
> At that time, I left several telephone messages stating that I did not have a website, and I requested the specific website address . . . .
>
> I did not receive a reply to my telephone requests, and the book was discontinued by the Krieger Publishing Co. . . .
>
> I would like to determine the exact website to which you referred in your letter of June 24, 2003.

Def.'s Reply App. A916 (July 15, 2005 letter from Dr. Cohen to Krieger). Krieger's response to Dr. Cohen did not specify the website that Krieger refered to in its June 24, 2003 letter. See Def.'s Reply App. A914 (July 18, 2005 fax from Krieger to Dr. Cohen). The body of Krieger's response to Dr. Cohen's request states, in its entirety:

> We cannot retrace our 2003 editorial memos. They were eliminated from our records when the book went into out of print status.
>
> We are sorry we could not help you.

---

[15] In support of this statement, plaintiff cites to the Zatkovich Affidavit. See Pl.'s Resp. 28. However, because there is other evidence in the record of plaintiff's assertion, the court need not and does not rely on the Zatkovich Affidavit.

Def.'s Reply App. A914 (July 18, 2005 fax from Krieger to Dr. Cohen). From Dr. Cohen's letter and Krieger's response, plaintiff concludes that Krieger "mistook FEMA's website for one that seemed like it was endorsed by Dr. Cohen," and, because the work was available on the website, decided not to republish Dr. Cohen's work. Pl.'s Resp. 28 (citation omitted); see Def.'s Reply App. A916 (July 15, 2005 letter from Dr. Cohen to Krieger), A914 (July 18, 2005 fax from Krieger to Dr. Cohen).

Defendant argues that "your website" refers to the website of one of Dr. Cohen's publishers, HRD Press. Def.'s Reply 9. In support of its contention, defendant asserts that in its subpoena to Krieger, defendant requested "'[a]ll documents pertaining to the cessation of publishing any Work(s)-in-Suit.'" Def.'s Reply 8 (quoting Def.'s Reply App. A902 (subpoena sent to Krieger)). Defendant received a copy of the June 24, 2003 letter and states that "[t]he two pages in the production that immediately follow this letter . . . are pages from HRD Press's on-line catalogue showing Dr. Cohen's works with a detailed description of three of Dr. Cohen's HRD Press works . . . . The final page comprehensively lists 11 titles by Dr. Cohen offered by HRD Press that involve mentoring." Def.'s Reply 9 (citing Def.'s Reply App. A918-A919 (screenshot of an HRD Press webpage showing a list of eleven of Dr. Cohen's works that does not contain Mentoring Adult Learners: A Guide for Educators and Trainers)). Defendant argues that because "[t]he only category of documents about which the government sought discovery to which the HRD Press pages could be responsive is . . . where the government asked for documents pertaining to the cessation of publishing Dr. Cohen's work[,] . . . the most likely conclusion in reviewing these documents from Krieger is that the works sold by HRD Press caused Krieger to discontinue publication of Dr. Cohen's work." Def.'s Reply 9.

There is a genuine issue of material fact with respect to this alleged lost sale. The meaning of the phrase "your website" was never clarified by Krieger, see Def.'s Reply App. A899-A922 (subpoena sent to Krieger and documents produced in response to subpoena), and the identity of the website referred to by Krieger would indicate whether Krieger cancelled the republication of Dr. Cohen's work because of FEMA's alleged infringement. The facts alleged by Dr. Cohen with regard to the cancellation notice from Krieger are similar to those alleged by the plaintiff in Encyclopedia Brown Productions, 25 F. Supp. 2d at 402. In that case, the court found that deposition testimony by the president of the plaintiff company regarding "two deals that were not consummated" due to the defendant's infringement was "somewhat meager" evidence of causation, but it was nonetheless sufficient to create a genuine issue of material fact to defeat summary judgment. Id.; see X-It Prods., L.L.C. v. Walter Kidde Portable Equip., Inc., 155 F. Supp. 2d 577, 615-16 (E.D. Va. 2001) (finding that a genuine issue of material fact on actual damages was created by deposition testimony by the president of another company that it

did not buy the plaintiff's product because it found the defendant's infringing product being sold at a lower price); cf. Mfrs. Techs., Inc. v. Cams, Inc., 728 F. Supp. 75, 80 (D. Conn. 1989) (finding "customer testimony and other evidence indicating that the purchases of [the plaintiff's product] were either delayed, put off indefinitely, or cancelled entirely, as a result of exposure to defendant's [product]" to be "very compelling"); Goldenberg, 731 F. Supp. at 1159 (discussing the need for testimony from potential customers in order to award actual damages to the plaintiff). Because there is a genuine issue of material fact relating to Dr. Cohen's alleged lost sale to Krieger, defendant's motion for summary judgment is DENIED on the issue of actual damages for the public's access to and use of Dr. Cohen's works from FEMA's website. See RCFC 56(c)(1); Anderson, 477 U.S. at 255 (stating that to determine whether genuine issues of material fact exist, the court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party (citation omitted)).

a. Lost Profits for Non-Infringed Works

"A plaintiff may seek compensation for both direct and 'indirect' losses, as long as the losses claimed are not unduly speculative." Data Gen., 36 F.3d at 1171 (citing, inter alia, Bus. Trends Analysts, Inc. v. Freedonia Grp., Inc., 887 F.2d 399, 404 (2d Cir. 1989)). Indirect losses may include the value of lost sales on non-infringed works that are marketed as part of the line of merchandise that includes a work as to which copyright infringement is proven by the plaintiff. Sunset Lamp Corp. v. Alsy Corp., 749 F. Supp. 520, 521 (S.D.N.Y. 1990). However, the Copyright Act "limits the extent of actual recovery to amounts proved to have resulted from a defendant's infringement, as demonstrated by credible evidence." Id. at 524. As set forth in Sunset Lamp, plaintiff's burden of proof to recover actual damages for lost sales of non-infringed items is as follows:

> Plaintiff will have to demonstrate by credible evidence a relationship between sales of non-infringed [works] and sales of the infringed [works], and further show which sales were prevented as a result of defendant['s] infringement. The requirement [is] that the amount of damages allegedly suffered by the plaintiff bear a "necessary, immediate and direct causal connection" to the infringement . . . . Furthermore, [plaintiff] will need to show that amount specifically rather than rely on speculation. If there is no evidence to establish the amount of such damages, proof merely that there were such damages will not support an award.

Id. at 524-25 (quoting Big Seven Music, 554 F.2d at 509) (citing Bus. Trends Analysts, 887 F.2d at 407). Proving that lost profits on non-infringed works are "directly

attributable" to the defendant's infringement of another work is "difficult, but not inconceivable." Id. at 524. Evidence of lost customers is used to determine whether the plaintiff established the requisite causation to recover actual damages. Id. at 524 n.2 (stating that the plaintiff "may produce testimony from a purchaser at a department store that it canceled an order for many items in the [plaintiff's] line upon becoming aware that [the defendant] produced an item nearly identical to the [plaintiff's] banana leaf floor lamp" (citation omitted)).

Although plaintiff sets forth some evidence of a relationship "between sales of non-infringed [works] and sales of the infringed [works]," id. at 524, plaintiff has failed to show that sales of his non-infringed works "were prevented as a result of defendant's infringement," id. at 524-25; see Pl.'s Resp. 26-27; see also Pl.'s Resp. 10-11. Citing to Mr. Zatkovich's initial expert report and deposition, as well as the deposition of plaintiff's publisher, Mr. Robert Carkhuff, plaintiff claims that all of his works are "derivative works of each other," and therefore the "inclusion of damages for derivative works with damages for infringed works is appropriate." Pl.'s Resp. 27 (internal quotation omitted); see Pl.'s Resp. 10; see also Def.'s App A563 (Zatkovich Initial Expert Report) (stating that "[t]he content in all of the works is related, and descendant from common works, in particular Dr. Cohen's doctoral thesis").

However, rather than setting forth any evidence of causation, such as lost customers or cancelled orders for his non-infringed works as a result of the government's alleged infringement, plaintiff simply concludes that "[s]ince all of Plaintiff's works are related or derivative of each other, any finding that the infringement caused lost sales on the infringed works necessarily implies losses to the non-infringed works." Pl.'s Resp. 27 (internal quotation marks omitted); see Pl.'s Resp. 10 (claiming that "if the public could see the posted infringed works, it would forgo buying other works which are similar to and derivative of them. Therefore infringement of some works hurt sales for all works." (citations omitted)). Furthermore, plaintiff's expert does not provide any explanation of causation, but rather "assumes that the non-infringed works would be impacted by the availability of the initial 6 works on the FEMA website as the material all draws from the same core content." Def.'s App. A571 (Zatkovich Initial Expert Report); see Def.'s App. A563 (Zatkovich Initial Expert Report) (stating that "I have also assumed that sales trends in other works which were not infringed would be equivalently impacted by the infringement. . . . It is reasonable to assume that the ability to download a majority of the content from the Internet would reduce the need to purchase the non-infringed works."); Def.'s App. A586-A587 (Zatkovich Initial Expert Report). These conclusory statements--resting on assumptions and containing no evidence of causation--are insufficient to defeat summary judgment. See Perfect Web Techs., Inc. v. InfoUSA, Inc., 587 F.3d 1324, 1333 (Fed. Cir. 2009), reh'g & reh'g en banc denied, 2010 U.S. App.

LEXIS 6576 (Fed. Cir. 2010); SRI Int'l, 775 F.2d at 1116 (citing Barmag Barmer Maschinenfabrik AG, 731 F.2d at 836); see also Daubert, 509 U.S. at 596 (stating that if "the trial court concludes that the scintilla of [expert] evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to . . . grant summary judgment" (citations omitted)). Because plaintiff failed to raise a genuine issue of material fact with regard to lost profits for non-infringed works, defendant's Motion for Partial Summary Judgment is GRANTED on this issue. See RCFC 56(c)(1).

b. Lost Profits for Future Lost Sales

Some courts have suggested that actual damages under the Copyright Act may include future losses. See Mary Ellen Enters., 68 F.3d at 1070; Abeshouse, 754 F.2d at 471; Stevens Linen, 656 F.2d at 15; Applied Innovations, Inc. v. Regents of the Univ. of Minn., 876 F.2d 626, 637 (8th Cir. 1989); Baldwin Cooke Co. v. Keith Clark, Inc., 420 F. Supp. 404, 408 (N.D. Ill. 1976) (discussing plaintiff's lost future sales under the 1909 Copyright Act); see also 100 A.L.R. Fed. 258, at § 19 (1990) (discussing future damages); cf. Brooktree, 977 F.2d at 1581 (allowing for the possibility of future damages in an infringement suit brought under the Semiconductor Chip Protection Act, 17 U.S.C. § 911(b), but stating that "[t]he burden of proving future injury is commensurately greater than that for damages already incurred, for the future always harbors unknowns");[16] but cf. 6 Patry, at § 22:104 (stating that "actual damages recoverable are only for present, not for future, harm"); Nimmer § 14.02[A] (stating that "[a]ctual damages represent the extent to which infringement has injured or destroyed the market value of the work at the time of infringement" (citations omitted)). Although this court has not found any case that explicitly sets forth a plaintiff's burden of proof for the recovery of future losses as actual damages under the Copyright Act, case law suggests that the plaintiff must show that the future losses were caused by the defendant's infringement by setting forth evidence of lost customers or contracts or clear evidence of a diminution in value of the copyright; otherwise, the court may reject the plaintiff's claim as too speculative. See, e.g., Mary Ellen Enters., 68 F.3d at 1070 (finding that the plaintiff's evidence was sufficient to support a jury award for future losses because she set forth evidence comparing her book's value before and after the infringement, as well as evidence that she had sought various commercial opportunities following the infringement period and was only able to sell a revised version of her book for a greatly reduced price); Abeshouse, 754 F.2d at 471 (deeming future losses "too speculative" in that case because

[16]Professor Nimmer has analogized to Brooktree Corp. v. Advanced Micro Devices, Inc., 977 F.2d 1555, 1581 (Fed. Cir. 1992), in the context of future damages for copyright infringement. See Nimmer § 14.03[B][2][d] n.120.

the plaintiffs did not "make any effort to assess the marketability of their copyright" following the period of infringement); Stevens Linen, 656 F.2d at 15 (suggesting that had sales projections been supported by documentary evidence, the trial court may have had a basis for evaluating the validity of those projections); Baldwin Cooke, 420 F. Supp. at 408 (finding that plaintiff could not meet its burden of showing damages by having its expert estimate that the plaintiff's sales in future years would be equal to the defendant's sales during the infringement period); Hofmann v. O'Brien, 367 F. App'x 439, 443 (4th Cir. 2010) (unpublished) (remanding for a new trial on damages because the plaintiff's conclusory testimony and failure to "demonstrat[e] a causal link between the infringing O'Brien painting and any damage to the price of Hofmann's works . . . [were] insufficient to support the jury's damage award" (citing Mary Ellen Enters., 68 F.3d at 1070)); Cotter v. Christus Gardens, Inc., No. 99-5996, 2000 U.S. App. LEXIS 33473, at *12-13 (5th Cir. Dec. 12, 2000) (unpublished) (finding that the plaintiff was not entitled to future losses because he did not show that he had any legal entitlement to any future contracts for his copyrighted work); cf. Brooktree, 977 F.2d at 1581 (rejecting plaintiff's claim for future lost profits under the Semiconductor Chip Protection Act, 17 U.S.C. § 911(b), due to lack of evidence).

Although there is authority suggesting that future losses may be considered when determining actual damages, the court does not need to decide whether future lost profits are recoverable as a matter of law because Dr. Cohen failed to prove he is entitled to them as a matter of fact. Plaintiff argues that "since the infringing materials were placed on FEMA's public domain website, damages continue long after those materials were removed and continue to hurt sales of Plaintiff's works even at the present time." Pl.'s Resp. 24. However, rather than setting forth any evidence of causation, such as lost customers or cancelled orders for his works following the infringement period, plaintiff simply relies on Mr. Zatkovich's deposition testimony, in which he stated that "the damages would be ongoing" even after FEMA removed the allegedly infringing material from its website because the material has "been retrieved, reproduced, copied many, many number of times once it's retrieved from the website."[17] See Pl.'s Resp. 9 (quoting Def.'s

---

[17]Mr. Zatkovich's expert report likewise fails to show any evidence of causation of future lost sales. Although Mr. Zatkovich projects lost sales through the year 2017, he supports his sales projections with nothing more than conclusory assumptions. See Def.'s App. A562-A564, A609-A622 (Zatkovich Initial Expert Report). Mr. Zatkovich "assume[s] that sales would have declined at 20 percent per year for the period 2011-2017." Def.'s App. A562 (Zatkovich Initial Expert Report). To support this assumption, Mr. Zatkovich lists "multiple commercial sources" that carry works on mentoring to show that there is a "significant demand" for Dr. Cohen's works. Def.'s App. A562-A563 (Zatkovich Initial Expert Report). Based on this list, Mr.

continue...

App. A752 (Zatkovich Dep.)); see Def.'s App. A683 (Zatkovich Dep.) (testifying that "[i]f a publication is released into the public domain in 2004, that's going to affect the book sales in 2005, 2006, and 2007. . . . When something has been released to the public domain, the retail sale, the distribution of that publication, is damaged, period."). Plaintiff's argument consists entirely of conclusory statements and contains absolutely no evidence of causation. Such conclusory statements are not sufficient to defeat summary judgment. See Perfect Web Techs., 587 F.3d at 1333; SRI Int'l, 775 F.2d at 1116 (citing Barmag Barmer Maschinenfabrik AG, 731 F.2d at 836); see also Daubert, 509 U.S. at 596 (citations omitted). Because plaintiff failed to raise a genuine issue of material fact with regard to lost profits from future lost sales, defendant's motion for summary judgment is GRANTED on this issue. See RCFC 56(c)(1).

2. Statutory Damages and Damages for Willful Infringement

If the United States infringes upon a copyright, 28 U.S.C. § 1498(b) provides "for the recovery of [the copyright owner's] reasonable and entire compensation as damages for such infringement, including the minimum statutory damages as set forth in section 504(c) of title 17, United States Code." 28 U.S.C. § 1498(b). Section 504(c) of the Copyright Act addresses the ability of a copyright owner to elect an award of statutory damages instead of actual damages:

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, . . . in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1). Section 504(c) also addresses the possibility of increased statutory damages for willful copyright infringement:

> In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.

---

[17]...continue
Zatkovich concludes, without further explanation, "It is reasonable to assume that had the works not been infringed and placed into the public domain, the sales of his works would probably have grown over time." Def.'s App. A563 (Zatkovich Initial Expert Report).

17 U.S.C. § 504(c)(2).

Defendant argues that under 28 U.S.C. § 1498(b), "any statutory damage award against the government is limited to the minimum award of $750 per work." Def.'s Mot. 29. Defendant also argues that "[t]he government cannot be held liable for wilful infringement under its limited waiver of sovereign immunity under 28 U.S.C. § 1498(b)." Def.'s Reply 18; see Def.'s Mot. 35-37. However, these legal issues addressing statutory damages are speculative upon possible future actions by plaintiff. Dr. Cohen has not advised the court that he is electing an award of statutory damages instead of actual damages. See, e.g., Compl. ¶ 13 (requesting "[c]ompensatory damage of lost profits and all losses resulting from the infringements to Plaintiff including all damages available under the United States Copyright Law, in excess of $150,000.00 in damages"); Pl.'s Resp. 28 (stating that "plaintiff may choose to elect statutory damages" (emphasis added)); Pl.'s Resp. 32 (discussing the legal principles that plaintiff contends are applicable "if he elects statutory damages" (emphasis added)). If he proves that the United States infringed upon his copyright(s), Dr. Cohen may elect an award of statutory damages "at any time before final judgment is rendered." 17 U.S.C. § 504(c)(1); see 28 U.S.C. § 1498(b). Until Dr. Cohen elects an award of statutory damages instead of actual damages, there is no need for the court to decide legal issues related to an award of statutory damages. Therefore, defendant's Motion for Partial Summary Judgment on these two issues relating to statutory damages is DENIED.

IV. Conclusion

For the foregoing reasons, defendant's Motion to Strike is GRANTED IN PART, DENIED IN PART and otherwise MOOT. Defendant's motion to strike Mr. Zatkovich's deposition testimony on the value of use theory of actual damages as applied to the public's use of Dr. Cohen's works from FEMA's website is GRANTED. Defendant's motion to strike plaintiff's "cancellation theory" is DENIED. Defendant's motion to strike the Zatkovich Affidavit is MOOT.

Defendant's Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART. Summary judgment is GRANTED on the issues of lost profits for non-infringed works and lost profits from future lost sales. Summary judgment is DENIED on the issue of actual damages for the public's access to and use of Dr. Cohen's works from FEMA's website and DENIED on the issues of statutory damages and damages for willful infringement.

On or before Friday, August 19, 2011, the parties SHALL FILE a Joint Status Report proposing a pretrial schedule in accordance with RCFC Appendix A.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge