# In the United States Court of Federal Claims

No. 07-154 C

(E-Filed:  June 27, 2012)

|  |  |  |
|---|---|---|
| NORMAN H. COHEN, Ed.D., | ) | |
| | ) | Summary Judgment; Copyright |
| Plaintiff, | ) | Infringement; Willful |
| | ) | Infringement; Statutory Damages |
| v. | ) | Under 28 U.S.C. § 1498(b); |
| | ) | Number of Works |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Jonathan M. Cohen, Philadelphia, PA, for plaintiff.

David M. Ruddy, with whom were Stuart F. Delery, Acting Assistant Attorney General, and John J. Fargo, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

### OPINION and ORDER

HEWITT, Chief Judge

Before the court are Plaintiff's Motion for Summary Judgment on Liability (plaintiff's Motion or Pl.'s Mot.), Docket Number (Dkt. No.) 97, filed October 25, 2011; Plaintiff's Proposed Findings of Uncontroverted Facts in Support of Its Second Motion for Summary Judgment (plaintiff's Proposed Facts or Pl.'s Facts), Dkt. No. 98, filed October 25, 2011; the United States' Opposition to Plaintiff Dr. Cohen's Motion for Summary Judgment and Cross-Motion for Summary Judgment that Dr. Cohen Is Entitled to No More than Seven Hundred and Fifty Dollars in Damages (defendant's Cross-Motion or Def.'s Cross-Mot.), Dkt. No. 103, filed December 6, 2011; the United States' Response to Plaintiff Dr. Cohen's Proposed Findings of Uncontroverted Facts (Def.'s Resp. Facts), Dkt. No. 104, filed December 6, 2011; Plaintiff's Reply to United States' Opposition to Plaintiff, Dr. Cohen's Motion for Summary Judgment, and Plaintiff's Response to United States' Cross-Motion for Summary Judg[]ment that Dr. Cohen Is Entitled to No More than Seven Hundred and Fifty Dollars in Damages (plaintiff's Response or Pl.'s Resp.), Dkt. No. 105, filed December 30, 2011; and the

United States' Reply in Support of Its Cross-Motion for Summary Judgment, Dkt. No. 106, filed January 20, 2012.

Plaintiff attached a Supplemental Appendix in support of his Motion (Pl.'s App.), Dkt. Nos. 97-1 to 97-10.  Defendant attached a Supplemental Appendix (Def.'s Supp. App.), Dkt. No. 103-1, in support of its Response.

Also before the court are Plaintiff's Supplement to Plaintiff's Response in Opposition to the United States' Reply in Support of Its Cross[-M]otion for Summary Judgment (Pl.'s Supp. Resp.), Dkt. No. 111, filed March 5, 2012, and the United States' Supplemental Reply Pursuant to This Court's Orders of February 9 and March 9, 2012 in Support of Defendant's Cross-Motion for Summary Judgment, Dkt. No. 114, filed March 19, 2012.  The court heard oral argument on the parties' cross-motions on Wednesday, June 13, 2012 at 12:00 p.m. Eastern Daylight Time.  See June 5, 2012 Order, Dkt. No. 121, at 1.[1]

For the following reasons, defendant's Cross-Motion is GRANTED and plaintiff's Motion for summary judgment is GRANTED-IN-PART and DENIED-IN-PART.

I.      Background

This case involves a copyright infringement suit by Dr. Norman H. Cohen (Dr. Cohen or plaintiff) against the United States in which Dr. Cohen has elected to receive an award of statutory damages.  See Joint Status Report for Scheduling Pretrial Proceedings in This Case (JSR), Dkt. No. 92, at 1.[2]

A.      Plaintiff's Claims

Dr. Cohen contends that the United States, acting through the Federal Emergency Management Agency (FEMA), willfully infringed seven of plaintiff's copyrighted publications.  Pl.'s Mot. 1-2.  The seven publications allegedly infringed are a dissertation and six books or articles on mentoring.  Pl.'s Facts 6-7 (listing seven works

---

[1]  The oral argument held on Wednesday, June 13, 2012 was recorded by the court's Electronic Digital Recording (EDR) system. The times noted in citations to the oral argument refer to the EDR record of the oral argument.

[2]  Even if it were the case that plaintiff had not elected to receive an award of statutory damages, plaintiff has not pointed to credible evidence of actual damages to support any damages award above the statutory minimum of $750.00.  See infra Part III.E.2. The court must still consider, therefore, how many works are at issue for the purpose of determining a statutory damages award.

authored or edited by Dr. Cohen); <u>see also</u> Def.'s Cross-Mot. 1-2 (noting that plaintiff has accused the government of infringing the seven works listed in plaintiff's Proposed Facts).  The allegedly infringed works are:

(1)   <u>Principles of Adult Mentoring Inventory</u> (PAMI)
(2)   <u>Principles of Adult Mentoring Inventory Trainer's Guide</u> (Trainer's Guide)
(3)   Article titled "The Principles of Adult Mentoring Scale" in <u>Mentoring: New Strategies and Challenges, New Directions for Adult and Continuing Education</u> (Principles Article)
(4)   <u>The Manager's Pocket Guide to Effective Mentoring</u> (Manager's Pocket Guide)
(5)   <u>The Mentee's Guide to Mentoring</u> (Mentee's Guide)
(6)   <u>Mentoring Adult Learners:  A Guide for Educators and Trainers</u> (Mentoring Adult Learners)
(7)   <u>Development and Validation of the Principles of Adult Mentoring Scale for Faculty Mentors in Higher Education</u> (Dissertation).

Pl.'s App. 396-569; <u>see also</u> Def.'s Cross-Mot. 1-2.[3]

Plaintiff alleges that multiple instances of infringement occurred when FEMA copied--at times with substituted words--<u>PAMI</u> in its entirety and significant portions of plaintiff's six other publications, used the copies during FEMA mentoring courses, and "published, distributed and displayed" the copies on FEMA's public and internal websites.  Pl.'s Mot. 1-2.

B.     The Content of the Allegedly Infringed Material

<u>PAMI</u>, the publication that has been the focus of the parties' briefing and which the court here uses as a reference point, is composed of a fifty-five question test, scoring instructions for the test, and a description of "The Mentor Role," which includes both a list of six mentor objectives and descriptions of six mentor behaviors.  Pl.'s App. 396-420 (PAMI).

The test, also referred to as an "inventory," comprises fifty-five statements with respect to which an individual is to select a response among five choices--"Never," "Infrequently," "Sometimes," "Frequently," and "Always"--that "best represents your actual behavior as a mentor."  <u>Id.</u> at 399-406 (PAMI--Inventory) (emphasis omitted). For example, the first statement reads "I encourage employees to express their honest feelings (positive or negative) about their work-related experiences, including such

---

[3]  When citing to these seven documents, the court notes parenthetically which document it is referring to within plaintiff's Appendix, or, where appropriate, the section of the document to which it refers.

dimensions as training, educational opportunities and social relationships." Id. at 399 (PAMI).

The instructions for scoring the test assign a value from one to five that corresponds with each response such that "never" receives a value of one and "always" receives a value of five. Id. at 407-10 (PAMI--Scoring Instructions). The scoring instructions describe how to compute an overall score as well as individual scores within each of the six mentor behaviors. Id.

Finally, PAMI also contains a description of "The Mentor Role" as conceptualized by plaintiff. Id. at 411-18 (PAMI--Mentor Role Description). The description of the mentor role includes a list of six mentor objectives, each associated with one of six mentor behaviors: "1. Trust--Relationship[,] 2. Advice--Information[,] 3. Alternatives--Facilitative[,] 4. Challenge--Confrontive[,] 5. Motivation--Mentor Model[, and] 6. Initiative--Employee Vision." Id. at 411 (PAMI--Mentor Objectives) (emphasis omitted). "The Mentor Role" also describes six categories of recommended mentor behaviors. Id. at 412-17 (PAMI). For example, under the category "Relationship Emphasis Behaviors" is a list of five recommended behaviors:

- Practice responsive listening (verbal and nonverbal behaviors that signal sincere interest).

- Ask open-ended question related to expressed immediate concerns about actual situations.

- Provide descriptive feedback based on observations, rather than on inferences about motives.

- Use perception checks to ensure comprehension of feelings.

- Offer nonjudgmental, sensitive responses to assist in clarifying emotional states and reactions.

Id. at 412 (PAMI).

Nearly identical versions of the fifty-five statement inventory and similar scoring instructions appear in three of plaintiff's other publications. Id. at 560-69 (Dissertation); id. at 449-53 (Principles Article); id. at 543-59 (Mentoring Adult Learners). And similar descriptions of "The Mentor Role," as illustrated by descriptions of the six mentor behaviors, appear in all seven publications in forms that may be more expansive, condensed, or that use different phrasing from those presented in PAMI. Id. at 555-557 (Dissertation); id. at 446, 452-53 (Principles Article); id. at 525-41, 551-53 (Mentoring Adult Learners); id. at 412-17 (PAMI); id. at 433-34 (Trainer's Guide); id. at 462-67

(Manager's Pocket Guide); id. at 475-79, 485-518 (Mentee's Guide).  However, only four of plaintiff's publications include a list of six mentor objectives as part of plaintiff's description of "The Mentor Role."  See id. at 522 (Mentoring Adult Learners--Mentor Objectives); id. at 411 (PAMI--Mentor Objectives); id. at 430 (Trainer's Guide--Mentor Objectives); id. at 481 (Mentee's Guide--Mentor Objectives).

C.    FEMA's Allegedly Infringing Materials

The allegedly infringing materials are contained in four FEMA documents:  (1) Mentoring Instructor Guide (FEMA Instructor Guide), (2) Mentoring Student Manual (FEMA Student Manual), (3) Mentor's Toolkit (FEMA Toolkit), and (4) Mentor Training (FEMA Powerpoint).  Id. at 238-395.[4]

The FEMA Instructor Guide and the FEMA Toolkit each contains slightly modified versions of the fifty-five statement test presented in PAMI.  For example, the FEMA versions substitute "mentee" for "employee" and include the word "FEMA."  Id. at 256-63 (FEMA Instructor Guide--Inventory); id. at 361-67 (FEMA Toolkit--Inventory).  Accordingly, the FEMA-modified versions of the first statement in the inventory read, "I encourage mentees to express their honest feelings (positive or negative) about their career in FEMA."  Id. at 256 (FEMA Instructor Guide--Inventory); id. at 361 (FEMA Toolkit--Inventory).  The fifty-five statement inventory in the two FEMA documents is preceded by an acknowledgement such as "Adapted from N. H. Cohen, Principles of Adult Mentoring Inventory (PAMI), HRD Press, 1998."  Id. at 256 (FEMA Instructor Guide--Inventory); see also id. at 361 (FEMA Toolkit--Inventory).

All four FEMA documents--again with modifications--contain all or part of the description of "The Mentor Role" presented in PAMI.  Id. at 270-78 (FEMA Instructor Guide--Mentor Role Description); id. at 301-12 (FEMA Student Manual--Mentor Role Description); id. at 324-26 (FEMA Toolkit--Mentor Role Description); id. at 385-91 (FEMA Powerpoint--Mentor Role Description).

For example, the FEMA Student Manual contains a modified list of the six mentor objectives that had been listed in PAMI:  "1) Relationship--trust[,] 2) Information--specific advice[,] 3) Facilitative--alternatives[,] 4) Confrontive--challenge[,] 5) Role Model--motivation[,] 6) Critical Thinking--personal initiative and vision."  Id. at 301 (FEMA Student Manual--Mentor Role Description); see also id. at 411 (PAMI--Mentor Role Description).  Similarly, the FEMA Powerpoint contains the following  six word pairs:  1) Relationship Emphasis/Trust, 2) Information Emphasis/Advice, 3) Facilitative Focus/Alternatives, 4) Confrontive Focus/Challenge,

---

[4]  When citing to these four documents, the court notes parenthetically which document it is referring to within plaintiff's Appendix, or, where appropriate, the section of the document to which it refers.

5) Mentor Model/Motivation, and 6) Mentee Vision/Initiative.  Id. at 385 (FEMA Powerpoint--Mentor Role Description).  And in one section, the FEMA Toolkit lists the following five mentor behaviors:

- Responsive listening (verbal and nonverbal reactions that signal sincere interest)

- Open-ended questions related to expressed immediate concerns about actual situations

- Descriptive feedback based on observations rather than inferences of motive

- Perception checks to ensure comprehension of feelings

- Nonjudgmental sensitive responses to assist in clarification of emotional states and reactions[.]

Id. at 324 (FEMA Toolkit--Mentor Role Description).

D.      Defendant's Admission of Copyright Infringement

Defendant admits "that it copied the PAMI that includes a fifty-five question test, scoring system for interpreting the results of the test, and a description of the 'complete mentor role' as described by six mentor behaviors," Def.'s Cross-Mot. 6., in at least two FEMA Documents, the FEMA Instructor Guide and the FEMA Toolkit, Def.'s Resp. Facts. 7.

E.      The Court's Three Prior Opinions

Previously, the court ruled that the continuing wrong theory of damages, which would permit plaintiff to reach back beyond the three-year statute of limitations (plus tolling) in 28 U.S.C. § 1498(b), did not apply to plaintiff's claim.  See Cohen v. United States (Cohen I), 94 Fed. Cl. 165, 172-73 (2010).  The court also found that there was a genuine issue of material fact regarding whether the tolling provision contained in 28 U.S.C. § 1498(b) is available to plaintiff.  Id. at 174-75.

In Cohen v. United States (Cohen II), 98 Fed. Cl. 156 (2011), when addressing the government's motion for reconsideration, id. at 159, the court determined that plaintiff was both a beneficial and legal owner of the allegedly infringed copyright interests relating to the HRD Press books, see id. at 161.  The court also found that defendant could not be held liable for copyright infringement that occurred after March

15, 2004, the date that the government removed the allegedly infringing material from the FEMA website.  Id. at 167-71.

And in Cohen v. United States (Cohen III), 100 Fed. Cl. 461 (2011), the court determined that plaintiff's expert, Dr. Ivan Zatkovich, was precluded from testifying about the value associated with the public's use of Dr. Cohen's materials, see id. at 471-75, and that plaintiff could not recover actual damages for lost sales of non-infringed works or for future lost sales, id. at 482-84.  The court also determined that there was a genuine issue of material fact relating to an alleged lost sale--the cancelled republication of Mentoring Adult Learners by the Krieger Publishing Company (Krieger), id. at 479-81--and that defendant had waived its objection to the cancellation theory set forth by plaintiff's expert, id. at 471.

F.     The Parties' Cross-Motions for Summary Judgment

In his Motion now before the court, plaintiff seeks summary judgment that defendant is liable for the copyright infringement of seven publications authored or edited by plaintiff.  Pl.'s Mot. 27-30.  In its Cross-Motion, defendant seeks summary judgment that only PAMI had been infringed and that plaintiff is limited to $750.00 in statutory damages, an amount that may not be enhanced, even "as a result of alleged willful infringement."  Def.'s Cross-Mot. 1.

II.     Legal Standards

A.     Summary Judgment

Rule 56 of the Rules of the United States Court of Federal Claims (RCFC) provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a).  The moving party has the initial burden of demonstrating "the absence of any genuine issue of material fact and entitlement to judgment as a matter of law."  Crater Corp. v. Lucent Techs., Inc., 255 F.3d 1361, 1366 (Fed. Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).[5]  This burden may be discharged

---

[5]  The Rules of the United States Court of Federal Claims (RCFC) generally mirror the Federal Rules of Civil Procedure (FRCP).  See RCFC 56, Rules Committee Note (2008) ("The language of RCFC 56 has been amended to conform to the general restyling of the FRCP."); Flowers v. United States, 75 Fed. Cl. 615, 624 (2007) ("RCFC 56 is patterned on Rule 56 of the [FRCP] and is similar in language and effect."); Champagne v. United States, 35 Fed. Cl. 198, 205 n.5 (1996) ("In general, the rules of this court are closely patterned on the [FRCP].  Therefore, precedent under the [FRCP] is relevant to interpreting the rules of this court, including Rule 56."), aff'd, 136 F.3d 1300 (Fed. Cir. 1998); C. Sanchez & Son, Inc. v. United States, 6 F.3d 1539, 1541 n.2 (Fed. Cir. 1993) ("The [RCFC] generally follow the [FRCP].  [RCFC] 56(c) is,

by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Once the moving party has met its initial burden, the nonmoving party then bears the burden of coming forward with specific facts showing that there are genuine issues of material fact for trial. See id. at 324; RCFC 56(c)(1).

A fact is material if it "might affect the outcome of the suit." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," that is, when the proper resolution of the issue would require a trial. Id. at 248-50; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the court draws all inferences in favor of the non-moving party. See id.; Mann v. United States, 334 F.3d 1048, 1050 (Fed. Cir. 2003) (citing Anderson, 477 U.S. at 255).

Legal issues raised by the parties' briefing, although not the focus of the motion, may be resolved on summary judgment. See Delmarva Power & Light Co. v. United States, 79 Fed. Cl. 205, 214 (2007) ("The legal issues before the court may be resolved on summary judgment." (citing Long Island Sav. Bank, FSB v. United States, 503 F.3d 1234, 1243-44 (Fed. Cir. 2007))), aff'd, 542 F.3d 889 (Fed. Cir. 2008); City of Sherrill v. Oneida Indian Nation, 544 U.S. 197, 214 n.8 (2005) (resolving the "case on considerations not discretely identified in the parties' briefs," and stating that the question addressed "is inextricably linked to, and is thus 'fairly included' within, the questions presented."). While summary judgment may not be an appropriate vehicle to determine liability in a copyright infringement suit where reasonable minds could differ, see Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 63-64 (2d Cir. 2010); Trek Leasing, Inc. v. United States (Trek), 66 Fed. Cl. 8, 10-11 (2005), "it can be appropriate in certain circumstances," Trek, 66 Fed. Cl. at 11 (listing cases in which courts have held that liability for copyright infringement was resolvable on summary judgment).

III.   Discussion

A.   The Number of Works at Issue

The United States Court of Federal Claims (Court of Federal Claims) has exclusive jurisdiction over copyright suits against the United States. 28 U.S.C. § 1498(b) (2006). Section 1498(b) of title 28 of the United States Code provides the government's limited waiver of sovereign immunity for copyright infringement suits

---

in pertinent part, identical to [FRCP] 56(c).").  Therefore, this court relies on cases interpreting FRCP 56 as well as those interpreting RCFC 56.

against the United States.  See Walton v. United States, 551 F.3d 1367, 1371 (Fed. Cir. 2009).  Section 1498(b) states in relevant part:

> [W]henever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, . . . the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement, including the minimum statutory damages as set forth in section 504(c) of title 17, United States Code.

28 U.S.C. § 1498(b).

In general, to determine copyright infringement, the Court of Federal Claims examines the substantive law of copyright.  RT Computer Graphics, Inc. v. United States, 44 Fed. Cl. 747, 754 (1999) (citing Steve Altman Photography v. United States, 18 Cl. Ct. 267, 279 (1989)); see also Act of October 19, 1976 (1976 Copyright Act), Pub. L. No. 94-553, 90 Stat. 2541 (codified as amended at 17 U.S.C. §§ 101-805, 1001-1205 (2006)).  Under the 1976 Copyright Act, copyright infringement requires both "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co. (Feist), 499 U.S. 340, 361 (1991); see also Gaylord v. United States, 595 F.3d 1364, 1372 (Fed. Cir. 2010) (quoting Feist, 499 U.S. at 361); 17 U.S.C. § 501.

In a case in which a plaintiff pursues statutory damages, however, the court must also examine the provisions of 17 U.S.C. § 504(c), the section of the 1976 Copyright Act governing statutory damages.  See 28 U.S.C. § 1498(b) (referencing "minimum statutory damages as set forth in section 504(c) of title 17, United States Code") ; Wechsberg v. United States, 54 Fed. Cl. 158, 165-66 (2002) (discussing the intersection of the 1976 Copyright Act and 28 U.S.C. § 1498(b)).  Statutory damages are calculated on a per-work basis and § 504(c) sets the range for statutory damages, absent willful conduct, at $750.00 to $30,000.00 per work.  17 U.S.C. § 504(c)(1).  Section 504(c) further provides, "For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work."  Id.

Accordingly, the court first addresses the parties' cross-motions regarding how many works are at issue for the purpose of determining statutory damages.

> 1.    Six of Plaintiff's Publications Are Derivative Works Based on a Seventh Publication, Plaintiff's Dissertation

Defendant argues in its Cross-Motion that to the extent that six of Dr. Cohen's works are "based upon one or more preexisting works," such as his Dissertation, the six works constitute derivative works.  Def.'s Cross-Mot. 9-10 (citing, inter alia, 17 U.S.C. §§ 101, 504(c)(1)).  Although plaintiff has argued in previous rounds of briefing that this

action concerns derivative works, Pl.'s Resp. in Opp'n to the United States' Second Mot. for Partial Summ. J., Dkt. No. 75, at 27, he has since retreated from this position, see Pl.'s Resp. 5 n.1 (arguing that Dr. Cohen's use of the word 'derivative' as a layperson is dispositive of the issue before the Court, and somehow overrides use of the word 'related' . . . is wrong"). Plaintiff responds to defendant's contentions by arguing that each of his publications should be considered "separate works" for the purpose of determining statutory damages because they "were 'issued separately,' and 'not together as a unit.'" See Pl.'s Resp. 4 (citing Arista Records, LLC v. Lime Group, LLC (Arista), No. 06 CV 5936(KMW) 2011 WL 1311771, at *3 (S.D.N.Y Apr. 4, 2011) (unpublished)).

The 1976 Copyright Act defines a derivative work as "a work based upon one or more preexisting works." 17 U.S.C. § 101. However, as courts have long recognized, "almost all works are derivative works in that in some degree they are derived from pre-existing works." 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright (Nimmer) § 3.01 (2011) (citing Emerson v. Davies, 8 F. Cas. 615, 619 (C.C.D. Mass. 1845) (No. 4,436); Pickett v. Prince, 207 F.3d 402, 406 (7th Cir. 2000) ("A derivative work is, by definition, bound to be very similar to the original."). For the purposes of copyright law, a work is a "derivative work only if it would be considered an infringing work." 1 Nimmer § 3.01; Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp. (Well-Made Toy), 354 F.3d 112, 117 (2d Cir. 2003), abrogated in part on other grounds by Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 1248 (2010). If a work "sufficiently transforms the expression of the original work such that the two works cease to be substantially similar, then the . . . work is not a derivative work and, for that matter, does not infringe the copyright of the original work." Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc., 150 F.3d 132, 143 n.9 (2d Cir. 1998).

Plaintiff's Dissertation, published in 1993, is the first of plaintiff's writings to have been published. See Pl.'s App. 554 (Dissertation). It contains the earliest versions, organized in a series of tables and tailored for faculty mentors in higher education, of the fifty-five statement inventory, scoring instructions, and a description of "The Mentor Role" that is reorganized in another section as "The Faculty Mentor Role." Id. at 554-69 (Dissertation).

Plaintiff's six remaining works, published in the five years after the publication of plaintiff's Dissertation, contain similar, and, at times, nearly identical, versions of several foundational elements of plaintiff's Dissertation.

All six post-Dissertation publications contain a modified description of six mentor behaviors found in plaintiff's Dissertation. See id. at 452-53 (Principles Article) (containing small organizational changes); id. at 528-41, 550-53 (Mentoring Adult Learners) (containing same); id. at 412-17 (PAMI) (containing small organizational changes and phrasing adjustments); id. at 433-34 (Trainer's Guide) (containing the core purpose and definitions for each of the six mentor behaviors); id. at 462-67 (Manager's Pocket Guide) (containing a description of the six mentor behaviors); id. at 478-518

(Mentee's Guide) (containing a more expansive description of the six mentor behaviors). And three of the six post-Dissertation publications excerpted in the record contain a version of the fifty-five-statement inventory and scoring instructions. Compare id. at 560-66 (Dissertation--Inventory and Scoring), with id. at 449-452 (Principles Article--Inventory and Scoring) (containing an inventory tailored for faculty mentors); id. at 542-49 (Mentoring Adult Learners--Inventory and Scoring) (containing an inventory tailored for mentors in business and government); id. at 399-410 (PAMI--Inventory and Scoring) (containing same).

In addition, four publications also contain background information about mentoring and more expansive explanations about what "The Mentor Role" entails and about a fifty-five-statement inventory. Id. at 445-449 (Principles Article--Essay); id. at 522-41 (Mentoring Adult Learners--Text); id. at 424-431 (Trainer's Guide--Text); id. at 475-518 (Mentee's Guide--Text). And four of the six publications, Mentoring Adult Learners, PAMI, Trainer's Guide, and Mentee's Guide, contain a list of six mentor objectives. Id. at 522 (Mentoring Adult Learners--Mentor Objectives); id. at 411 (PAMI); id. at 430 (Trainer's Guide--Mentor Objectives); id. at 481 (Mentee's Guide--Mentor Objectives).[6]

Viewing the facts in the light most favorable to the non-moving party, here, plaintiff, plaintiff's six post-Dissertation publications closely track the work of his Dissertation. While a given post-Dissertation publication may expand on plaintiff's doctoral work, each publication remains focused on and contains significant portions of, the expression in plaintiff's Dissertation, including a description of mentor behaviors, a fifty-five-statement inventory (including scoring instructions) and a list of mentor objectives.[7] Because the fifty-five-statement inventory and the description of six mentor

---

[6] Defendant suggested at oral argument that a fifth publication, The Manager's Pocket Guide to Effective Mentoring (Manager's Pocket Guide), Pl.'s Supplemental Appendix (Pl.'s App.), Docket Numbers (Dkt. Nos.) 97-1 to 97-10, at 458-67, also contained the list of six mentor objectives. Oral Argument of June 13, 2012, Argument of Mr. David M. Ruddy at 12:40:23-12:41:20 (describing how the same "core content," including the list of six mentor objectives, also appears in the Manager's Pocket Guide, or what defendant terms "Work 4"). Because the court has been provided only with excerpted copies of plaintiff's works, including the Manager's Pocket Guide, it is possible that a portion of that publication not provided to the court contains, as defendant suggests, the six mentor objectives.

[7] Neither party disputes that the fifty-five-statement inventory and the descriptions of the six mentor behaviors that appeared first in plaintiff's Dissertation are substantially similar to the inventories and descriptions of mentor behaviors contained in plaintiff's remaining six publications. See Pl.'s Proposed Findings of Uncontroverted Facts in Supp. of Its Second Mot. for Summ. J. (Plaintiff's Facts or Pl.'s Facts), Dkt. No. 98, at 7-10 (describing how the "eight pages of Inventory questions" appear in four of plaintiff's publications and "The Mentor Objectives and Mentor Behaviors" appear in all seven publications); United States' Resp. to Pl. Dr. Cohen's Proposed Findings of Uncontroverted Facts, Dkt. No. 104, at 6 (agreeing that the

behaviors contained in plaintiff's Dissertation reappear, with some changes in form and phrasing, as the foci of plaintiff's remaining six publications, each of plaintiff's later six publications "would be considered an infringing work" when compared with plaintiff's preexisting work, his Dissertation.[8]  1 Nimmer § 3.01; Well-Made Toy, 354 F.3d at 117. Accordingly, the six works are derivative works within the meaning of 17 U.S.C. § 101. Cf. 1 Nimmer § 3.01.

Because plaintiff has pointed to no evidence in the record that would create a genuine issue of material fact regarding whether six of plaintiff's publications are substantially similar to his Dissertation such that they are "derivative works" under 17 U.S.C. § 101, defendant's Motion for summary judgment on this issue is GRANTED.

2.      Because Six of Plaintiff's Publications Are Derivative Works Based on His Dissertation, All Seven Publications Must Be Construed as a Single Work for Statutory Damages Purposes

Defendant argues that 17 U.S.C. § 504 and the cases interpreting the statutory damages provision relating to derivative works and compilations require that all of plaintiff's works be construed as a single work entitled to a single statutory damages award in this case.  See Def.'s Cross-Mot. 9-10.

The 1976 Copyright Act provides that, for the purposes of statutory damages, "all the parts of a compilation or derivative work constitute one work."  17 U.S.C. § 504(c)(1).  The House Report accompanying the bill states in relevant part:

Where the suit involves infringement of more than one separate and independent work, minimum statutory damages for each work must be awarded.  For example, if one defendant has infringed three copyrighted works, the copyright owner is entitled to statutory damages of at least $750 and may be awarded up to $30,000. Subsection (c)(1) makes clear, however, that, although they are regarded as independent works for other purposes, "all the parts of a compilation or derivative work constitute one work" for this purpose.  Moreover, although the minimum and maximum amounts are to be multiplied where multiple "works" are involved in the

---

eight pages of inventory statements appear in four of plaintiff's publications and, insofar as plaintiff's reference to the "Mentor Objectives and Mentor Behaviors" includes only his recitation of the description of six mentor behaviors in PAMI described on pages seven through ten of Plaintiff's Facts, the description appears in all seven of plaintiff's publications).

[8]  While it is possible for at least four of plaintiff's publications to be viewed as not only derivative of plaintiff's Dissertation but of plaintiff's other preexisting works as well--a conclusion that neither party has offered--this possibility does not change the court's determination that all six of plaintiff's post-Dissertation publications are derivative works under 17 U.S.C. § 101 (2006).  See 17 U.S.C. § 101 (2006).

> suit, the same is not true with respect to multiple copyrights, multiple owners, multiple exclusive rights, or multiple registrations. This point is especially important since, under a scheme of divisible copyright, it is possible to have the rights of a number of owners of separate "copyrights" in a single "work" infringed by one act of a defendant.

H.R. Rep. No. 94-1476, at 162 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5778.

Accordingly, publications that constitute separate works for a purpose such as determining copyright infringement may be a single work for the purpose of statutory damages. Xoom, Inc. v. Imageline, Inc., 323 F.3d 279, 285 (4th Cir. 2003) ("Although parts of a compilation or derivative work may be 'regarded as independent works for other purposes[,]' for purposes of statutory damages, they constitute one work." (alteration in original) (quoting H.R. Rep. No. 94-1476, at 162, abrogated in part on other grounds by Reed Elsevier, Inc., 130 S. Ct. at 1248); see also Data Gen. Corp. v. Grumman Sys. Support Corp., 795 F. Supp. 501, 504 (D. Mass. 1992) (stating same and finding that derivative works could be separate works for the purpose of computing attorneys' fees). In cases where plaintiffs have sought multiple statutory damages awards for derivative works (or parts of a compilation), courts have heeded "Section 504(c)(1)'s one-award restriction," and have provided a single statutory damages award for derivative works (or parts of a compilation) that appear to constitute one work for statutory damages purposes. See, e.g., Bryant v. Media Right Prods., Inc., 603 F.3d 135, 141 (2d Cir. 2010).

While the court has found little authority interpreting § 504(c)(1) solely in the context of construing allegedly infringed derivative works as a single work, courts have found that works that qualify as either "parts of a compilation" or as derivative works should be considered a single work for statutory damages purposes. See, e.g., Bryant v. Europadisk, Ltd., No. 07 Civ 3050(WGY), 2009 WL 1059777, at *2, *7 (S.D.N.Y. Apr. 15, 2009) (unpublished) (finding only two works at issue in a case involving two music albums in which the individual tracks and cover art had been registered and stating that, like the individual songs, "the albums' cover art illustrations comprise 'parts' of the compilations and not separate works"); Kepner-Tregoe, Inc. v. Carabio (Kepner-Tregoe), No. 8-71025, 1979 WL 1072, at *17 (E.D. Mich. Apr. 20, 1979) (unpublished) (finding that one of the three allegedly copyrighted works was a derivative work and therefore would not be considered a separate work for statutory damages purposes); cf. Pearson Educ., Inc. v. Nugroho, No. 08 Civ. 8034(DAB)(AJP), 2009 WL 3429610, at *4-5 (S.D.N.Y. Oct. 27) (unpublished magistrate report and recommendation) (finding that defendant's instructor's solutions manuals were derivative works that infringed on plaintiff's copyrighted textbooks and were not separate works because they lacked "independent economic value" or copyright lives of their own), adopted by 2009 WL 4884098 (S.D.N.Y. 2009).

For example, in Pavlica v. Behr, the United States District Court for the Southern District of New York (Southern District) addressed the issue of whether eight items--three different versions of a teacher's manual, an addendum to the teacher's manual, a workshop schedule, and three student workbooks--were each separate works, derivative works, or parts of a compilation. Pavlica, No. 03 Civ. 9628(DC) & 04 Civ. 8152(DC), 2006 WL 1596763, at *1 (S.D.N.Y. June 12, 2006) (unpublished). The Southern District found that "the eight items are not separate, independent works." Id. Instead, it determined that the three versions of the teacher's manual, the addendum to the teacher's manual, and the workshop schedule "are part of a compilation or are derivative works that together can only be considered 'one work' for purposes of statutory damages." Id. The court further determined that the three student workbooks were either derivative of each other or part of a compilation and should have been considered, together, a single work eligible for a separate statutory damages award. Id.

Similarly, the United States Court of Appeals for the Fourth Circuit held that, where a party had created two collections of images and the underlying images for each collection, there were only two works--which were either "compilations or derivative works"--and therefore the party could recover only two statutory damages awards. Xoom, Inc., 323 F.3d at 281-82, 285.

In this case, six of plaintiff's publications are derivative works based on a seventh publication, plaintiff's Dissertation. See supra Part III.A.1. Because plaintiff has elected to receive statutory damages, only one "work" is at issue for statutory damages purposes, and plaintiff may receive only one award of statutory damages for any infringement of the seven publications. See 17 U.S.C. § 504(c)(1); Pavlica, 2006 WL 1596763, at *1; Xoom, Inc., 323 F.3d at 285.

Plaintiff's reliance on Arista, Pl.'s Resp. 4, is misplaced. In Arista, the court held that plaintiff's sound recordings, which had been issued as an individual track, could be considered for an award of statutory damages notwithstanding the fact that "plaintiff, at some point in time, also included that sound recording as part of an album or other compilation." Arista, 2011 WL 1311771, at *3. Notably, the Arista court's hypothetical scenario, in which a plaintiff had issued an album containing four songs (A, B, C, and D) and had also issued songs A and B as separate tracks, does not support plaintiff's theory of recovery. See id. at 4 n.7. The Arista court reasoned that plaintiff could "recover three statutory damage awards: one award for song A, one award for song B, and one award for the compilation (of which C and D are a part)." Id. Nowhere did the Arista court indicate that a plaintiff could recover three separate statutory damages awards on the basis that A and B, issued as separate tracks, also reappear as parts a compilation. Id.

Accordingly, regardless of the number of derivative works or preexisting works that may have actually been infringed, only one work, at most, will be considered to have been infringed for statutory damages purposes. See Kepner-Tregoe, 1979 WL 1072, at *17. Because plaintiff has not shown that he is entitled to summary judgment

as a matter of law that multiple works are at issue in this suit for copyright infringement, plaintiff's Motion is DENIED.  Defendant's Cross-Motion arguing that plaintiff's derivative works should be treated as a single work for statutory damages purpose is GRANTED.

The court therefore considers whether any one of the allegedly infringed works was, in fact, infringed.

> B.     Defendant Infringed, at Minimum, Plaintiff's Copyright in PAMI

A finding of copyright infringement requires that plaintiff own the relevant copyright interest and that defendant have copied "constituent elements of the work that are original."  Feist, 499 U.S. at 361.  Notably, the requirement of originality in the copyright context is quite low.  Id. at 362 ("As mentioned, originality is not a stringent standard; it does not require that facts be presented in an innovative or surprising way."); see also 1 Nimmer § 3.03[A] (stating, with respect to derivative works, "In general, the applicable standard in determining the necessary quantum of originality is that of a 'distinguishable variation' that is more than 'merely trivial.'" and "Any variation will not suffice, but one that is sufficient to render the derivative work distinguishable from its prior work in any meaningful manner will be sufficient.").

The court has determined previously that plaintiff is the legal and beneficial owner of the allegedly infringed copyright interests in PAMI.  See Cohen II, 98 Fed. Cl. at 161.  And defendant has admitted that "it copied the PAMI that includes a fifty-five question test, scoring system for interpreting the results of the test, and a description of the 'complete mentor role' as described by six mentor behaviors."  Def.'s Cross-Mot. 6.[9]

Plaintiff asserts, and defendant does not contest, that a version of plaintiff's fifty-five-statement inventory and scoring system were copied from PAMI into two FEMA publications, the FEMA Instructor Guide and the FEMA Toolkit.  See Pl.'s Mot. 13-14; Def.'s Cross-Mot. passim; Pl.'s App. 256-66 (FEMA Instructor Guide--Inventory and Scoring); Pl.'s App. 361-70 (FEMA Toolkit--Inventory and Scoring).

---

[9]  The court need not address defendant's attempt to qualify its argument with the assertion that "[t]he government admits that it copied the PAMI, but it did not copy enough expression of the other asserted works that a lay observer would perceive the FEMA [works] and the [other] allegedly infringed works to be substantially similar."  United States' Opp'n to Pl. Dr. Cohen's Mot. for Summ. J. and Cross-Mot. for Summ. J. that Dr. Cohen Is Entitled to No More than Seven Hundred and Fifty Dollars in Damages (Def.'s Cross-Mot.), Dkt. No. 103, at 9.  This statement is at odds with the position that defendant takes elsewhere in its briefing that "[t]he government has admitted that it copied the PAMI [(containing a fifty-five-statement inventory, list of six mentor objectives and description of six mentor behaviors)], which appears in and is admittedly the core of the remaining asserted works."  United States' Reply in Support of Its Cross-Mot. for Summ. J. (Def.'s Reply), Dkt. No. 106, at 4 (emphasis added).

As plaintiff recognized, the portions of both the FEMA Instructor Guide and the FEMA Toolkit containing the fifty-five statements and scoring guide include a version of the following attribution:  "Adapted from N. H. Cohen, Principles of Adult Mentoring Inventory (PAMI), HRD Press, 1998."  Pl.'s App. 256 (FEMA Instructor Guide); see also id. at 361 (FEMA Toolkit); Pl.'s Mot. 13.  The fifty-five-statement inventory and the scoring instructions, with small changes, appear in the FEMA Instructor Guide and the FEMA Toolkit.  Pl.'s App. 256-66 (FEMA Instructor Guide--Inventory & Scoring); id. at 361-70 (FEMA Toolkit--Inventory & Scoring).

Plaintiff also appears to argue that defendant infringed plaintiff's list of six "Mentor Objectives" and plaintiff's description of six "Mentor Behaviors" that appear in PAMI.  Pl.'s Mot. 10-16.  Specifically, plaintiff alleges that all four FEMA documents infringe plaintiff's description of six mentor behaviors found in PAMI and that three of the FEMA documents--the FEMA Instructor Guide, the FEMA Student Manual, and the FEMA Powerpoint--infringe the list of six mentor objectives found in PAMI.  Id. at 14-15.  Defendant does not dispute that it copied plaintiff's "Mentor Objectives" and the descriptions of the six mentor behaviors found in PAMI.[10]  See Def.'s Cross-Mot. 8-9.

Because there is no genuine issue of material fact that defendant directly copied PAMI, and because the court has determined previously that plaintiff is the legal and beneficial copyright owner of PAMI, plaintiff's Motion regarding defendant's liability for copyright infringement of PAMI is GRANTED.[11]

> C.   In the Alternative, Only One Statutory Damages Award is Permitted Because Plaintiff's Allegedly Infringed Material Is Protected by a Single Copyright in PAMI

As the court has described, see supra Part III.A.2, a plaintiff electing statutory damages may receive only one award of statutory damages per "work" infringed.  See 17 U.S.C. § 504(c)(1).  However, in a case where a number of plaintiff's publications appear to contain identical or nearly identical copyrighted material, the appropriate initial inquiry for the court is the extent of the copyright in the original copyrighted work.  See Silverman v. CBS Inc., 870 F.2d 40, 49-50 (2d Cir. 1989).  Specifically, the

---

[10]  The court notes that, at times, without specific references to which of plaintiff's works he is drawing a comparison, plaintiff alleges that defendant infringed "the Mentor Objectives" and "the Mentor Behaviors."  See, e.g., Pl.'s Mot. for Summ. J. on Liability (Pl.'s Mot.), Dkt. No. 97, at 14.

[11]  Because all of plaintiff's works are derivative of his thesis, the court's determination regarding defendant's infringement of non-PAMI works affects neither the number of works at issue nor the number of statutory damages awards in this case.  See supra Part III.A.1-2.  The court therefore need not reach the issue of whether plaintiff's six other publications were infringed.

court examines whether the copied material--despite its appearance in several copyrighted derivative works--is covered by just one copyright, and whether it would therefore be unreasonable to consider multiple statutory damages awards.  See Harry Alter Co. v. A.E. Borden Co. (Borden), 121 F. Supp. 941, 945-46 (D. Mass. 1954) (finding that, in a case in which plaintiff sought to recover for infringement of each catalog edition in which the copyrighted material originally appeared, defendant's infringing "A-45 catalog" infringed only one of plaintiff's catalogs); Walt Disney Co. v. Powell (Disney), 897 F.2d 565, 570 n.10 (D.C. Cir. 1990) (dismissing the possibility that separate damages were recoverable for the infringement of a copyright in a movie in which the characters Mickey and Minnie had appeared because plaintiff's "infringement on the characters completely overlaps any infringement of the movie"); cf. 4 Nimmer § 14.04[E][1][b] ("[W]hen defendant's work copies various separate portions or passages of plaintiff's work, but all those portions are protected under a single copyright, then minimum damages are not to be multiplied by reason of the several, separately copied passages.") (citing, inter alia, Borden, 121 F. Supp. 941).

Borden, a case that preceded the 1976 Copyright Act, involved a series of trade catalogs in which each of plaintiff's catalogs was copyrighted but significant portions of the material in each catalog were "repeated from previous catalogs."  Borden, 121 F. Supp. at 942-43.  Plaintiff sought to recover multiple statutory damages awards, one for each of the previous editions of its catalogs in which the "items were originally published."  See id. at 945-46.  The Borden court rejected this suggestion and, while relying on the sensible inference that defendant had only copied plaintiff's catalogs that were concurrent with defendant's infringement and that contained the majority of the copied materials, commented that acceding to plaintiff's request "would multiply the number of infringements far beyond the actual extent of [defendant's] wrongdoing."  Id.

Like Borden, this case involves allegedly infringed material that reappears in a variety of publications authored by plaintiff.  See supra Part III.A.1; Pl.'s Facts 7-10 (stating that "[t]he eight pages of Inventory questions" appear in four of plaintiff's publications and the description of the mentor role, including a list of mentor objectives and a description of six mentor behaviors, appears in all seven of plaintiff's publications); Def.'s Resp. Facts 6 (agreeing with plaintiff's statements insofar as the description of the mentor role is limited to the recitation provided by plaintiff of six mentor behaviors).

Indeed, the parties do not dispute that the allegedly infringed materials are composed primarily of a fifty-five-question "inventory" designed to assess how a candidate performs in six categories of mentor behaviors, directions for scoring and a description of "The Mentor Role," see Pl.'s Mot. 9-13 (describing the inventory questions and the "basic objectives" of the six mentor behaviors); Def.'s Cross-Mot. 8-9 ("The only common elements that Dr. Cohen points to between the FEMA works and his asserted works [are] the questionnaire that makes up his inventory and the mentor behaviors and objectives that he lists on pages ten through 12 of his brief."), which the court found were protected by a copyright in PAMI, see Cohen II, 98 Fed. Cl. at 161

(finding that plaintiff was the legal and beneficial owner of the allegedly infringed copyright interests in PAMI). Nor do the parties dispute the text of the FEMA documents --(1) FEMA Instructor Guide, (2) FEMA Student Manual, (3) FEMA Toolkit, and (4) FEMA Powerpoint--that contain, to varying degrees, the allegedly infringing material. See Pl.'s App. 238-395 (providing copies of the four FEMA documents); Pl.'s Mot. 8, 14-15 (noting that the four FEMA documents "contained an adapted version" of PAMI); Def.'s Cross-Mot. 2-4, 6 (conceding that FEMA had copied "the PAMI that includes a fifty-five question test, scoring system for interpreting the results of the test, and a description of the 'complete mentor role'").

With the sole exception of a sentence that appears to have been copied from the Trainer's Guide,[12] Pl.'s Mot. 15-16; Def.'s Cross-Mot. 9, the allegedly infringed items--a fifty-five-statement inventory, scoring instructions, a list of six mentor objectives, and a description of six mentor behaviors--were protected at least as early as the publication of PAMI. It follows from Borden that, to the extent that defendant copied the protected materials in PAMI that also have appeared in other works authored by plaintiff, defendant only infringed on the single copyright in PAMI. See Borden, 121 F. Supp. at 945-46. To hold otherwise "would multiply the number of infringements far beyond the actual extent of [defendant's] wrongdoing." Id.

Plaintiff has not shown that he is entitled to judgment as a matter of law that multiple works are at issue, see supra Part III.A.2, or equivalently, that multiple statutory damages awards are merited, see Borden, 121 F. Supp. at 945-46. Therefore, on this alternative ground, plaintiff's Motion, insofar as it requests summary judgment that defendant infringed multiple works and is liable for multiple statutory damages awards,

---

[12] The court is not persuaded that the government should be liable for a separate award of statutory damages for infringing the Principles of Adult Mentoring Inventory Trainer's Guide (Trainer's Guide), Pl.'s App. 421-34 (Trainer's Guide), by copying a sentence from that publication. Even if copying has occurred, a court must consider whether so much of plaintiff's work has been copied as to render the allegedly infringing work substantially similar to plaintiff's work. See Ringgold v. Black Entm't Television, 126 F.3d 70, 74-75 (2d Cir. 1997) (describing the "quantitative component" of a court's substantial similarity analysis). If the copied material is not sufficient in quantity to render the two works substantially similar, an action for copyright will not lie. Sandoval v. New Line Cinema Corp., 147 F.3d 215, 217 (2d Cir. 1998) ("[W]here the unauthorized use of a copyrighted work is de minimis, no cause of action will lie for copyright infringement, and determination of a fair use claim is unnecessary." (citing Ringgold, 126 F.3d at 76)). Although plaintiff argues that defendant copied one sentence from the approximately fifty pages of text contained in plaintiff's Trainer's Guide, see Pl.'s Mot. 15-16, a proposition that defendant does not appear to contest, see Def.'s Cross-Mot. 7, plaintiff has not shown that he is entitled to summary judgment that the government copied so much of the Trainer's Guide as to render the FEMA document substantially similar to the Trainer's Guide such that it would constitute an infringing work, see Sandoval, 147 F.3d at 217. Therefore, plaintiff is not entitled to a separate award of statutory damages on this basis.

is DENIED.  Defendant's Cross-Motion, insofar as it argues that plaintiff is entitled to, at most, a single award of statutory damages, is GRANTED.

      D.      Defendant's Argument that Titles Are Not Copyrightable Is Irrelevant to the Court's Opinion on Summary Judgment

      Defendant also contends that plaintiff accuses the government of copying without permission both plaintiff's "expression set forth in the PAMI" and the (unprotectable) "ideas described in the PAMI."  Def.'s Cross-Mot. 6.  Defendant argues that the list of six mentor objectives set forth in PAMI--(1) Trust--Relationship, (2) Advice--Information, (3) Alternatives--Facilitative, (4) Challenge--Confrontive, (5) Motivation--Mentor Model, and (6) Initiative--Employee Vision, Pl.'s App. 411--are not "sufficient expression" to qualify them as copyrightable subject matter, id. (citing 37 C.F.R. § 202.1(a) (2011)).  The court did not find a rebuttal to this argument in plaintiff's Response.  Instead, plaintiff's Response, without specifically addressing whether the titles that identify the mentor behaviors are copyrightable, states that plaintiff has previously identified the "location and content of . . . multiple instances of infringement."  Id. at 3.

      Section 102 of title 17 of the United States Code makes clear that copyright protection does not "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery."  17 U.S.C. § 102(b).  And defendant is correct that 37 C.F.R. § 202.1(a) provides a list of materials that are not considered to be subject to copyright.  See Def.'s Cross-Mot. 6.  These materials include "[w]ords and short phrases such as names, titles, and slogans; familiar symbols or designs."  37 C.F.R. § 202.1(a) (2011).  If the issue were whether defendant had copied only the categorical titles of the six mentor objectives, the court would be inclined to agree with defendant that no infringement would be possible.  See id.  But where the categorical titles are part of a larger work, i.e., PAMI, in which a substantial portion of the expression appears to be copied, this determination is immaterial.  Defendant's argument is irrelevant to the court's determination of how many works were infringed for the purpose of statutory damages.

      E.      Damages

      The 1976 Copyright Act permits plaintiffs to pursue either actual or statutory damages.  17 U.S.C. § 504(a); see also Cohen III, 100 Fed. Cl. at 476.  And 28 U.S.C. § 1498(b) limits, by omission, the remedies available against the United States.  3 Nimmer § 12.01[E][1], n.162 (examining the text of § 1498(b) and noting that "[i]t would therefore appear that, in actions against the government, the court lacks discretion . . . to order" certain remedies).  Section 1498 of title 28 provides that a copyright owner suing the government may seek only "the recovery of his reasonable and entire compensation as damages for [an] infringement, including the minimum statutory damages as set forth in section 504(c) of title 17, United States Code."  28 U.S.C. § 1498(b).

1.      "Reasonable and Entire Compensation" by the Government Does Not
        Include Damages for Willfulness

Defendant asserts that plaintiff is not entitled to punitive damages for willful copyright infringement because the government has not waived its sovereign immunity for such damages.  Def.'s Cross-Mot. 11-14.  In this case, plaintiff argues that he merits increased damages--specifically, "maximum statutory damages," Pl.'s Supp. Resp. 14-19 (capitalization omitted)--on the grounds that the government "willfully" infringed plaintiff's copyright, id. at 18 ("Ms. Zaidel's willful posting of Plaintiff's works on the FEMA website clearly calls for increased statutory damages.").

In Leesona Corp. v. United States (Leesona), the United States Court of Claims (Court of Claims) considered the government's waiver of sovereign immunity for "reasonable and entire compensation" in the context of patent infringement.  220 Ct. Cl. 234, 244, 599 F.2d 958, 964-65 (Ct. Cl. 1979).  The Court of Claims held that the trial judge erred in converting what was essentially an eminent domain case into a tort case in which the trial judge considered the government's "bad faith" and awarded punitive damages.  Id. at 246-47, 599 F.2d at 966 (Ct. Cl. 1979).  The Leesona court stated that the law of eminent domain guides the court's interpretation of "reasonable and entire compensation."  Id. at 248, 599 F.2d at 967 ("This court has traditionally searched the law of eminent domain for legal precedents and principles to apply in determining the 'reasonable and entire compensation' to be granted in a valid infringement action against the government." (citing, inter alia, Tektronix, Inc. v. United States, 213 Ct. Cl. 257, 264, 552 F.2d 343, 346-47 (Ct. Cl.), modified, 213 Ct. Cl. 307, 557 F.2d 265 (Ct. Cl. 1977))).  The Leesona court stated, "The proper measure in eminent domain is what the owner has lost, not what the taker has gained."  Id. at 252, 599 F.2d at 969.  The court explained that any waiver of sovereign immunity must be express and that, although punitive damages may indeed be a "salutary" lesson, "it is not one the United States has consented to."  Id. at 251-52, 599 F.2d at 968-69.

Recently, the United States Court of Appeals for the Federal Circuit (Federal Circuit) stated that the analysis of "reasonable and entire compensation" in Leesona "applies with equal force in the § 1498(b) context, where courts must determine just compensation for the plaintiff's loss when the government takes what is essentially a compulsory, non-exclusive license on the plaintiff's copyright."  Gaylord v. United States, 678 F.3d 1339, 1343 (Fed. Cir. 2012).

Plaintiff attempts to distinguish Leesona on the grounds that it concerned damages for patent infringement rather than the damages for copyright infringement at issue in this case.  Pl.'s Supp. Resp. 19.

Contrary to plaintiff's arguments, however, plaintiff may not recover increased damages for allegedly willful infringement by the government.  The government's waiver of sovereign immunity in § 1498(b) for "reasonable and entire compensation" includes only compensation for what the owner lost.  Gaylord, 678 F.3d at 1343.

<u>Leesona</u>'s holding that "reasonable and entire compensation" for infringement actions is moored in the law of eminent domain and that, absent an express waiver by the government, the government cannot be held liable for willful infringement, "applies with equal force" to damages determinations in copyright actions against the United States. <u>Id.</u>  Willfulness is not a proper consideration for the court in determining "reasonable and entire compensation," therefore plaintiff cannot seek increased damages against the United States on the grounds that defendant's behavior was willful.

Plaintiff's Motion on the issue of willfulness is DENIED.  Defendant's Cross-Motion regarding willfulness is GRANTED.

2.      The Phrase "including the minimum statutory damages" in 28 U.S.C. § 1498(b) Limits Plaintiffs Pursuing "Reasonable and Entire Compensation" in the Form of Statutory Damages to the $750.00 Statutory Minimum

Defendant argues that any (single) statutory damages award against the government must be a minimum statutory damages award of $750.00.  <u>See</u> Def.'s Cross-Mot. 14.  Defendant argues that, under 28 U.S.C. § 1498(b), a plaintiff may elect to receive "'just compensation' in the form of [either] actual damages or 'minimum statutory damages.'"  <u>Id.</u> at 14.  Defendant argues in the alternative that, even if § 1498(b) permitted a plaintiff to recover a damages award "within the entire range of basic statutory damages," <u>id.</u> at 33, any award to Dr. Cohen would still be confined to $750.00 due to an absence of evidence or legal theories to support a statutory damages award higher than the minimum, <u>see id.</u> at 26-32.

Plaintiff responds that the government's waiver of sovereign immunity in 28 U.S.C. § 1498(b) is a waiver for "reasonable and entire compensation" that includes "'minimum statutory damages as set forth in section 504(c) of title 17,'" Pl.'s Supp. Resp. 11 (quoting 28 U.S.C. § 1498(b)), but does not limit a plaintiff who elects statutory damages to the minimum of the statutory damages range, <u>id.</u> at 11-14 (citing, inter alia, <u>Wechsberg</u>, 54 Fed. Cl. at 165-66 (finding that under § 1498(b), $750.00 constituted the floor but not the ceiling for a copyright plaintiff who elected statutory damages)).  Plaintiff asserts that he should instead recover "maximum statutory damages" as full compensation for defendant's "willful infringement."  <u>Id.</u> at 14 (some capitalization omitted).

In the briefing on <u>Cohen III</u>, the parties also raised these issues, which the court did not address because "these legal issues addressing statutory damages are speculative . . . [because] Dr. Cohen has not advised the court that he is electing an award of statutory damages instead of actual damages."  100 Fed. Cl. at 484.  The Federal Circuit has not yet addressed the issue of whether the language of § 1498(b) permits a plaintiff who has elected to receive an award of statutory damages may receive more than the minimum statutory damages of $750.00.  The only other case of which the court is aware that has addressed this issue ruled that § 1498(b) did not limit a plaintiff

who elected statutory damages to the minimum of the statutory range.  Wechsberg, 54 Fed. Cl. at 165-67.

a.      The Text of 28 U.S.C. § 1498(b) and Statutory Damages

The text of a statute is the starting point for statutory construction.  Zoltek Corp. v. United States (Zoltek), 672 F.3d 1309, 1318 (Fed. Cir. 2012) ("It is fundamental that '[t]he starting point in every case involving construction of a statute is the language itself.'" (alteration in original) (quoting Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 472 (1977))); Mission Critical Solutions v. United States, 91 Fed. Cl. 386, 395 (2010) (citing Desert Palace, Inc. v. Costa, 539 U.S. 90, 98 (2003)).  And because "[s]ection 1498 waives the United States' sovereign immunity from suit . . . it must be strictly construed in favor of the United States."  Zoltek, 672 F.3d at 1318 (citing Blueport Co. v. United States, 533 F.3d 1374, 1378 (Fed. Cir. 2008)).

Section 1498(b) states in relevant part:

the exclusive action which may be brought for [copyright] infringement [committed by the United States] shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement, including the minimum statutory damages as set forth in section 504(c) of title 17, United States Code.

28 U.S.C. § 1498(b) (emphasis added).  Section 1498(b) permits suit by a copyright owner against the federal government "whenever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States."  Id.  However, it specifies that the "action by the copyright owner" must be "for the recovery of his reasonable and entire compensation as damages for such infringement, including the minimum statutory damages as set forth in section 504(c) of title 17."  Id.

The phrase "statutory damages" in § 1498(b) appears not alone, but as part of the phrase "the minimum statutory damages as set forth in section 504(c) of title 17."  Id.  "Minimum" indicates lowest end of a given range, The American Heritage Dictionary of the English Language 1121 (5th ed. 2011) (defining "minimum" as meaning, among other things, "[t]he least possible quantity or degree" or "[t]he lower limit of variation").  And the referenced statute, § 504(c) of the 1976 Copyright Act, provides that "the copyright owner may elect . . . instead of actual damages and profits, an award of statutory damages . . . with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just."  17 U.S.C. § 504(c)(1).  Following the cross-reference in § 1498(b) to the 1976 Copyright Act, it is apparent that the phrase "the minimum statutory damages" means $750.00.

Plaintiff's interpretation of the statute--which would make available the entire range of statutory damages upon an election of statutory damages, Pl.'s Supp. Resp. 10-

22

14--is unpersuasive because such an interpretation renders the word "minimum" meaningless. Under plaintiff's reading, a hypothetical statute that read "reasonable and entire compensation as damages . . . , including statutory damages," would have the same meaning as the actual statute, which states "including the minimum statutory damages." 28 U.S.C. § 1498(b) (emphasis added). Further, if Congress wished to ensure that the entire statutory range was available, as plaintiff suggests, Congress would not have specified "the minimum statutory damages," which can refer only to one end of the statutory range ($750.00). See 17 U.S.C. § 504(c)(1).[13] Because plaintiff's reading does not give effect to the word "minimum," the court declines to adopt plaintiff's interpretation of the statute. Cf. Hohn v. United States, 524 U.S. 236, 249 (1998) ("We are reluctant to adopt a construction making another statutory provision superfluous."); Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998) (stating same).

   b.    Congress is Presumed to Be Aware of Prior Judicial Decisions

   "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." Lorillard v. Pons, 434 U.S. 575, 580 (1978). In addition, when "Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." Id. But see Henderson v. Shinseki, 589 F.3d 1201, 1215-16 (Fed. Cir. 2009) ("The 're-enactment rule' delineated in Lorillard does not establish congressional acquiescence in all situations.") (citing Coke v. Long Island Care at Home, Ltd., 376 F.3d 118, 130 n.5 (2d Cir. 2004), vacated and remanded on other grounds, 546 U.S. 1147 (2006)), rev'd on other grounds, 131 S. Ct. 1197 (2011).

   When Congress passed legislation in 1960 (the 1960 Act), amending 28 U.S.C § 1498 and adding a reference to minimum statutory damages, it borrowed from the then-existing version of 28 U.S.C. § 1498(a), which, at that time, provided a limited sovereign immunity waiver for patent infringement suits against the United States, and from the 1909 Copyright Act, Act of March 4, 1909, 35 Stat. 1075,[14] the then-existing

---

[13] The court's interpretation is consistent with the plain meaning of the word "include," which has been defined as "[t]o consider as part of or allow into a group or class." The American Heritage Dictionary of the English Language (American Heritage Dictionary) 888 (5th ed. 2011). But see Wechsberg v. United States, 54 Fed. Cl. 158, 165-66 (2002) (stating that "[t]he phraseology [of 28 U.S.C. § 1498(b)] strongly suggests that the word 'including' in the statute should be read to mean 'but at least,' that is, that the damage recovery available to a plaintiff as 'reasonable and entire compensation' would in no event (presuming infringement is proven) be less than the 'minimum' statutory damages").

[14] The 1909 Copyright Act, Act of March 4, 1909, 35 Stat. 1075, as amended, governed copyright infringement cases between private parties until it was superseded by the Act of October 19, 1976, Pub. L. No. 94-553, 90 Stat. 2541 (codified as amended at 17 U.S.C. §§ 101-805, 1001-1205 (2006)).

copyright statute governing disputes between private parties.  See Pub. L. No. 86-726, 74 Stat. 855 (codified as amended at 28 U.S.C. § 1498(b)).

Before the passage of the 1960 Act, Congress's waiver of sovereign immunity for patent infringement by the United States provided for the "recovery of [the patent owner's] reasonable and entire compensation for such use and manufacture."  28 U.S.C. § 1498 (1958); see also Zoltek Corp. v. United States, 51 Fed. Cl. 829, 835-36 (2002) (describing the history of the 1910 patent statute that eventually became § 1498(a)). Judicial decisions construing prior versions of 28 U.S.C. § 1498(a) likened the statute to an eminent domain statute.  See, e.g., Irving Air Chute Co. v. United States, 117 Ct. Cl. 799, 802, 93 F. Supp. 633, 635 (Ct. Cl. 1950).  And evidence supporting "reasonable and entire compensation" for the unauthorized use of a patent took such forms reasonable royalties based on the actual cost, albeit to defendant, of manufacturing products that utilized plaintiff's patents.  Nat'l Elec. Signaling Co. v. United States, 99 Ct. Cl. 646, 661, 49 F. Supp. 768, 775 (Ct. Cl. 1943) ("[I]n the circumstances, a proper measure of the reasonable and entire compensation to which the owner of the patents is entitled is a reasonable royalty based on the cost to the government of the radio receivers embodying the heterodyne inventions covered by the patents in suit."); see also Ordnance Eng'g Corp. v. United States, 96 Ct. Cl. 278, 290-91 (Ct. Cl. 1942) (finding 7.5% of the factory cost of production of infringing shells, less certain deductions, to be a reasonable royalty).  However, § 1498(a), while perhaps a general model for § 1498(b), H.R. Rep. No. 624, at 3 (1959), is of limited use in the present inquiry, because it contains no parallel provision for minimum statutory damages.

In contrast, the 1909 Copyright Act, like the 1976 Copyright Act now in effect, provided that a private plaintiff could choose either to proceed with proof of actual damages and profits, or "'in lieu of actual damages'" to receive statutory damages in an amount that the court determined to be just.  L.A. Westermann Co. v. Dispatch Printing Co. (Westermann), 249 U.S. 100, 104, 106 (1919).  Judicial decisions under the 1909 Copyright Act defined minimum statutory damages and identified some of the differences between actual and statutory (or "in lieu") damages.  The United States Supreme Court (Supreme Court) in Westermann held, with regard to the statutory damages provisions of the 1909 Copyright Act, that the trial court had erred in awarding statutory damages below the minimum of the statutory range provided in the 1909 Copyright Act, thereby determining that the statutory minimum provided a solid floor for a plaintiff's election of statutory damages.  Id. at 109; 4 Nimmer § 14.04[B][1][a] n.29 (noting that Westermann "is equally applicable under the current [Copyright] Act").  The Westermann Court also counseled that, while a court must stay within the statutory damages limits, "[w]ithin these limitations the court's discretion and sense of justice are controlling."  Westermann, 249 U.S. at 106-07.

The Supreme Court observed subsequently with respect to the statutory damages section of the 1909 Copyright Act:

> The phraseology of the section was adopted to avoid the strictness of
> construction incident to a law imposing penalties, and to give the owner of
> a copyright some recompense for injury done him, in a case where the rules
> of law render difficult or impossible proof of damages or discovery of
> profits.  In this respect the old law was unsatisfactory.

Douglas v. Cunningham, 294 U.S. 207, 208-09 (1935); see also F.W. Woolworth Co. v.
Contemporary Arts, 344 U.S. 228, 231-32 (1952).

The court will not presume that Congress, when it specified "the minimum
statutory damages, as set forth in section 504(c) of title 17," 28 U.S.C. § 1498(b), was
unaware that courts viewed judicial discretion as a controlling factor in the
determination of statutory damages under the range provided in the 1909 Copyright Act,
see Lorillard, 434 U.S. at 580-81, 585; Westermann, 249 U.S. at 106-07.  Nor is the
court convinced that Congress did not know that the statutory minimum set a firm floor
for judges and had been had been viewed as an alternative form of damages when actual
damages were difficult or impossible to prove.  See Lorillard, 434 U.S. at 580-81, 585;
Douglas, 294 U.S. at 108-09; Westermann, 249 U.S. at 106-07.  Accordingly, the court
is persuaded that Congress intended to provide minimum statutory damages upon
election or as damages in the absence of proof of actual damages.

> c.    The Legislative History Suggests Only General Similarities to § 1498(a)
>       and Does Not Support a Suit for the Full Range of Statutory Damages

"'Absent a clearly expressed legislative intention to the contrary, [the statute's
plain] language must ordinarily be regarded as conclusive.'"  Wyeth v. Kappos, 591
F.3d 1364, 1369 (Fed. Cir. 2010) (alteration in original) (quoting Consumer Prod. Safety
Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)).  The plain language of the
statute, which does not mention the full range of statutory damages, is not contradicted
by its legislative history.

The legislative history does not address whether the government's waiver of
sovereign immunity in § 1498(b) also permits copyright owners suing the government to
seek the full range of statutory damages ($750.00-$30,000.00) available under 17 U.S.C
§ 504(c).  The legislative history of § 1498(b) states in part:  "The bill is based,
generally, upon provisions similar to those now existing in Federal law for patents, but
with modifications appropriate to the nature of copyright property."  H.R. Rep. No. 624,
at 3.  The legislative history therefore suggests that § 1498(b) was modeled generally on
existing federal patent law, "but with modifications" specific to the copyright context.
Id.

The only meaningful reference to statutory damages is a comment by a witness
responding to another witness's perception of the inadequacy of minimum statutory
damages, see To Amend Title 28 of the United States Code Relating to Actions for
Infringements of Copyrights by the United States:  Hearing on H.R. 4059 Before the

Subcomm. on Patents, Trademarks, and Copyrights of the S. Comm. on the Judiciary, 86th Cong. 20 (statement of George D. Cary, General Counsel, Copyright Office, Library of Congress) (responding to a comment from another witness regarding the inadequacy of minimum statutory damages in the face of legal fees for a plaintiff who elected statutory damages that "[t]his . . . illustrates the wisdom of another provision of the bill, and that is the administrative settlement here").[15]   The legislative history does not address what amount of statutory damages, besides the minimum amount, may be sought, and therefore awarded, as "reasonable and entire compensation" under § 1498(b).   Absent a clear indication of Congress's intent to the contrary, the court will not disregard the plain meaning of the statute.   See Wyeth, 591 F.3d at 1369; Shoshone Indian Tribe of Wind River Reservation v. United States, 364 F.3d 1339, 1345 (Fed. Cir. 2004) ("The language of the statute is the best indication of Congress's intent.").[16]

Defendant's Cross-Motion for summary judgment that § 1498(b) limits copyright plaintiffs to seeking "reasonable and entire compensation" in the form of either actual damages or minimum statutory damages is GRANTED.   However, if plaintiff fails to show actual damages to support his requested recovery, the court may award nominal damages of $750.00.   Douglas, 294 U.S. at 209-10.   Although a recovery of $750.00 per work infringed may appear inadequate to plaintiffs such as Dr. Cohen,[17] the proper body to address that issue is Congress and not this court.   See Sec'y of Agric. v. Ctr. Roig Ref. Co., 338 U.S. 604, 618-19 (1950).[18]

---

[15]   The provision for administrative settlement contains no cap on the amount of settlement beyond "available appropriations."   See 28 U.S.C. § 1498(b).   One witness did note, however, that settlement may not be an option if an agency did not have the authority to settle.   See To Amend Title 28 of the United States Code Relating to Actions for Infringements of Copyrights by the United States:   Hearing on H.R. 4059 Before the Subcomm. on Patents, Trademarks, and Copyrights of the S. Comm. on the Judiciary, 86th Cong. 21 (statement of Arthur S. Curtis, Attorney).

[16]   Statutory damages are also mentioned in a letter from the Librarian of Congress to Representative Emanuel Celler.   The letter states, "The statutory damage provisions of the copyright law are made applicable to the infringements."   H.R. Rep. No. 86-624, at 7 (1959).

[17]   Of course, Congress, when legislating a waiver of sovereign immunity, may structure the damages provision in the waiver differently than the damages provisions in statutes covering suits between private parties.   But see Wechsberg v. United States, 54 Fed. Cl. 158, 165-66 (noting that the provision in § 1498(b) for "reasonable and entire compensation," if read "as both a floor and a ceiling on damages even in the context of a plaintiff's election [of statutory damages]," would be at odds with the election provision in § 504(c), because "there would then be no logical reason for a plaintiff ever to make such an election").

[18]   Defendant also argues that a footnote in a leading copyright treatise supports its plain meaning argument that the word "minimum" means $750.00.   Def.'s Cross-Mot. 15.   With regard to 28 U.S.C. § 1498(b), the footnote states in part, "It would therefore appear that, in actions against the government, the court lacks discretion either to order impoundment and

      d.      Plaintiff's Election to Receive an Award of Statutory Damages

Plaintiff has represented, "Dr. Cohen now wishes to elect statutory damages." JSR 1.  Because plaintiff has elected to receive minimum statutory damages by his election to receive an award of statutory damages in a suit under § 1498(b), the court may award only $750.00 per work infringed.  See supra Part III.E.2.a-d.  Accordingly, plaintiff is entitled to $750.00 as minimum statutory damages.

However, the court has not previously addressed what statutory damages are available under 28 U.S.C. § 1498(b) and plaintiff may have thought he was entitled to elect a range of statutory damages.  See JSR 1 (citing Cohen III, 100 Fed. Cl. at 484, in which the court declined to address the statutory damages awards issues).[19]  The court now addresses whether, even if the full range of statutory damages were available to plaintiff, plaintiff has provided support for a greater-than-minimum award of statutory damages.[20]

      3.      Even If the Full Range of Statutory Damages Is Available Upon Election, No Evidence of Entitlement to Additional Damages Has Been Provided By Plaintiff

---

destruction of infringing articles or to increase statutory damages above the minimum amount of $750 or, if applicable, $200 for innocent infringement."  3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright (Nimmer) § 12.01[E][1] n.162 (2011) (internal citation omitted) (citing, inter alia, 4 Nimmer § 14.04[B]).  The court declines to rely on a sentence that is inconsistent with the court's earlier analysis that, in an action for copyright infringement against the United States, willfulness, or the defendant's state of mind, is not an appropriate consideration for the court in determining "reasonable and entire compensation."  See supra Part III.E.1 (citing, inter alia, Leesona Corp. v. United States, 220 Ct. Cl. 599 F.2d 958 (Ct. Cl. 1979)).

[19]  In his most recent brief, however, plaintiff affirmed that he wished to go forward with proof of statutory rather than actual damages as reasonable and entire compensation.  He stated, "[T]his is now a statutory damages case, largely because Defendant thwarted Plaintiff's access to factual proof sufficient to satisfy this Court's assessment of Plaintiff's expert's theories regarding actual damages."  Pl.'s Supplement to Pl.'s Resp. in Opp'n to the United States' Reply in Support of Its Cross[-M]otion for Summ. J., Dkt. No. 111, at 1.

[20]  Even assuming that plaintiff never elected minimum statutory damages and was pursuing only "reasonable and entire compensation," plaintiff has not provided, and, as a matter of law could not provide, the court with credible evidence of actual damages and, in the absence of evidence of actual damages, can, at most, recover nominal statutory damages, namely the minimum statutory damages of $750.00.  See Douglas v. Cunningham, 294 U.S. 207, 209-10 (1935); infra Part III.E.3.

Defendant argues in the alternative that, even if the full range of statutory damages is available to plaintiff upon election, plaintiff is entitled to only $750.00, the minimum of the statutory damages range. Def.'s Cross-Mot. 20-21. Specifically, defendant argues that (i) a number of plaintiff's damages theories have been limited by the court; (ii) the alleged recovery period is seven days; and (iii) all of Dr. Cohen's remaining damages theories are time-barred or legally impermissible. Id. at 23-32.

a.      Defendant is Correct that the Court's Prior Rulings Have Narrowed Plaintiff's Possible Theories of Damages

Defendant contends that the court's prior rulings have limited the types of damages theories available to support plaintiff's request for statutory damages greater than the minimum. Id. at 23-25. The court has ruled that Dr. Cohen may not seek damages under the continuing wrong theory, for secondary liability, for non-infringed works, or for future lost sales. See supra Part I.E. The court also determined that plaintiff's expert, Dr. Zatkovich, could not testify regarding actual damages under a value-of-use theory as applied to the public. See supra Part I.E.

Plaintiff does not contest defendant's briefing on these issues, see Pl.'s Supp. Resp. 1, with which the court agrees, see supra Part I.E.

b.      Absent Plaintiff's Establishing that Tolling Occurred, Plaintiff Is Limited to a Seven-Day Recovery Period

In its ruling on defendant's first motion for summary judgment, the court determined that plaintiff had raised a genuine issue of material fact with regard to whether the three-year statute of limitations set forth in § 1498(b) had been tolled and, accordingly, denied defendant's summary judgment motion with respect to tolling. Cohen I, 94 Fed. Cl. at 174-75. Defendant now argues that, in light of the court's prior rulings, which have limited the damages theories available to plaintiff, and under the statute of limitations in § 1498(b), defendant is entitled to summary judgment that plaintiff is limited to a seven-day recovery period between March 9, 2004, the date three years prior to the date plaintiff filed his complaint, and March 15, 2004, the date that the government took down the allegedly infringing materials from the FEMA website. See Def.'s Cross-Mot. 25-26. In a footnote, defendant observes, "Although provided the opportunity by the Court to take further factual discovery on this issue, plaintiff declined to do so." Id. at 25 n.6.

Defendant is correct that the court's prior ruling set a cutoff point of March 15, 2004--the date that the allegedly infringing materials were taken off FEMA's website, Cohen II, 98 Fed. Cl. at 168-71. Insofar as defendant's Cross-Motion is a request for summary judgment that plaintiff is limited to a seven-day recovery period absent a showing that the statute of limitations has been tolled, defendant's Cross-Motion is GRANTED.

c.      Because No Tolling Occurred, Plaintiff Is Limited to a Seven-Day
        Recovery Period

In its first motion for summary judgment, defendant argued that "no
communications from the Plaintiff satisfied the 'written claim' requirements" of the
tolling provision of §1498(b).  United States' Motion for Partial Summ. J., Dkt. No. 37,
at 12-13.  In his response to that motion, plaintiff argued that tolling should apply for the
approximately three-month period between October 17, 2005 to January 26, 2006.  Pl.'s
Resp. Opp'n to United States' Mot. for Partial Summ. J., Dkt. No. 42, at 20 n.16.

The court in Cohen I determined that a genuine issue of material fact existed
because plaintiff's October 17, 2005 letter to FEMA "appear[ed] to be part of a series of
communications between FEMA and plaintiff in the context of which the letters could
be understood as a written claim for compensation" that would toll the statute of
limitations.  Cohen I, 94 Fed. Cl. at 174-75.  However, because discovery had closed and
no additional evidence had been brought to court's attention, the court asked the parties
to discuss at oral argument "whether any additional evidence has been brought out in
discovery that is relevant to the court's observation that, in context, plaintiff's
correspondence [with FEMA] 'could be understood as a written claim for
compensation.'"  June 5, 2012 Order 1-2 (citing RCFC 56(f)).  During oral argument on
the cross-motions, defendant stated, "And again, the government submits that there is no
need for additional evidence . . . [the case] is properly resolvable on summary judgment
as to tolling.  The only evidence in the record were those letters . . . from October 17,
2005 to January 26, 2006," Oral Argument of June 13, 2012, Argument of Mr. David M.
Ruddy at 12:35:08-12:35:32, a proposition with which plaintiff's counsel did not
disagree, see Oral Argument of June 13, 2012, Argument of Mr. Jonathan M. Cohen at
12:54:00-1:03:39.

Because no additional evidence has been forthcoming, and there has been no
suggestion that a trial would help the court decide this issue, the issue of tolling is ripe
for summary judgment on the evidence in the record.  See Anderson, 477 U.S. at 250
("The inquiry performed is the threshold inquiry of determining whether there is the
need for a trial--whether, in other words, there are any genuine factual issues that
properly can be resolved only by a finder of fact because they may reasonably be
resolved in favor of either party."); 11 James Wm. Moore et al., Moore's Federal
Practice § 56.11[3] (3d ed. 2004).

Section 1498(b) provides that copyright plaintiffs suing the United States must
file a complaint within three years of any infringement for which the plaintiffs seek to
recover.  See 28 U.S.C. § 1498(b).  The three-year statute of limitations contains the
following tolling provision:

> except that the period between the date of receipt of a written claim for
> compensation by the Department or agency of the Government or
> corporation owned or controlled by the United States, as the case may be,

having authority to settle such claim and the date of mailing by the
Government of a notice to the claimant that his claim has been denied shall
not be counted as a part of the three years, unless suit is brought before the
last-mentioned date.

Id. (emphasis added).  Due to the paucity of cases interpreting § 1498(b), the court
finds instructive the tolling provision applicable to patents and the cases
interpreting that statute.  35 U.S.C. § 286;[21] see also Cohen I, 94 Fed. Cl. at 172.

In Custer v. United States, the Court of Claims held that a letter to which plaintiff
had attached materials relating to the same subject matter but which did not identify the
patent at issue did not constitute an administrative claim that would toll the statute of
limitations in 35 U.S.C. § 286.  224 Ct. Cl. 140, 146-48, 622 F.2d 554, 558-59 (Ct. Cl.
1980).  The court observed that § 286 required that notice to the government be
"sufficiently detailed to afford the Government a realistic opportunity to consider and
settle the claim."  Id. at 147, 622 F.2d at 558.

Relying on Custer, this court had found that a plaintiff's administrative claim,
even though it had been filed as a tort claim, was sufficient to toll the statute of
limitations under § 1498(b) when it "notified the correct agency . . . of the underlying
facts of a claim pending against the government and stated a sum certain for the
damages."  Leonardo v. United States, 55 Fed. Cl. 344, 352-53 (2003).

There is no genuine issue of material fact regarding the contents of the written
correspondence between plaintiff and FEMA.  On October 17, 2005 counsel for plaintiff
wrote a letter addressed to Mr. Jordan Fried, associate general counsel, FEMA.  Def.'s
App. Part I, Dkt. No. 37-1, at A2.  The letter stated in its entirety:  "It has been many
weeks since you said you would speak to Ms. Zaidel and get back to me about this
matter.  I never heard from you.  Please let me know if I have to sue FEMA to get a
response."  Id.  In reply, Mr. Fried wrote:

Thank you for your recent letter threatening to bring suit against the Federal
Emergency Management Agency.  As you recall, when you called me I had
no background on the matters of concern to you.  As we further discussed,

---

[21]  35 U.S.C. § 286 states in relevant part:

In the case of claims against the United States Government for use of a patented
invention, the period before bringing suit, up to six years, between the date of
receipt of a written claim for compensation by the department or agency of the
Government having authority to settle such claim, and the date of mailing by the
Government of a notice to the claimant that his claim has been denied shall not be
counted as part of the period referred to in the preceding paragraph.

35 U.S.C. § 286 (emphasis added).

you had been working with Edward Broyles of this office to address your
concerns.  I advised Mr. Broyles of your call and the particular issues raised
by you, and referred the matter back to him.

Id. at A3.

The correspondence from plaintiff's attorney contains references to "this matter"
and "my inquiry regarding a clear cut case of copyright infringement," but does not
contain any information about specific instances of copyright infringement.  Id. at A2,
A4.  In addition, while the correspondence contains a threat to sue FEMA, it does not,
on its face, contain a demand for compensation.  See id.

In the absence of a written claim for compensation as well as specific facts or
details that would support that claim, plaintiff's correspondence, in particular, a letter
from plaintiff's counsel to FEMA stating, "Please let me know if I have to sue FEMA to
get a response," id. at A2, does not, in the court's judgment, constitute a "written claim
for compensation" sufficient to toll the statute of limitations under 28 U.S.C. § 1498(b),
see Custer, 224 Ct. Cl. at 147, 622 F.2d at 558; Motorola, Inc. v. United States, 13 Cl.
Ct. 420, 427-28 (1987) (finding that a single paragraph in a letter did not constitute an
administrative claim that would toll the statute of limitations under 35 U.S.C. § 286 and
stating that that a written claim for compensation "must be calculated to make a
Government officer reasonably aware that a claim is being made"); Leonardo, 55 Fed.
Cl. at 352-53 (finding that an administrative claim filed with the correct agency and that
stated a "sum certain" for damages was sufficient to toll the statute of limitations under §
1498(b)).  And insofar as plaintiff or plaintiff's counsel may have requested
compensation from FEMA in a telephone call,[22] that communication does not satisfy the
requirement that a claim for compensation from the agency be "written."  See 28 U.S.C.
§ 1498(b).  The court therefore finds as a matter of law that the tolling provisions of §
1498(b) do not apply in this case.

d.      Damages for the Value of the Alleged Lost Sale to Krieger Are Time-
        Barred

---

[22]  Plaintiff's Complaint states, "Plaintiff's counsel contacted FEMA's counsel more than six
months before filing this action, and made a claim for damages of a million dollars to resolve
this matter.  FEMA eventually responded in writing by saying it had no liability, did not violate
the Copyright Law, and had engaged in only 'fair use.'"  Civil Action Compl., Dkt. No. 1, at 7.
There is no evidence in the record, however, that any $1 million demand was made in writing.
See, e.g., Def.'s App. Part I, Dkt. No. 37-1, at A2 (October 17, 2005 letter from plaintiff's
counsel to Mr. Jordan Fried) (stating that "[i]t has been many weeks since you said you would
speak to Ms. Zaidel"); id. at A3 (October 25, 2005 letter from Mr. Fried to plaintiff's counsel)
(referencing a prior call from plaintiff's counsel); id. at A4 (November 1, 2005 letter from
plaintiff's counsel to Mr. Fried) (referencing "my inquiry regarding a clear cut case of copyright
infringement") .

Additionally, defendant argues that any damages arising from plaintiff's alleged lost sale to Krieger are time-barred.  Def.'s Cross-Mot. 27-28.  Defendant argues that the cancellation letter from Krieger to plaintiff is dated June 24, 2003, a date outside of any proposed statute of limitations period, even as extended for a three-month tolling period.  Id.  Therefore, according to defendant, "the accused infringement and damages relating to the Krieger cancellation must have been committed before June 24, 2003," and are barred by the statute of limitations in § 1498(b).  Id. at 28.  Plaintiff does not respond directly to this argument, rather, he states that he has "been denied access to precise proof of earnings losses" and reiterates that he is seeking statutory damages based "primarily on 1) the infringer's state of mind; 2) the deterrent effect on the infringer and third parties; 3) the infringer's cooperation in providing evidence concerning the value of the infringing material; and 4) the conduct and attitude of the parties."  Pl.'s Supp. Resp. 8-9 (citing Hounddog Prods., L.L.C. v. Empire Film Grp., Inc., 826 F. Supp. 2d 619, 631 (S.D.N.Y. 2011)).

Plaintiff does not contest defendant's argument that any allegedly infringing activities that would have precipitated Krieger's cancellation necessarily would have preceded the June 24, 2003 letter from Krieger.  See id. at 8-10.  Viewing the facts in the light most favorable to plaintiff, the court finds that plaintiff has not been able to point to a genuine issue of material fact that would cast doubt on the conclusion that "the accused infringement and damages relating to the Krieger cancellation" must have preceded the cancellation letter and therefore fall outside the statute of limitations.  See 28 U.S.C. § 1498(b).  Defendant is entitled to judgment as a matter of law.  Accordingly, defendant's Cross-Motion regarding this issue is GRANTED.

e.     Plaintiff Has Provided No Credible Evidence of the Fair Market Value of Lost Licensing Fees

Defendant argues that plaintiff's only other damages theory--lost licensing fees "for alleged use of the works by FEMA employees"--fails as a matter of law because "neither plaintiff, nor his purported expert rely on any valid evidence establishing fair market value of the lost licensing fee at issue."  Def.'s Cross-Mot. 28.  Defendant asserts--and plaintiff does not contest--that plaintiff's expert does not rely on the value of prior licenses, which could permit the court to arrive at a rational estimate of fair market value.  Id. at 30-31.

Although it does not appear that plaintiff has licensed his work previously in a way that would generate licensing fees, see Def.'s Supp. App. SA1-SA84 (providing Dr. Ivan Zatkovich's July 10, 2009 expert report), there is no evidence in the record of licenses of similar types by different companies that could form a basis for calculating the probable fair market value of a license to use plaintiff's work, see Def.'s Cross-Mot. 31.  Rather, it appears that, based on articles available on websites such as "www.themillions.com" and "http://booksquare.com," plaintiff's expert, Dr. Ivan Zatkovich, assigned a licensing fee of $5 per work to each of six allegedly infringed works.  Def.'s Supp. App. SA11.  Dr. Zatkovich then assumed that 2,000 users, "the

number of FEMA employees at the time," would each have obtained six of plaintiff's allegedly infringed publications from the FEMA website, which would have generated $60,000 in licensing fees.  Id.  Dr. Zatkovich then accounted for the applicable royalty rate and calculated that plaintiff would be entitled to 50% of the licensing fees, or $30,000.  Id. at SA11-SA12.

The Federal Circuit recently stated that, in the absence of evidence of damages in terms of "'lost sales, lost opportunities to license, or diminution in the value of the copyright,'" a court may award actual damages equivalent to the fair market value of the lost licensing fee for defendant's use.  See Gaylord, 678 F.3d at 1343 (quoting On Davis v. The Gap, Inc., 246 F.3d 152, 164, 172 (2d Cir. 2001)).  The Federal Circuit explained that the determination of fair market value requires the determination of the "'reasonable license fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer.'"  Id. (quoting On Davis, 246 F.3d at 167).  The Federal Circuit further stated that a proper determination involves looking at the evidence offered by both sides to determine "'the fair market value of a license to which the parties would have agreed.'"  Id.  And in On Davis, the United States Court of Appeals for the Second Circuit counseled that the amount of damages awarded as fair market value "may not be based on 'undue speculation.'"  On Davis, 246 F.3d at 166 (quoting Abeshouse v. Ultragraphics, Inc., 754 F.2d 467, 470 (2d Cir. 1985)).

One of the articles relied upon by Dr. Zatkovich lists the mean and median prices of five categories of e-books:  "Major Publishers," "Independent Publishers," "Genre Books," "Self-Published," and "Classics."  Def.'s Supp. App. SA70-SA71 (www.themillions.com article).  The article does not identify the underlying data used to compute the figures from which plaintiff's expert arrived at his $5.00-per-work licensing fee.  Id. at SA70-SA72.  Nor does the article suggest that the five categories of e-books reviewed may aptly be compared to plaintiff's publications.

Viewing the facts in the light most favorable to plaintiff, the court concludes as a matter of law that plaintiff has not pointed to anything in the record that creates a genuine issue of material fact for trial with respect to his theory of a lost licensing fee for FEMA's use.  Defendant's Cross-Motion regarding the availability to plaintiff of the lost licensing fee theory is GRANTED.

  f.  Credible Evidence of Damages Being Absent or Unavailable to Plaintiff, Plaintiff's Recovery Is Limited to $750.00

Defendant has argued that plaintiff's remaining theories of entitlement to statutory damages above $750.00 are unavailable to plaintiff.  Def.'s Cross-Mot. 27-28. The court agrees.

If a plaintiff requests only minimum statutory damages, "the record on damages need not be developed at all."  Video Views, Inc. v. Studio 21, Ltd., 925 F.2d 1010, 1016 (7th Cir. 1991), abrogated in part on other grounds by Fogerty v. Fantasy, Inc., 510

U.S. 517 (1994). However, even if a plaintiff were permitted to elect a range of statutory damages, in order to receive more than the minimum award, the plaintiff must support that request with sufficient evidence. See id. at 1016-17. Courts have recognized that a plaintiff may provide evidence of damages through "lost sales, lost opportunities to license, or diminution in the value of the copyright." On Davis, 246 F.3d at 164; see also Gaylord, 678 F.3d at 1343. And in cases when a plaintiff has not been able to show such direct evidence of harm, courts have awarded damages based on "'the fair market value of a license covering the defendant's use.'" Gaylord, 678 F.3d at 1343 (quoting On Davis, 246 F.3d at 164, 172). The fair market value is "calculated based on a hypothetical, arms-length negotiation between the parties." Id. (citing Jarvis v. K2 Inc., 486 F.3d 526, 533 (9th Cir. 2007)); see also Country Rd. Music, Inc. v. MP3.Com, Inc., 279 F. Supp. 2d 325, 331 (S.D.N.Y 2003).

Plaintiff's theories of damages are either legally unavailable or fail on summary judgment as a matter of law due to plaintiff's failure to come forward with specific facts that would show a genuine issue of material fact for trial. The court ruled previously that plaintiff's expert was precluded from testifying on the value of the public's use of Dr. Cohen's materials due, in part, to plaintiff's willful failure to disclose his expert's opinion regarding this theory to defendant. Cohen III, 100 Fed. Cl. at 474-75. The court has also ruled that any damages for the alleged lost sale or cancellation of the Krieger contract are barred by the statute of limitations, see supra Part III.E.3.d, and that plaintiff is limited to a seven-day recovery period, see supra Part III.E.3.c. Admissible, credible evidence of "lost opportunities to license[] or diminution in the value of the copyright," On Davis, 246 F.3d at 164, in terms of FEMA's use of plaintiff's materials, is not in the record, see Def.'s Supp. App. SA1-SA84 (providing Dr. Ivan Zatkovich's July 10, 2009 expert report), and, as described above, plaintiff has not provided the court with credible evidence of fair market value that would enable this court to conduct the hypothetical negotiation contemplated in Gaylord, see supra Part III.E.3.e.

As a result, plaintiff may recover only minimum statutory damages per work, which totals to $750.00 in this case, where a single work is at issue for statutory damages purposes. See Video Views, Inc., 925 F.2d at 1016-17 (stating that a statutory damages award greater than the minimum is permissible only when "the evidentiary record adequately supports that determination").

F.     Plaintiff's Assertions Regarding the Need for a Trial Are Unavailing

Plaintiff argues, "Surely, Plaintiff is entitled to present live testimony to the finder of fact on the factors relevant to statutory damages, so that the credibility of witnesses . . . can be assessed by the fact finder." Pl.'s Resp. 6. Plaintiff emphasizes that the need to determine willfulness, that is, to assess defendant's state of mind, usually requires a trial. See Pl.'s Supp. Resp. 15; Oral Argument of June 13, 2012, Argument of Mr. Jonathan M. Cohen at 12:07:05-12:08:02 (arguing that a trial would be needed to determine damages based upon the credibility of witnesses and to determine the number of works at issue, which would involve a comparison of the allegedly

34

infringed works and "testimony along with it as to why things ended up where they did").

To the extent that plaintiff suggests that willfulness or state of mind is a proper consideration for the court and would mandate a trial, plaintiff is incorrect. See supra Part III.E.1.  More generally, while the court is cognizant of "the importance of allowing plaintiff a right to a trial on [his] claim," a full trial would not be warranted "absen[t] . . . significant probative evidence tending to support [his] claim." Renfrow v. United States, 38 Fed. Cl. 435, 449 (1997).  Further, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "'to secure the just, speedy and inexpensive determination of every action.'"  Celotex Corp., 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

IV.     Conclusion

For the foregoing reasons, the court GRANTS summary judgment to defendant that only one work is at issue for the purposes of statutory damages and that plaintiff is entitled to recover $750.00 in statutory damages for the government's infringement. Plaintiff's Motion regarding liability is GRANTED as to the infringement of PAMI and is otherwise DENIED.  The foregoing disposes of all outstanding issues in this case. Accordingly, the Clerk of the Court shall enter judgment for plaintiff in the amount of $750.00.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge